Case 4:24-cv-00338-MW-MAF   Document 1-1   Filed 08/23/24   Page 1 of 192

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.     CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE SECOND   JUDICIAL CIRCUIT,
IN AND FOR LEON   COUNTY, FLORIDA

Edgewater Valley Forge Fund III LP, Wyvern Hospitality LLC
Plaintiff

Case #  2024 CA 001165

Judge  _____

vs.

Certain Underwriters at Lloyd's, London, HDI Global Specialty SE, Summit Specialty Insurance Company, GuyideOne National Insurance Company, Catalytic Risk Managers & Insurance Agency, Catalytic Claims Services, YA Engineering Services, LLC
Defendant

### II.     AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.     TYPE OF CASE**     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.



**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☒ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [　]
(Specify)

    <u>18</u>

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.
    <u>None.</u>

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ David J. Weiss</u>          Fla. Bar # <u>73963</u>
      Attorney or party               (Bar # if attorney)

<u>David J. Weiss     </u>          <u>07/18/2024</u>
  (type or print name)               Date

## COMPLEX BUSINESS LITIGATION DIVISION ADDENDUM

### Party or Attorney Filing Action Must Place an "X" in One of the Boxes Below

The categories of cases set out below shall guide the parties and the Court in the designation of cases for the Complex Business Litigation Division ("CBLD").

### AMOUNT IN CONTROVERSY GREATER THAN $150,000.00

☐ Non-consumer UCC-related transactions;

☐ Purchases and sales of businesses or the assets of a business, including contract disputes, commercial landlord- tenant claims, and business torts;

☐ Non-consumer sale of goods or services by or to business enterprises;

☐ Non-consumer bank or brokerage accounts, including loan, deposit, cash management, and investment accounts;

☐ Purchase, sale, lease of commercial (real or personal) property or security interests therein;

☐ Commercial surety bonds;

☐ Franchisee / franchisor relationships and liabilities;

☐ Malpractice against professionals, except health care providers, in connection with rendering services relating to a business enterprise;

☐ Business torts, including unfair competition, breach of fiduciary duty, and tortious interference with contracts;

☐ Complex construction litigation, other than consumer home construction disputes, unless a court determines that the home construction dispute is business-related and complex; or

☒ Insurance coverage, bad faith litigation, and third party indemnity actions against insurers arising under policies issued to businesses, such as claims arising under a commercial general liability policy, commercial property policy, or title insurance policy, not including claims where the underlying dispute is a personal injury claim, unless a court determines that the personal injury insurance claim is business-related and complex.

### ANY AMOUNT IN CONTROVERSY

☐ Internal affairs or governance, dissolution or liquidation rights, obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships;

☐ Trade secrets and non-compete agreements;

☐ Intellectual property;

☐ Securities or state securities laws;

☐ Antitrust statutes;

☐ Shareholder derivative actions and related class actions; and

☐ Corporate trust affairs or director and officer liability.

**NOTE:** **A copy of the Civil Cover Sheet and this Addendum must be served with the Complaint for all Complex Business Litigation Division cases. See Administrative Order S-2013-021 for further Complex Business Litigation Division requirements.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

EDGEWATER VALLEY FORGE FUND III LP, a
Delaware limited partnership; and WYVERN
HOSPITALITY LLC, a Florida limited liability company,

        Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

        Defendants.

_____/

Case No.:  2024 CA 001165

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiffs, Edgewater Valley Forge Fund III LP, a Delaware limited partnership
("Edgewater") and Wyvern Hospitality LLC, a Florida limited liability company ("Wyvern"or the
"Insured" and, together with Edgewater, "Plaintiffs"), hereby sue Defendants Certain Underwriters
at Lloyd's, London, a foreign entity ("Lloyds"); HDI Global Specialty SE, a foreign entity
("HDI"); Summit Specialty Insurance Company, a foreign entity ("Summit"); GuideOne National
Insurance company, a foreign entity ("GuideOne"); Catalytic Risk Mangers & Insurance Agency,
LLC, a foreign entity ("Catalytic"); Catalytic Claims Services, Inc., a foreign entity ("Catalytic
Claims");  and YA Engineering Services, LLC, a foreign entity ("YAES"), and allege:

1

## GENERAL ALLEGATIONS

1.     This is an action for breach of an insurance contract and for civil remedies for violations of the Federal RICO Act under 18 USC § 1964(c), seeking damages in excess of $50,000.00, exclusive of interest, attorneys' fees, and court costs.

2.     All conditions precedent to the filing of this matter have been completed or are legally excused.

3.     Plaintiff Edgewater is a limited partnership organized and existing under the laws of the State of Delaware and maintaining an office for the transaction of business at 2639 N. Monroe Street, Suite B-101, Tallahassee, FL 32303.

4.     Plaintiff Wyvern is a limited liability company organized and existing under the laws of the State of Florida and maintaining an office for the transaction of business at 2639 N. Monroe Street, Suite B-101, Tallahassee, FL 32303.

5.     Plaintiffs' principal office is located in Leon County, Florida.

6.     Defendants Lloyds, HDI, Summit and GuideOne (collectively, the "Insurers") are not admitted carriers in Florida and are foreign or alien unauthorized insurers who have issued or accepted the risk under the surplus lines contract of insurance issued to Plaintiffs in Florida, which covers the Property located in Florida, which is the subject of the claim under which this cause of action arose; and are otherwise engaged in the transaction of insurance in Florida.

7.     The Insurers have appointed the Florida Chief Financial Officer, who resides in Leon County, Florida, as their agent for service of process.

8.     Defendants Catalytic and Catalytic Claims (collectively, the "Adjusters") are foreign entities, licensed to do business in and doing business in the State of Florida.

9.     Defendant YAES (the "Engineer") is a foreign entity, licensed to do business in and doing business in the State of Florida.

**The Policy**

10.     On or about November 19, 2022, Plaintiffs purchased a Commercial Property Policy of insurance for the policy period of November 19, 2022 through November 19, 2023 (the "Policy"), a true and correct copy of which is attached as Exhibit A.

11.     The Policy is a surplus lines policy.

12.     Catalytic prepared the Policy for Plaintiffs under Contract Number CTW006348.

13.     The Insurers issued or accepted the risk under the Policy.

14.     Plaintiffs paid all premiums on the Policy and the Policy was in full force and effect at all relevant times herein.

15.     The maximum limit of liability under the Policy is $10,000,000.

16.     The Policy covers multiple named insureds and multiple property locations.

17.     Catalytic, the Insurers and/or the agent who prepared the Policy chose to show Edgewater as the initial named insured on the Policy.

18.     Wyvern is also a named insured under the Policy.

19.     At all times material hereto, Wyvern was and is the owner of the real and personal property located at 101 E. Retta Esplanade, Punta Gorda, FL 33950 (the "Property").

20.     The Property is covered under the Policy.

21.     The losses and damages to the Property were the result of covered perils.

**The Claim**

22.     Beginning on or about July 19, 2023, the Insured suffered losses and damages to its Property.

23.     Following the losses and damages, the Insured made a first-party claim under the Policy to Catalytic Claims (the "Claim").

24.     The Insured submitted the Claim and began to mitigate the damages promptly following the loss.

25.     Because Edgewater is shown as the initial named insured on the Policy, all communications related to the claim have referenced Edgewater as the insured, and Edgewater is a named plaintiff for that reason.

26.     Wyvern is the owner of the Property, a named insured under the Policy, and the party who suffered the losses and damages that are the subject of the Claim.

27.     On July 31, 2023, almost two weeks after the loss and significant mitigation work had occurred, an independent adjuster hired by the Adjusters and Insurers performed a preliminary inspection of the Property on behalf of and at the direction of the Adjusters and Insurers (the "Preliminary Inspection").

28.     There was not an engineer present on behalf of the Insurers at the Preliminary Inspection.

29.     Despite immediate and timely communication and cooperation by the Insured, there was no formal written communication related to the Claim until Catalytic Claims sent a reservation of rights letter dated September 5, 2023.

30.     On September 19, 2023, the independent adjuster and YAES performed a second inspection of the Property on behalf of and at the direction of the Adjusters and the Insurers (the "Second Inspection").

31.     The Second Inspection was performed more than sixty (60) days after the loss.

32.     At the time of the Second Inspection, significant mitigation work had been performed on the Property.

33.     In connection with the Preliminary Inspection and Second Inspection (collectively, the "Inspections"), the independent adjuster advised the Insured's representatives that the Claim was valid and would be covered under the Policy, and guided the Insured to maintain records of all losses associated with the Claim.

34.     On September 21, 2023, the independent adjuster sent the Insured's representatives his calculation of the losses associated with the Claim, showing an impending damages loss in the amount of $418,856.06, not including business interruption damages.

35.     More than a month after sending the reservation of rights letter and following the independent adjusters' calculation of losses, Catalytic Claims sent a request for information dated October 11, 2023.

36.     On October 16, 2023, the Insured's agent provided a detailed response to the letter via email, responding to each individual request and explaining that the items requested relevant to a coverage determination were previously provided and addressed through documentation, inspections, engineering reports, and multiple communications.

37.     The Insured's agent requested a phone call to clarify any outstanding issues that the Insurers' may have, but did not receive a response to the email and subsequently followed up with multiple calls and emails, again without response from Catalytic Claims or its representatives.

38.     Despite the detailed response to each of the individual requests, and the advice that all relevant information and documentation had been provided, the Insurers' counsel sent an email on October 24, 2023, with a repeated request for additional information and documentation related to seven (7) of the nine (9) requests in the letter.

5

39.     In response, the Insured's counsel sent a letter dated October 31, 2023, reiterating that all available information and documentation relevant to a coverage determination had been provided.

40.     In addition, the Insured's counsel again directed the Insurers' counsel to the Insurers' own files related to the current Claim and a recent claim related to damages associated with Hurricane Ian, which would have included some of the requested information and documentation (as well as some additional documentation that may not be relevant to the Claim).

41.     Based on the Insurers' continued duplicative requests for information and documentation and general lack of communication and attention, the Insured's counsel expressed concern that the Claim was not being properly and timely processed and handled in good faith and with due regard to the Insured's interests.

42.     In addition, the Policy was set to expire on November 19, 2023, and the Insurers were seeking to increase the premium on renewal, based, in part, on their stated justification of maintaining reserves specifically for the Claim.

43.     On November 18, 2023, a Saturday just one day before the Policy was set to expire and approximately sixty (60) days after the Second Inspection, Catalytic Claims sent the Insured a coverage denial letter, advising that the Insurers had evaluated the Claim and concluded that the damages are not covered under the Policy because the water intrusion that caused the damages occurred as a result of improper tarping during demolition work to the pool on the roof of the hotel.

44.     In support of their decision, Catalytic Claims and the Insurers cited certain policy exclusions and enclosed a report completed by their hired Engineer almost thirty (30) days prior to the date of the letter.

45.     However, the Insurers continued to maintain reserves specifically for the Claim.

46.     As set forth below, the report completed by the Insurers' hired Engineer is conclusory and tailored to reach a determination of no coverage.

47.     Moreover, as set forth below, the policy exclusions cited in the letter are not applicable and the Claim is covered under the Policy.

## The Loss

48.     The Insured undertook a demolition project to remove the pool from the roof of the hotel.

49.     The demolition project was performed under a scope of work provided by a licensed contractor.

50.     A licensed engineer consulted on and directed critical portions of the work to ensure that the structural integrity of the roof was maintained throughout the demolition project.

51.     The engineer specifically advised that the weather proofing material had to be removed in order to properly inspect the bare concrete, joints and general condition of the roof for structural integrity for the future installation of another structure on the roof.

52.     The removal of the roofing system was within the scope of the project.

53.     The project was performed under the direction of a structural engineer.

54.     The contractor installed a tarp to cover the exposed roof during the demolition project in order to protect against water intrusion.

55.     On or about July 20, 2023, there was a severe rain event and significant water intrusion into the hotel.

56.     The rain event was not a named storm.

57.     At the time of the rain event, the tarp was installed to protect against water intrusion.

7

58.     Notwithstanding the installation of the tarp, water entered the building and caused significant damage and losses to the Property.

59.     Upon detecting the water intrusion, the Insured took immediate action to mitigate and preserve the Property from any further damage.

60.     The Insured paid the Policy premium and complied with its obligations under the Policy to provide prompt notice, protect and provide access to the Property, mitigate damages, provide information and documentation, and respond to all requests and inquiries.

61.     The Insured was extremely responsive, cooperative, and transparent; and acted diligently to mitigate the loss.

62.     In so doing, the Insured has incurred and continues to incur substantial fees, costs and expenses without any payment to offset such expenses.

63.     In addition, due to the Insurers' failure to pay amounts due under the Policy, the water mitigation and emergency services contractor has filed a claim of lien against the Property, and sued the Insured to foreclose the lien and to recover sums claimed due for mitigation work, and has demanded payment of interest and fees in addition to the amounts claimed due for services.

**<u>The Scheme</u>**

64.     The surplus lines Insurers and their hired Adjusters and Engineer have engaged in fraudulent claims handling practices with the goal of delaying and denying otherwise valid claims in order to make money at the expense of the Insured and other policy holders (the "Scheme").

65.     The Defendants regularly and actively collude with each other to develop reports and records that are tailored to delay and deny coverage regardless of merit.

66.     The Defendants misrepresent findings and make false statements in their reports and records in order to delay and deny coverage on valid claims.

8

67.     The Insurers have an incentive to delay and deny valid claims in order to delay and avoid payment for losses.

68.     The Insurers incentivize the Adjusters and Engineer to tailor their findings and reports to delay and deny coverage on valid claims by hiring and compensating them for that purpose.

69.     The Insurers intend for the delay and denial of claims to increase their profitability while concurrently maintaining increased reserves and using the increased reserves to justify rate increases without making payments from the reserves.

70.     The increased profitability enables the Scheme to perpetuate by allowing the Insurers to increase payments to the Adjusters and Engineer.

71.     The failure of the Adjusters and Engineer to tailor their findings and reports to coverage denials results in negative employment and financial consequences.

72.     The Scheme has been utilized against numerous policy holders for years.

73.     Specifically, as it relates to the Insured, the Scheme was recently utilized to deny or reduce coverage under a prior version of the policy that was in effect for the prior policy period, which was prepared by Catalytic, issued by the Insurers, and included the same coverages.

74.     In October of 2022, less than one year prior to the Claim, the Insured sustained losses related to damages to the Property resulting from water intrusion during Hurricane Ian.

75.     The Insured made a first-party claim under the policy for the losses.

76.     The same Insurers, Adjusters, and Engineer that colluded to deny coverage on the instant Claim evaluated that claim and employed the same practices and Scheme to reduce and limit coverages to avoid payment on the claim.

9

77.     Specifically, on or about November 10, 2022, November 30, 2022, and January 15, 2023, Catalytic Claims sent the Insured coverage position letters on behalf of the Insurers.

78.     Enclosed with the January 15, 2023 letter was an engineering report dated December 15, 2022, prepared by the Engineer.

79.     The letters and engineering report included misrepresentations and false statements regarding the cause of the losses and the Policy language and exclusions for the purpose of avoiding payment on the claim.

80.     The Insured and the Defendants' representatives also participated in numerous phone calls related to the losses and the claim, including on October 8, 2022, November 1, 2022, and November 7, 2022.

81.     During the phone calls, the Defendants' representatives made misrepresentations and false statements regarding the cause of the losses and the Policy language and exclusions for the purpose of avoiding payment on the claim.

82.     Despite not making any payment on that claim, the Insurers increased the reserves and premium of the Policy on renewal.

**The Defendants Utilized the Scheme to Deny the Insured's Claim**

83.     The Scheme was utilized in the handling of the Insured's Claim in order to delay or deny coverage for the losses.

84.     The Defendants actively colluded with each other and utilized the Scheme in order to delay or deny the Insured's Claim.

85.     Specifically, on or about September 5, 2023, Catalytic Claims sent a reservation of rights letter on behalf of the Insurers.

10

86.     On or about November 18, 2023, Catalytic Claims sent a letter on behalf of the Insurers denying the Claim.

87.     Enclosed with the letter denying the Claim was an engineering report dated October 26, 2023, prepared by the Engineer.

88.     The letters and engineering report included misrepresentations and false statements regarding the cause of the losses and the Policy language and exclusions for the purpose of delaying or denying the Claim.

89.     The Insured's representatives and the Defendants' representatives also participated in numerous phone calls related to the losses and the Claim, including on September 13, 2023 and September 20, 2023.

90.     During the phone calls, the Defendants' representatives made misrepresentations and false statements regarding the cause of the losses and the Policy language and exclusions for the purpose of delaying or denying the Claim.

91.     The Insurers' employed and paid the Adjusters and Engineer with the intent and purpose of having them tailor their findings, letters and reports to deny the Claim.

92.     The Defendants all profited as a result of the denial of the Claim.

93.     The Insurers' collected the premium on the Policy, but did not make any payment on the Claim.

94.     The Adjusters and Engineer were compensated by the Insurers because of their participation and efforts in denying the Claim.

95.     The denial of the Claim was effectuated through misrepresentations and false statements made through the course of telephone conversations and the distribution of the letters and reports to the Insured.

11

96.     The Claim was denied for fraudulent and meritless reasons as a result of the Scheme.

97.     The denial of the Claim was part of a deliberate and continuing pattern of erroneous claim delays, denials, misrepresentations, false statements, bad faith contract misinterpretations, and other unscrupulous tactics.

98.     At no time during the Policy period or during any prior period that the Insured paid premiums to maintain coverage on the Property did the Insurers disclose to the Insured that they had adopted unethical or illegal claims handling practices intended to delay and deny coverage of claims.

99.     At no time during the Policy period or during any prior period that the Insured paid premiums to maintain coverage on the Property did the Insurers disclose to the Insured that they would make every attempt possible to delay, deny or avoid payment on any and all claims made under the Policy.

100.    The Insurers have breached their duty to the Insured under the Policy terms and Florida law by failing to timely and properly investigate, process and handle the Claim, failing to act with due diligence in a good faith attempt to resolve the claim, and by misrepresenting and otherwise attempting to delay and deny coverage under the Policy.

101.    The actions of the Defendants have caused and continue to cause losses which are covered under the terms of the Policy.

102.    To the extent coverage under the Policy is denied, Defendants' actions have compromised coverage for the losses sustained.

103.    On May 23, 2024, Notices of Intent to initiate litigation were filed pursuant to Section 627.70152, Florida Statutes.

104.    On June 6, 2024, responses to the Notices of Intent were sent on behalf of the Insurers, wherein they asserted their right to invoke mediation.

105.    The Insurers' responses to the Notices of Intent indicated that the Insurers' accepted coverage, as the Insurers may only require the Insured to participate in alternative dispute resolution if they accept coverage under § 627.70152(4), Florida Statutes.

106.    Despite asserting their right to invoke mediation, the Insurers continued to deny coverage and delay payment on the Claim in bad faith.

107.    On June 20, 2024, additional Notices of Intent were filed pursuant to Section 627.70152, Florida Statutes.

108.    On July 3, 2024, responses to the Notices of Intent were sent on behalf of the Insurers, wherein they asserted that Edgewater is the named insured and they have not received a claim from the Insured.

109.    The Insurers' assertion that they have not received a claim from the Insured is a continued bad faith attempt to delay or deny the Claim, as the Insured is a named insured and the Property is covered under the Policy.

110.    All conditions precedent for obtaining payment of the benefits due under the Policy and for initiating this lawsuit have occurred or are legally excused.

111.    Plaintiffs paid premiums under the Policy and the prior policy in the total amount of $248,859, and have not received any compensation or benefits due to the Defendants actions in reducing and denying coverage.

112.    The Insured has retained the undersigned attorneys to represent it in this action and is obligated to pay its attorneys a reasonable fee for their services. Defendants are obligated to pay such fees under 18 USC § 1964.

13

## Count I – Breach of Contract by Lloyds

113.    The Insured realleges and incorporates paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114.    The Policy is a valid and binding contract of insurance.

115.    The Insured has performed all of its obligations under the Policy.

116.    Lloyds committed a material breach of the Policy by delaying and denying the Claim as set forth above and as otherwise subsequently discovered.

117.    Lloyds' breaches have caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Lloyds for damages, court costs, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count II – Breach of Contract by HDI

118.    The Insured realleges and incorporates paragraphs 1 through 112 of this Complaint as if fully set forth herein.

119.    The Policy is a valid and binding contract of insurance.

120.    The Insured has performed all of its obligations under the Policy.

121.    HDI committed a material breach of the Policy by delaying and denying the Claim as set forth above and as otherwise subsequently discovered.

14

122.     HDI's breaches have caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against HDI for damages, court costs, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### Count III – Breach of Contract by Summit

123.     The Insured realleges and incorporates paragraphs 1 through 112 of this Complaint as if fully set forth herein.

124.     The Policy is a valid and binding contract of insurance.

125.     The Insured has performed all of its obligations under the Policy.

126.     Summit committed a material breach of the Policy by delaying and denying the Claim as set forth above and as otherwise subsequently discovered.

127.     Summit's breaches have caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Summit for damages, court costs, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### Count IV – Breach of Contract by GuideOne

128.    The Insured realleges and incorporates paragraphs 1 through 112 of this Complaint as if fully set forth herein.

129.    The Policy is a valid and binding contract of insurance.

130.    The Insured has performed all of its obligations under the Policy.

131.    GuideOne committed a material breach of the Policy by delaying and denying the Claim as set forth above and as otherwise subsequently discovered.

132.    GuideOne's breaches have caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against GuideOne for damages, court costs, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### RICO ALLEGATIONS COMMON TO ALL DEFENDANTS

133.    The Defendants have engaged in the fraudulent Scheme to delay and deny valid claims and make money at the expense of policy holders.

134.    The Insured was a target of the Defendants' fraudulent Scheme.

135.    The Defendants formed an association in fact for the purpose of conducting the fraudulent Scheme to deny valid claims and make money.

136.    The Defendants have a separate and distinct existence, but all act in concert to form an enterprise to perpetuate the Scheme (the "Enterprise").

137.    The Defendants associated with the Enterprise have each committed and/or aided and abetted the commission of two or more acts to perpetuate the Scheme.

138.    The Defendants' acts are related to each other by virtue of common participants, common victims, a common method of commission, and the common purpose of engaging in the fraudulent Scheme to delay and deny valid claims and make money.

139.    The Defendants participated in and acted in concert as an Enterprise to conduct the fraudulent Scheme to delay and deny the Insured's Claim and to avoid payment on the Insured's prior claim.

140.    The Defendants use the interstate telephone, email and mail to distribute letters, reports, and otherwise perpetuate the Scheme to delay and deny valid claims.

141.    The Defendants used the interstate telephone, email and mail to distribute letters, reports, and otherwise perpetuate the Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

142.    The Enterprise formed by the Defendants is engaged in, and its activities affect, interstate commerce, as they sell, collect and are compensated from premiums on policies solicited, marketed, and issued throughout the country, and they conduct the fraudulent activity and receive compensation across state lines.

143.    The Defendants' fraudulent Scheme has caused injury to the Insured's business and property.

17

## Count V – RICO 18 USC § 1962(c) Violations by Lloyds

144.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

145.    Lloyds is associated with the other Defendants in the Enterprise.

146.    Lloyds participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insureds' Claim and to delay and avoid payment on the Insured's prior claim.

147.    Lloyds committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

148.    Lloyds' actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Lloyds under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count VI – RICO 18 USC § 1962(c) Violations by HDI

149.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

150.    HDI is associated with the other Defendants in the Enterprise.

18

151.    HDI participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

152.    HDI committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

153.    HDI's actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against HDI under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### Count VII – RICO 18 USC § 1962(c) Violations by Summit

154.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

155.    Summit is associated with the other Defendants in the Enterprise.

156.    Summit participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

157.    Summit committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

158.    Summit's actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Summit under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

**Count VIII – RICO 18 USC § 1962(c) Violations by GuideOne**

159.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

160.    GuideOne is associated with the other Defendants in the Enterprise.

161.    GuideOne participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

162.    GuideOne committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

163.    GuideOne's actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without

20

limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against GuideOne under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count IX – RICO 18 USC § 1962(c) Violations by Catalytic

164.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

165.    Catalytic is associated with the other Defendants in the Enterprise.

166.    Catalytic participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

167.    Catalytic committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

168.    Catalytic's actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and

prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Catalytic under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count X – RICO 18 USC § 1962(c) Violations by Catalytic Claims

169.     The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

170.     Catalytic Claims is associated with the other Defendants in the Enterprise.

171.     Catalytic Claims participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

172.     Catalytic Claims committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

173.     Catalytic Claims' actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Catalytic Claims under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count XI – RICO 18 USC § 1962(c) Violations by YAES

174. The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

175. YAES is associated with the other Defendants in the Enterprise.

176. YAES participated in the fraudulent Scheme with the other Defendants in the Enterprise to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

177. YAES committed and/or aided and abetted the commission of two or more acts to perpetuate the fraudulent Scheme.

178. YAES's actions and participation in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against YAES under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

23

## Count XII – RICO 18 USC § 1962(d) Violations by Lloyds

179.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

180.    Lloyds is associated with the other Defendants in the Enterprise.

181.    Lloyds conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

182.    Lloyds conspired to commit two or more acts to perpetuate the fraudulent Scheme.

183.    Lloyds' conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Lloyds under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count XIII – RICO 18 USC § 1962(d) Violations by HDI

184.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

185.    HDI is associated with the other Defendants in the Enterprise.

186.    HDI conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

187.   HDI conspired to commit two or more acts to perpetuate the fraudulent Scheme.

188.   HDI's conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against HDI under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count XIV – RICO 18 USC § 1962(d) Violations by Summit

189.   The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

190.   Summit is associated with the other Defendants in the Enterprise.

191.   Summit conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

192.   Summit conspired to commit two or more acts to perpetuate the fraudulent Scheme.

193.   Summit's conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors,

suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Summit under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### Count XV – RICO 18 USC § 1962(d) Violations by GuideOne

194.    The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

195.    GuideOne is associated with the other Defendants in the Enterprise.

196.    GuideOne conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

197.    GuideOne conspired to commit two or more acts to perpetuate the fraudulent Scheme.

198.    GuideOne's conspiracy in the fraudulent Scheme has caused the Insured  to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against GuideOne under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

### Count XVI – RICO 18 USC § 1962(d) Violations by Catalytic

199.   The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

200.   Catalytic is associated with the other Defendants in the Enterprise.

201.   Catalytic conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

202.   Catalytic conspired to commit two or more acts to perpetuate the fraudulent Scheme.

203.   Catalytic's conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Catalytic under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

27

## Count XVII – RICO 18 USC § 1962(d) Violations by Catalytic Claims

204.     The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

205.     Catalytic Claims is associated with the other Defendants in the Enterprise.

206.     Catalytic Claims conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

207.     Catalytic Claims conspired to commit two or more acts to perpetuate the fraudulent Scheme.

208.     Catalytic Claims' conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against Catalytic Claims under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## Count XVIII – RICO 18 USC § 1962(d) Violations by YAES

209.     The Insured realleges and incorporates paragraphs 1 through 112 and 133 through 143 of this Complaint as if fully set forth herein.

210.     YAES is associated with the other Defendants in the Enterprise.

28

211.    YAES conspired with the other Defendants in the Enterprise in the fraudulent Scheme to delay and deny the Insured's Claim and to delay and avoid payment on the Insured's prior claim.

212.    YAES conspired to commit two or more acts to perpetuate the fraudulent Scheme.

213.    YAES's conspiracy in the fraudulent Scheme has caused the Insured to suffer losses and damages in an amount to be determined at trial, including, without limitation, uncompensated losses covered under the Policy, loss of use of monies and business opportunities, liens and claims against the Property related to mitigation, adverse impacts to the Insured's loans, brand, credibility, reputation, and business relationships with current and prospective vendors, suppliers, lenders and investors, and fees, costs, and expenses, including professional and attorneys' fees.

WHEREFORE, the Insured demands judgment against YAES under 18 USC § 1964(c), for treble damages, court costs, attorneys' fees, and pre- and post- judgment interest at the maximum rate allowable by law, and such further relief this Court deems just and proper.

## **RESERVATION OF RIGHT TO AMEND**

Plaintiffs reserve the right to amend this Complaint to add allegations and bring this action on behalf of a class of persons similarly situated.

## DEMAND FOR JURY TRIAL

**Plaintiffs demand a jury trial on claims and defenses so triable.**

DATED this 18th day of July, 2024.

/s/ David J. Weiss
DAVID J. WEISS, Fla. Bar No. 0073963
dweiss@ausley.com
sshaffer@ausley.com
Ausley McMullen
P.O. Box 391
Tallahassee, Florida 32302
Phone:  (850) 224-9115
Fax:     (850) 222-7560
Attorneys for Plaintiffs

| Insured's Name | Edgewater Valley Forge Fund III LP; Service Hospitality, LLC; Montlim | Policy # LWH005878 |
| | | UMR # |
| | | **(Lloyd's Policies Only)** |

| Policy Dates  From | 11/19/2022 | To | 11/19/2023 |

Surplus Lines Agents Name          Jessica Alcantara

Surplus Lines Agents Address      970 Lake Carillon Drive, Suite 106 St Petersburg FL 33716

Surplus Lines Agents License #     P074462

Producing Agent's Name               Risk & Insurance Consultants, Inc. -

Producing Agent's Physical Address  290 Interstate North Circle SE Suite 200, Atlanta,  GA  30339

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

**"SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."**

| **Premium:** | $300,000.00 |
| Policy Fee | $2000.00 |
| Provider Fee | $1100.00 |
| FL SL Tax(4.94%) | $14,973.14 |
| Stamping Fee(0.06%) | $181.86 |
| EMPA Fee | $16.00 |
| **Total:** | **$318,271.00** |

Surplus Lines Agent's Countersignature            _____

| Carrier | Policy Number | Premium |
|---|---|---|
| Underwriters at Lloyd's, London (A XV) | LWH005878 | $97,004.00 |
| HDI Global Specialty SE (A XV) | HDW000595 | $44,490.00 |
| Summit Specialty Insurance Company (A VIII) | SMW000695 | $50,494.00 |
| GuideOne National Insurance Company (A- IX) | 550007295 | $108,012.00 |

☐ **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

☐ **"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**



www.CatalyticRisk.com

# Commercial
# Property Policy

**Prepared exclusively for: Edgewater Valley Forge Fund III LP**
**Contract Number:**



CAT7135 (03/21)

| CHICAGO | DENVER | SAN DIEGO |
|---|---|---|
| 20 North Wacker Drive, Ste. 3121 | 908 Main Street, Ste. 310 | 350 10th Avenue, Ste. 1450 |
| Chicago, IL 60606-3101 | Louisville, CO 80027-1897 | San Diego, CA 92101 |
| 00+1 (847) 864-9999 | 00+1 (303) 551-1549 | 00+1 (619) 659-7166 |
| License No. 100689362 | License No. 510817 | License No. 0I67798 |

Contract No:
Named Insured:    Edgewater Valley Forge Fund III LP

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Contract No:
Named Insured:    Edgewater Valley Forge Fund III LP

---

# FLORIDA NOTICES

---

### FLORIDA SURPLUS LINES NOTICE (GUARANTY ACT)

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

LMA9037

### FLORIDA SURPLUS LINES NOTICE (RATES AND FORMS)

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

LMA9038

Contract No: ▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

---

# CLAIMS HANDLING NOTICE

---

We, much like you, hope you never have a loss that results in a claim. However, should you have a claim we want to make sure it is handled promptly and professionally and that you receive the benefits owed under your policy. This notice will help to generally explain the claims process and what to expect. Every claim is unique and we will triage your claim upon receipt to tailor its handling to the specific circumstances presented.

Our goal is to provide the best customer service to you through prompt and transparent claim service.

When a loss occurs, please notify us or your agent as soon as possible. You can report a claim:

- By telephone: 800-208-1806
- By email: claims@catalyticrisk.com

Upon receipt of the claims notice, we will assign it to an examiner who will contact you or your designated representative to collect additional facts about the loss, review policy coverage and discuss claim investigation steps. Based on the information received from you regarding the loss, we will create a claims investigation plan which may include the use of a field adjuster to visit the property to document the scope and nature of the loss, and provide us with damage repair estimates. We will identify for you the independent adjusting firm retained for the field investigation and they will contact you to coordinate the inspection date and time.

The policy requires you to take reasonable steps to protect the property from further damage at the time of loss, and we request that you begin loss mitigation as soon as possible.  It is important to keep records of the work done, including all expenses incurred, for consideration in the settlement of the claim. Understand that we cannot provide advice on whether the loss is covered, including remediation expenses incurred, until our investigation is complete and authority has been granted from the appropriate insurance carrier(s).

Throughout the process, it is important that you share all documents, photographs, reports or other information you have regarding the loss. This will help us in promptly moving the claim to resolution. Our goal is to work with you to create an appropriate claims investigation plan which will result in resolution as soon as practical.

Upon review of the field adjuster report, we may discover additional components of the claim that may need investigation and the examiner will discuss these with you. Sometimes, additional experts are needed in the investigation, and we will identify the experts retained and they contact you to coordinate their investigation (site visit or collection of information).

Once the claim investigation is complete, we will evaluate all information and the coverage provided by the policy and make a recommendation to the appropriate carrier(s) seeking authority to resolve your claim. Upon receipt of authority from the carrier(s), we will contact you to discuss the claims outcome.

Contract No: ▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

---

# U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
# NOT PURCHASED CLAUSE

---

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Insurer(s) have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:      Edgewater Valley Forge Fund III LP

---

# TERRORISM EXCLUSION ENDORSEMENT

---

It is hereby understood and agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Insurer(s) allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

# DECLARATIONS PAGE

Contract Number: █████████████

1. Name and Address of the Insured:

   Edgewater Valley Forge Fund III LP
   2639 N. Monroe Ste. B-101
   Tallahassee, FL 32303

2. Policy Term:

   Effective from:   11/19/2022   to:   11/19/2023

   Effective from 12:01 a.m. Standard Time at the Insured's Covered Location

3. Insurance is effective with certain insurer(s) outlined in the Participation Schedule on CAT3045, Participation Page.

4. 
| | | | |
|---|---|---|---|
| Amount: | Per Participation Page | Property Premium: | $299,191.00 |
| Part of | Per Participation Page | TRIA Premium: | Rejected |
| Excess of: | Per Participation Page | Equipment Breakdown: | $809.00 |
| | | State tax:   (Producer Responsibility) | |
| | | Stamping fee:  (Producer Responsibility) | |
| Amount is excess of deductibles(s) and is per occurrence and policy term aggregate as applicable | | Catastrophe Fee: | $500.00 |
| Total Insured Value: | $29,390,000 | Inspection Fee: | $600.00 |
| Perils: | Special Causes of Loss Excluding  Earthquake and Flood | | |
| Coinsurance: | NIL | Total: | $301,100.00 |
| Coverage(s): | Building(s), Business Personal Property, Ordinance or Law, Sinkhole | | |

5. Forms attached hereto and special conditions: See schedule of forms attached

   Situate:   Per Schedule of Values on file with Insurer(s)          Monthly Limit of Indemnity:   1/6th

   Property Valuation:   Replacement Cost

   Primary deductible(s) or Underlying Limits: See Section III – Policy Deductibles of the Diamond Commercial Property Form.

6. Service of Suit may be made upon:  As per forms attached

7. In the event of a claim, please notify the following:

   Catalytic Risk Managers
   Attn: Claims Department
   350 10th Avenue, Suite 1450
   San Diego, CA  92101

   claims@catalyticrisk.com – email notification
   (800) 208-1806 – phone notification
   Website: http://www.catalyticrisk.com/Claims/Home

8. The following are the authorized signatures for certain Underwriters at Lloyd's of London and other Insurers, all as applicable.

   _____          _____
   Ian Fitt                                                          Jon Knouse

Contract No:
Named Insured:    Edgewater Valley Forge Fund III LP

# PARTICIPATION PAGE

It is hereby understood and agreed that in consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the policy. Provided that:

1. The collective liability of the Insurer(s) shall not exceed the Limit of Insurance or any appropriate Sublimit of Insurance or any policy term aggregate limit.

2. The liability of each of the Insurer(s) shall not exceed the Participation Limit set against its name with the exception of loss adjustment expense which cost shall be 100% assumed by the Insurer(s) on each applicable layer of insurance.

**Several Liability Notice**

The liability of an Insurer under this contract is several and not joint with other Insurer(s) party to this contract. An Insurer is liable only for the proportion of liability it has underwritten. An Insurer is not jointly liable for the proportion of liability underwritten by any other Insurer. Nor is an Insurer otherwise responsible for any liability of any other Insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an Insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other Insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

a. If as outlined below, the Participants on this policy are only Lloyd's Syndicates, then the following Several Liability Notice applies:

The subscribing Insurer(s) obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing Insurer(s) are not responsible for the subscription of any co-subscribing Insurer(s) who for any reason does not satisfy all or part of its obligations.

**Application of Underlying Insurance Sublimits**

1. Unless specifically shown on or endorsed to this policy, coverage is excluded by this policy for any peril, coverage, or location for which the Underlying Insurance policy(ies) imposes a sublimit less than the total limit over which this policy is excess.

2. For the purpose of attachment of coverage, sublimited peril, coverage, or location excluded by this policy but covered by the Underlying Insurance policy(ies), shall be recognized by this policy as eroding or exhausting the limit of liability of the Underlying Insurance policy(ies). Nothing herein, however, shall be deemed to extend coverage in this policy to include loss, damage, or expense from such sublimited peril, coverage, or location.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

Contract No: ▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

| Insurer | Agreement / Policy # | Participation (excess of deductibles per primary layer) | | | Premium | TRIA Coverage |
|---|---|---|---|---|---|---|
| | | Limit | Part of | Excess of | | |
| Underwriters at Lloyd's, London (A XV) | B0429BA2203201 LWH005878 | $810,560 | $10,000,000 | $0 | $24,251.00 | Rejected |
| HDI Global Specialty SE (A XV) | B0429BA2206845 Section 1 HDW000595 | $1,486,991 | $10,000,000 | $0 | $44,490.00 | Rejected |
| Summit Specialty Insurance Company (A VIII) | Summit Specialty - SMW SMW000695 | $1,687,670 | $10,000,000 | $0 | $50,494.00 | Rejected |
| Underwriters at Lloyd's, London (A XV) | B0429BA2204667 LWH005878 | $2,431,679 | $10,000,000 | $0 | $72,753.00 | Rejected |
| GuideOne National Insurance Company (A- IX) | 550007295 | $3,583,100 | $10,000,000 | $0 | $107,203.00 | Rejected |
| | **Total Limit:** | $10,000,000 | | **Total Premium:** | $299,191.00 | |

Contract No:
Named Insured:        Edgewater Valley Forge Fund III LP

---

# GUIDEONE NATIONAL INSURANCE COMPANY
# AMENDATORY ENDORSEMENT

---

It is hereby agreed and understood that the following carrier-specific policy language applies to this policy:

1.    **Notices**

   a.    Except as otherwise indicated in this policy, all notices to the Insurer required by this policy from any insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

   Catalytic Risk Managers
   350 10th Avenue, Suite 1450
   San Diego, CA  92101

   b.    If the Insurer must give to the Insured any notice under this policy, and the time period or method of delivery provided for such notice is established by controlling law as a different period or method of delivery than that set forth in this policy, then the period or method of delivery set forth in this policy shall be deemed to be amended so as to be equal to the minimum period of limitation or method of delivery established by the controlling law.

2.    **Claims Reporting**

   Except as otherwise indicated in this policy, all notices to the Insurer required by this policy from any insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

   Catalytic Risk Managers
   350 10th Avenue, Suite 1450
   San Diego, CA  92101
   Office: (800) 208-1806
   Claims@catalyticrisk.com

3.    **Notice of Service of Suit**

   Pursuant to any statute of any state, territory or District of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the Insurer's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured, arising out of this policy.

   Service of Suit may also be delivered to:

   CT Corporation System

   The most current address for CT Corporation System applicable in the Insured's state may be provided by the Insured's agent or found at the web address below:

   https://ct.wolterskluwer.com/sop-locations

Contract No:  ▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

# HDI GLOBAL SPECIALTY SE AMENDATORY ENDORSEMENT

This Insurance is effected with HDI Global Specialty SE as a company market insurer and various Lloyd's syndicates (the underwriters).

The Insured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

It is hereby agreed and understood that the following carrier-specific policy language applies to the HDI Global Specialty SE proportion of this policy:

1.   **Notices**

   a.    Except as otherwise indicated in this policy, all notices to the Insurer(s) required by this policy from any Insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

> Catalytic Risk Managers
> 350 10th Avenue, Suite 1450
> San Diego, CA  92101

   b.    If we must give to you any notice under this policy, and the time period or method of delivery provided for such notice is established by controlling law as a different period or method of delivery than that set forth in this policy, then the period or method of delivery set forth in this policy shall be deemed to be amended so as to be equal to the minimum period of limitation or method of delivery established by the controlling law.

2.   **Claims Reporting**

Except as otherwise indicated in this policy, all notices to the Company required by this policy from any Insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

> Catalytic Claims Services
> 350 10th Avenue, Suite 1450
> San Diego, CA  92101
> Office: (800) 208-1806
> Claims@catalyticrisk.com

3.   **Notice of Service of Suit**

It is agreed that in the event of the failure of the underwriters hereon to pay any amount claimed to be due hereunder, the underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States district court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Mendes & Mount, 750 Avenue, New York, NY, 10019-6829 for HDI Global Specialty SE's proportion of any suit instituted against underwriters . HDI Global Specialty SE will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of HDI Global Specialty SE in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon HDI Global Specialty SE's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, underwriters hereon hereby designate the superintendent, commissioner or director of insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful procession, any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Contract No: ███████████

Named Insured:     Edgewater Valley Forge Fund III LP

**4.     Applicable Law**

This insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the service of suit clause (U.S.A.)

**5.     Sanction Limitation and Exclusion Clause**

No (re) insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment or such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanction, laws or regulations of the European Union, United Kingdom or United States of America.

**6.     Privacy Notice**

HDI Global Specialty SE is an insurance company whose registered office address is Podbielskistraße 396, 30659 Hannover, Germany.  It is a Data Controller and Data Processor as defined under the EU General Data Protection Regulation ('GDPR').
HDI Global Specialty SE's notice on how it may collect and deal with your data may be found at the following link: https://www.hdi-specialty.com/int/en/legals/privacy

**7.     Additional Certificate Provisions**

a. In respect of California Risks:

This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

The Correspondent is not an Insurer of the insurance described herein and neither is nor shall be liable for any loss or claim whatsoever. The Insurers of such insurance are those Underwriters at Lloyd's, London and company markets, whose names can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London and company markets.

The insurance described herein shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

The Certificate is intended for use as evidence of the placement of the insurance described herein, in accordance with Section 1764 of the California Insurance Code.

**8.     Cancellation.** If this certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

**9.     Short Rate Cancellation Table for Term of One Year.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

| Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6% | 70 - 73 | 30% | 157 - 160 | 54% | 261 - 264 | 78% |
| 3 - 4 | 7% | 74 - 76 | 31% | 161 - 164 | 55% | 265 - 269 | 79% |
| 5 - 6 | 8% | 77 - 80 | 32% | 165 - 167 | 56% | 270 - 273 (9 Mo.) | 80% |
| 7 - 8 | 9% | 81 - 83 | 33% | 168 - 171 | 57% | 274 - 278 | 81% |
| 9 - 10 | 10% | 84 - 87 | 34% | 172 - 175 | 58% | 279 - 282 | 82% |
| 11 - 12 | 11% | 88 - 91 (3 Mo.) | 35% | 176 – 178 | 59% | 283 - 287 | 83% |
| 13 - 14 | 12% | 92 - 94 | 36% | 179 – 182 (6 Mo.) | 60% | 288 - 291 | 84% |
| 15 - 16 | 13% | 95 - 98 | 37% | 183 - 187 | 61% | 292 - 296 | 85% |
| 17 - 18 | 14% | 99 - 102 | 38% | 188 - 191 | 62% | 297 - 301 | 86% |
| 19 - 20 | 15% | 103 - 105 | 39% | 192 - 196 | 63% | 302 – 305 (10 Mo.) | 87% |

Contract No: ████████

Named Insured:     Edgewater Valley Forge Fund III LP

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21 - 22 | 16% | 106 - 109 | 40% | 197 - 200 | 64% | 306 - 310 | 88% |
| 23 - 25 | 17% | 110 - 113 | 41% | 201 - 205 | 65% | 311 - 314 | 89% |
| 26 - 29 | 18% | 114 - 116 | 42% | 206 - 209 | 66% | 315 - 319 | 90% |
| 30 - 32 (1 Mo.) | 19% | 117 - 120 | 43% | 210 – 214 (7 Mo.) | 67% | 320 - 323 | 91% |
| 33 - 36 | 20% | 121 - 124 (4 Mo.) | 44% | 215 - 218 | 68% | 324 - 328 | 92% |
| 37 - 40 | 21% | 125 - 127 | 45% | 219 - 223 | 69% | 329 - 332 | 93% |
| 41 - 43 | 22% | 128 - 131 | 46% | 224 - 228 | 70% | 333 – 337 (11 Mo.) | 94% |
| 44 - 47 | 23% | 132 - 135 | 47% | 229 - 232 | 71% | 338 - 342 | 95% |
| 48 - 51 | 24% | 136 - 138 | 48% | 233 - 237 | 72% | 343 - 346 | 96% |
| 52 - 54 | 25% | 139 - 142 | 49% | 238 - 241 | 73% | 347 - 351 | 97% |
| 55 - 58 | 26% | 143 - 146 | 50% | 242 - 246 (8 mo.) | 74% | 352 - 355 | 98% |
| 59 - 62 (2 Mo.) | 27% | 147 - 149 | 51% | 247 - 250 | 75% | 356 - 360 | 99% |
| 63 - 65 | 28% | 150 – 153 (5 Mo.) | 52% | 251 - 255 | 76% | 361 – 365 (12 Mo.) | 100% |

Rules applicable to insurance with terms less than or more than one year:

A.    If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for Insurance written for a term of one year.

B.    If insurance has been in force for more than one year:
1.    Determine full annual premium as for insurance written for a term of one year.
2.    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
3.    Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force

**10.    Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

Contract No:
Named Insured:      Edgewater Valley Forge Fund III LP

---

# SUMMIT SPECIALTY INSURANCE COMPANY
# AMENDATORY ENDORSEMENT

---

It is hereby agreed and understood that the following carrier-specific policy language applies to this policy:

1.  **Notices**

    a.  Except as otherwise indicated in this policy, all notices to the Insurer required by this policy from any insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

    > Catalytic Risk Managers
    > 350 10th Avenue, Suite 1450
    > San Diego, CA  92101

    b.  If the Insurer must give to the Insured any notice under this policy, and the time period or method of delivery provided for such notice is established by controlling law as a different period or method of delivery than that set forth in this policy, then the period or method of delivery set forth in this policy shall be deemed to be amended so as to be equal to the minimum period of limitation or method of delivery established by the controlling law.

2.  **Claims Reporting**

    Except as otherwise indicated in this policy, all notices to the Insurer required by this policy from any insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

    > Catalytic Risk Managers
    > 350 10th Avenue, Suite 1450
    > San Diego, CA  92101
    > Office: (800) 208-1806
    > Claims@catalyticrisk.com

3.  **Notice of Service of Suit**

    Pursuant to any statute of any state, territory or District of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the Insurer's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured, arising out of this policy.

    Service of Suit may also be delivered to:

    > CT Corporation System

    The most current address for CT Corporation System applicable in the Insured's state may be provided by the Insured's agent or found at the web address below:

    https://ct.wolterskluwer.com/sop-locations

Contract No: ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP



# UNDERWRITERS AT LLOYD'S AMENDATORY ENDORSEMENT

**This Insurance** is effected with certain Underwriters at Lloyd's, London

**This Certificate** is issued in accordance with the limited authorization granted to the Resident Agent by certain Underwriters at Lloyd's, London whose names and the proportions underwritten by them can be ascertained from the office of the said Resident Agent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters do hereby bind themselves each for his own part, and not one for another, their heirs, executors and administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

It is hereby agreed and understood that the following carrier-specific policy language applies to this policy:

**1.  Notices**

**a.**  Except as otherwise indicated in this policy, all notices to the Company required by this policy from any Insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

> Catalytic Risk Managers
> 350 10th Avenue, Suite 1450
> San Diego, CA  92101

**b.** If we must give to you any notice under this policy, and the time period or method of delivery provided for such notice is established by controlling law as a different period or method of delivery than that set forth in this policy, then the period or method of delivery set forth in this policy shall be deemed to be amended so as to be equal to the minimum period of limitation or method of delivery established by the controlling law.

**2.  Claims Reporting**

Except as otherwise indicated in this policy, all notices to the Company required by this policy from any Insured shall be given in writing, delivered, by prepaid express courier, or by certified mail to:

> Catalytic Risk Managers
> 350 10th Avenue, Suite 1450
> San Diego, CA  92101
> Office: (800) 208-1806
> Claims@catalyticrisk.com

**3.  Notice of Service of Suit**

It is agreed that in the event of the failure of the underwriters hereon to pay any amount claimed to be due hereunder, the underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States district court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Lloyd's America, Inc., Attention:  Legal Department, 280 Park Avenue, East Tower, 25th Floor, New York, NY  10017 U.S.A., and that in any suit instituted against any one of them upon this contract. Underwriters will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of underwriters in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon underwriters' behalf in the event such a suit shall be instituted.

Contract No: ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, underwriters hereon hereby designate the superintendent, commissioner or director of insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful procession, any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**4.  Applicable Law**

This insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the service of suit clause (U.S.A.)

**5.  Sanction Limitation and Exclusion Clause**

No (re) insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment or such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanction, laws or regulations of the European Union, United Kingdom or United States of America.

**6.  Notice of Information Practices (Privacy)**

The certain underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number
- Information about your transactions with our affiliates or other third-parties, such as balances and payment history
- Information we receive from a consumer-reporting agency, such as creditworthiness or credit history

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

You have a right to request access to or correction of your personal information that is in our possession.

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

**7.  Additional Certificate Provisions**

a. In respect of California Risks:

This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

The Correspondent is not an Insurer of the insurance described herein and neither is nor shall be liable for any loss or claim whatsoever. The Insurers of such insurance are those Underwriters at Lloyd's, London, whose names can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

The insurance described herein shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

The Certificate is intended for use as evidence of the placement of the insurance described herein, in accordance with Section 1764 of the California Insurance Code.

b. In respect of Illinois Risks:

This Certificate shall not be valid unless signed by the Correspondent and countersigned by the Lloyd's Illinois, Inc. on the attached Schedule.

Neither the Correspondent nor Lloyd's Illinois, Inc. is an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those individual Underwriters at Lloyd's London whose names can be ascertained as set forth herein.

Contract No: ███████

Named Insured:     Edgewater Valley Forge Fund III LP

It is agreed that in the event of failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or any State in the United States. In the event of any litigation arising out of insurance assumed hereunder, Lloyd's Illinois, Inc. and the Director of Insurance of the State of Illinois and his successors in office are hereby appointed agents to accept service of process for Underwriters.

The insolvency or bankruptcy of the Insured shall not release Underwriters from their obligations under this insurance.

If you have any complaints concerning your insurance, please contact the Correspondent. If he is unable to resolve the matter, you may contact Lloyd's Illinois, Inc. You may also seek the assistance of the Illinois Department of Financial and Professional Regulation Division of Insurance, 320 W. Washington Street, Springfield, Illinois 62767-0001.

Rules applicable to insurance with terms less than or more than one year:

A.    If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for an insurance written for a term of one year.

B.    If insurance has been in force for more than one year:

1.    Determine full annual premium as for insurance written for a term of one year.

2.    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

3.    Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

**8.  Cancellation.** If this certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

**9.  Short Rate Cancellation Table for Term of One Year.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

| Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium | Days Insurance in Force | Percent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6% | 70 - 73 | 30% | 157 - 160 | 54% | 261 - 264 | 78% |
| 3 - 4 | 7% | 74 - 76 | 31% | 161 - 164 | 55% | 265 - 269 | 79% |
| 5 - 6 | 8% | 77 - 80 | 32% | 165 - 167 | 56% | 270 - 273 (9 Mo.) | 80% |
| 7 - 8 | 9% | 81 - 83 | 33% | 168 - 171 | 57% | 274 - 278 | 81% |
| 9 - 10 | 10% | 84 - 87 | 34% | 172 - 175 | 58% | 279 - 282 | 82% |
| 11 - 12 | 11% | 88 - 91 (3 Mo.) | 35% | 176 – 178 | 59% | 283 - 287 | 83% |
| 13 - 14 | 12% | 92 - 94 | 36% | 179 – 182 (6 Mo.) | 60% | 288 - 291 | 84% |
| 15 - 16 | 13% | 95 - 98 | 37% | 183 - 187 | 61% | 292 - 296 | 85% |
| 17 - 18 | 14% | 99 - 102 | 38% | 188 - 191 | 62% | 297 - 301 | 86% |
| 19 - 20 | 15% | 103 - 105 | 39% | 192 - 196 | 63% | 302 – 305 (10 Mo.) | 87% |
| 21 - 22 | 16% | 106 - 109 | 40% | 197 - 200 | 64% | 306 - 310 | 88% |
| 23 - 25 | 17% | 110 - 113 | 41% | 201 - 205 | 65% | 311 - 314 | 89% |
| 26 - 29 | 18% | 114 - 116 | 42% | 206 - 209 | 66% | 315 - 319 | 90% |
| 30 - 32 (1 Mo.) | 19% | 117 - 120 | 43% | 210 – 214 (7 Mo.) | 67% | 320 - 323 | 91% |

Contract No: ████████████
Named Insured:   Edgewater Valley Forge Fund III LP

| | | | | | | | | |
|---|---|---|---|---|---|---|---|
| 33 - 36 | 20% | 121 - 124 (4 Mo.) | 44% | 215 - 218 | 68% | 324 - 328 | 92% |
| 37 - 40 | 21% | 125 - 127 | 45% | 219 - 223 | 69% | 329 - 332 | 93% |
| 41 - 43 | 22% | 128 - 131 | 46% | 224 - 228 | 70% | 333 – 337 (11 Mo.) | 94% |
| 44 - 47 | 23% | 132 - 135 | 47% | 229 - 232 | 71% | 338 - 342 | 95% |
| 48 - 51 | 24% | 136 - 138 | 48% | 233 - 237 | 72% | 343 - 346 | 96% |
| 52 - 54 | 25% | 139 - 142 | 49% | 238 - 241 | 73% | 347 - 351 | 97% |
| 55 - 58 | 26% | 143 - 146 | 50% | 242 - 246 (8 mo.) | 74% | 352 - 355 | 98% |
| 59 - 62 (2 Mo.) | 27% | 147 - 149 | 51% | 247 - 250 | 75% | 356 - 360 | 99% |
| 63 - 65 | 28% | 150 – 153 (5 Mo.) | 52% | 251 - 255 | 76% | 361 – 365 (12 Mo.) | 100% |

Rules applicable to insurance with terms less than or more than one year:

A.    If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for Insurance written for a term of one year.

B.    If insurance has been in force for more than one year:
1.    Determine full annual premium as for insurance written for a term of one year.
2.    Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
3.    Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force

**10.  Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

CATAMEND-L (08/22)
Catalytic Risk Managers & Insurance Agency, LLC.

Page 4 of 4

Contract No:
Named Insured:   Edgewater Valley Forge Fund III LP

---

# SCHEDULE OF FORMS

---

It is hereby understood and agreed that in consideration of the premium charged, the following forms and endorsements are attached and incorporated into the policy:

CAT7135 - Wind Subscription Policy Cover Page
CAT-OFAC - U.S. Treasury Notice OFAC
CAT-FL - Florida Notices
CAT8011 - Claims Handling Notice
CAT3023 - U.S. Terrorism Risk Insurance Act of 2002 Not Purchased Clause
CAT3024 - Terrorism Exclusion Endorsement
CAT3050 - Declarations Page
CAT3045 - Subscription Participation Page
CATAMEND-GO - GuideOne National Insurance Company Amendatory Endorsement
CATAMEND-HDI - HDI Amendatory Endorsement
CATAMEND-SUM - Summit Specialty Insurance Company Amendatory Endorsement
CATAMEND-L - Underwriters at Lloyds Amendatory Endorsement
CAT3044 - Schedule of Forms
CAT7141 - Asbestos Endorsement
CAT7136 - EIFS Extension
CAT8002 - Electronic Date Recognition Exclusion EDRE
CAT8003 - Exclusion of Certain Computer Related Losses
CAT3037 - Exclusion of Loss Due to Virus or Bacteria
CAT7145 - Exterior Cosmetic Damage Exclusion
CAT8001 - Nuclear Biological Exclusion
CAT3018 - Pre-Existing Damage Exclusion
CAT8000 - Property Cyber and Data Exclusion
CAT3032 - Seepage and or Pollution and or Contamination Exclusion
CAT7053 - Toxic Drywall Exclusion
CAT3020 - Toxic Materials Exclusion
CAT8009 - War and Civil War Exclusion Clause
CATDIAMOND - Catalytic Diamond Commercial Property Form
CAT7044 - Causes of Loss - Special Form
CAT7074 - Accounts Receivable Coverage Extension
CAT3003 - Additional Conditions Endorsement
CAT7080 - Florida Sinkhole Loss Coverage Endorsement
CAT3009 - Joint or Disputed Loss Agreement
CAT3015 - Ordinance or Law Coverage - Sublimits
CAT7128 - Protective Safeguards
CAT7129 - Roof Surfacing Coverage Limitation Endorsement
CAT3053 - Scheduled Property Coverage Extension
CAT7075 - Valuable Papers and Records Coverage Extension
CAT7085 - Equipment Breakdown Coverage Declarations
CAT7121 - Equipment Breakdown Participation Page
CAT7086 - Equipment Breakdown Coverage Form

Contract No: ████████
Named Insured:     Edgewater Valley Forge Fund III LP

---

# ASBESTOS ENDORSEMENT

---

A.   This policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period and is only insured against the risks of direct physical loss or damage to Covered Property from the perils described in the Causes of Loss form attached to the policy, except as otherwise excluded. .

This coverage is subject to each of the following specific limitations:

1.   The said building or structure must be insured under this policy for damage by a listed peril.

2.   The listed peril must be the immediate, sole cause of the damage of the asbestos.

3.   The Insured must report to the Insurer the existence and cost of the damage as soon as practicable after the listed peril first damaged the asbestos. However, this policy does not insure any such damage first reported to the Insurer more than 12(twelve) months after the expiration, or termination, of the policy period.

4.   Insurance under this policy in respect of asbestos shall not include any sum, loss, cost, or expense relating to:

(a)   Any faults in the design, manufacture or installation of the asbestos;

(b)   Asbestos not physically damaged by the listed peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.   Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum, loss, cost, or expense relating thereto.

Contract No: ██████████
Named Insured:   Edgewater Valley Forge Fund III LP

---

# EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS) EXTENSION

---

It is hereby understood and agreed that Item d. Exterior Insulation and Finish System (EIFS) Exclusion as stated in section B. Exclusions, Item 1.d. Exterior Insulation and Finish System (EIFS) Exclusion) on page 2 of the Causes of Loss – Special Form (CAT7044) , Causes of Loss – Named Storm (CAT7037), or Causes of Loss – Windstorm or Hail (CAT7007), as applicable, is deleted in its entirety.

Contract No:  ▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

---

# ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

---

It is hereby understood and agreed that this Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

1.  The calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not, or

2.  Any change, alteration or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

# EXCLUSION OF CERTAIN
# COMPUTER-RELATED LOSSES

It is hereby understood and agreed that the following exclusion applies to this policy:

A.   The Insurer will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

    1.   The failure, malfunction or inadequacy of:

        a.   Any of the following, whether belonging to any insured or to others:

           1)   Computer hardware, including microprocessors;

           2)   Computer application software;

           3)   Computer operating systems and related software;

           4)   Computer networks;

           5)   Microprocessors (computer chips) not part of any computer system; or

           6)   Any other computerized or electronic equipment or components; or

        b.   Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this exclusion;

        due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

    2.   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by the Insured or for the Insured to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this exclusion.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim or expense.

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

It is hereby understood and agreed that the following exclusion applies to this policy:

A.    The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that insure Covered Property and forms or endorsements that insure Business Income Coverages.

B.    The Insurer(s) will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from **fungus**.

C.    With respect to any loss or damage subject to the exclusion in Paragraph B., such exclusion supersedes any exclusion relating to **pollutants**.

D.    The terms of the exclusion in Paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No:        ████████████
Named Insured:     Edgewater Valley Forge Fund III LP

---

# EXTERIOR COSMETIC DAMAGE EXCLUSION

---

It is hereby understood and agreed that the following exclusion applies to the policy:

The following applies with respect to direct physical loss or damage from a **covered cause of loss** to a building or structure as shown on the latest Statement of Values on file with the Insurer(s).

Under this policy, the Insurer(s) will not pay for **cosmetic damage** to any **exterior surface** caused by a **covered cause of loss**.

As used in this endorsement, the following definitions apply:

**Cosmetic damage** means marring, pitting or other superficial damage that alters the appearance of the **exterior surface**, but such damage does not prevent the **exterior surface** from continuing to function as a barrier to entrance of the elements to the same extent as it did before the **cosmetic damage** occurred.

**Exterior surface** includes but is not limited to the shingles, tiles (including clay, concrete or any other type), cladding, metal or synthetic sheeting or similar materials covering any roof, and includes all materials used in securing any roof surface and all materials applied to or under any roof surface for moisture protection, as well as roof flashing, windows and window surfaces, doors, handrails and all exterior siding.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

CAT7145  (09/22)                                                                                               Page 1 of 1
Catalytic Risk Managers & Insurance Agency, LLC.

Contract No:   ▬▬▬▬▬
Named Insured:    Edgewater Valley Forge Fund III LP

---

# NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS EXCLUSION

---

It is hereby understood and agreed that the following exclusion applies to this policy:

A.   The Insurer(s) will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

   1)   Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

   2)   Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

   3)   Chemical Hazard – including, but not limited to, any chemical agent, material, product or substance;

   4)   Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

B.   The provisions of subparagraphs A. 2) and A. 3) will not apply where the agent, material, product or substance at issue is utilized in the course of business by an insured.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ██████████
Named Insured:      Edgewater Valley Forge Fund III LP

---

# PRE-EXISTING DAMAGE EXCLUSION

---

It is hereby understood and agreed that this policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing damage to any Covered Property, at the time of the loss.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No:   ▮▮▮▮▮▮▮▮
Named Insured:      Edgewater Valley Forge Fund III LP

# PROPERTY CYBER AND DATA EXCLUSION

It is hereby understood and agreed that any provision to the contrary within this policy or any endorsement thereto this policy excludes any:

1.   Cyber Loss;

2.   Loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any **data**, including any amount pertaining to the value of such **data**;

Regardless of any other cause or event contributing concurrently or in any other sequence thereto.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

This endorsement supersedes and, if in conflict with any other wording in the policy or any endorsement thereto having a bearing on **cyber loss** or **data**, replaces that wording.

**Definitions**

**Cyber Loss** means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any **cyber act** or **cyber incident** including, but not limited to, any action taken in controlling, preventing, suppressing, or remediating any **cyber act** or **cyber incident**.

**Cyber Act** means an unauthorized, malicious or criminal act or series of related unauthorized, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any **computer system**.

**Cyber Incident** means:

1.   Any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any **computer system**; or

2.   Any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any **computer system**.

**Computer System** means:

1.   Any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility;

2.   Owned or operated by the Insured or any other party.

**Data** means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a **computer system**.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ▬▬▬▬
Named Insured:      Edgewater Valley Forge Fund III LP

---

# SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

---

It is hereby understood and agreed within the policy of which this exclusion forms part (or within any other endorsement which forms part of this policy), this policy does not insure land (including but not limited to land on which the covered property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

**Seepage And/Or Pollution And/Or Contamination Exclusion**

Notwithstanding any provision to the contrary within the policy of which this endorsement forms part (or within any other endorsement which forms part of this policy), this policy does not insure:

1.   Any loss, damage, cost or expense, or

2.   Any increase in insured loss, damage, cost or expense, or

3.   Any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a **covered cause of loss**, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term any kind of seepage or any kind of pollution and/or contamination as used in this endorsement includes (but is not limited to):

1.   Seepage of, or pollution and/or contamination by anything, including but not limited to, any material designated as a **hazardous substance** by the United States Environmental Protection Agency or a **hazardous material** by the United States Department of Transportation, or defined as a **toxic substance** by the Canadian Environmental Protection Act for the purposes of part II of that act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other federal, state, provincial, municipal or other law ordinance or regulation; and

2.   The presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

**Hazardous Substance** means any such substance shown on the current List of Lists Appendix E:  CERCLA Hazardous Substances – Chemical Categories, as maintained by the United States Environmental Protection Agency.

**Hazardous Material** means any such material so designated by the United State Department of Transportation.

**Toxic Substance** means any such substance shown on the List of substances, as maintained by the Canadian Environmental Protection Act environmental registry.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No:
Named Insured:     Edgewater Valley Forge Fund III LP

---

# TOXIC DRYWALL EXCLUSION

---

It is hereby understood and agreed that this policy does not apply to any loss, damage, cost or expense arising out of, caused by, or attributable to, whether in whole or in part, the manufacture, sale, distribution, use, installation, repair, removal, disposal, presence of or service of sheetrock, gypsum board, wallboard, or any similar **toxic drywall** product**.**

**Toxic drywall** means drywall (also known as plasterboard, wall board, gypsum paneling, gypsum boarding or sheet rock) that:

1.   Was manufactured in or distributed from China; or

2.   Emits hydrogen sulfide (H2S), sulfur dioxide (SO2), strontium sulfide (SrS), or carbonyl sulfide (COS).

In addition, there is no coverage under the policy for the following:

1.   **Toxic drywall** material removal unless the **toxic drywall** is itself first damaged by a **covered cause of loss**;

2.   Demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating **toxic drywall** material;

3.   Any governmental direction or request declaring that **toxic drywall** material present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; and

4.   The cost or expense of testing of or monitoring emissions.


The Insurer(s) shall have no duty to defend or indemnify any insured against any loss, claim, **suit** or other proceeding alleging damages to which this exclusion applies.


This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

---

# TOXIC MATERIALS EXCLUSION

---

It is hereby understood and agreed that this policy does not cover loss or damage including cost or expense caused by or resulting from the actual, alleged or threatened release or escape of any solid, liquid or gaseous material that is toxic or poisonous to humans or animals, (toxic materials), including but not limited to dioxin, polychlorinated biphenyls and lead.

This exclusion also applies to:

1.  The removal of toxic materials from any structure, fixture, item of personal property or product;

2.  Any demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating toxic materials;

3.  Any governmental direction or request declaring that toxic materials present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; and

4.  The testing for or monitoring toxic materials.


This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ████████
Named Insured:   Edgewater Valley Forge Fund III LP

---

# WAR AND CIVIL WAR EXCLUSION CLAUSE

---

It is hereby understood and agreed that this policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to any such loss, damage, cost, claim, or expense.

Contract No: ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

---

# DIAMOND COMMERCIAL PROPERTY FORM

---

Words that appear in **bold** type are specifically defined.  See **Section X – Policy Definitions**.

In consideration of the premium charged, it is hereby understood and agreed that this policy covers direct physical loss or damage to the Covered Property caused by a **covered cause of loss** occurring during the policy period.  Coverage is subject to the terms, conditions, provisions, limitations, exclusions and definitions contained in this policy.

### Section I – Coverages and Limits of Insurance

A.    Coverage Territory

The coverage territory is the United States of America.

B.    Limit of Insurance – The total maximum liability in any one occurrence as a result of all **covered causes of loss** or damage, regardless of the number of locations, coverages, or perils insured under this policy shall not exceed each Insurer(s) proportional share of:

$10,000,000

The limit of insurance above and the structure of the program is further defined on the Declarations Page and Participation Page of this policy.

C.    Occurrence Limit of Insurance

1.    The limit of insurance shown in B. Limit of Insurance, is the total limit of the Insurer(s)'s liability applicable per occurrence, as hereafter defined and which will be subject to Section II - Sublimits of Insurance. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Insurer(s) exceed this limit or amount irrespective of the number of locations, coverage or perils insured involved.

The term occurrence shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event first occurring in the policy period. When the term applies to loss or losses from the perils of tornado, cyclone, **hurricane**, windstorm, **named windstorm**, hail, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the Covered Property occurs.

Occurrence for Flood

Occurrence shall mean all losses, whenever occurring, which arise between the time of movement of water into, onto, or over the property insured hereunder and the receding of the same, regardless of the period of time so embraced; EXCEPT, no occurrence shall be deemed to commence earlier than the date and time of the happening of the first recorded individual loss to the Insured in that occurrence during the policy period nor to extend to beyond thirty days after the expiry of this policy.

Contract No: ███████
Named Insured:   Edgewater Valley Forge Fund III LP

2. The premium for this policy is based upon the Statement of Values on file with the Insurer(s). In the event of loss hereunder, liability of the Insurer(s), subject to the terms of paragraph one C.1. above, shall be limited to the least of the following:

   a. The actual adjusted amount of loss, less applicable deductible(s).

   b. 100 percent of the individually stated value for each scheduled item of property insured, as shown on the latest Statement of Values on file with the Insurer(s), less applicable deductible(s).

   c. The Insurer(s) proportional share of the limit of insurance or amount of insurance shown in Section B. Limit of Insurance after the application of policy deductibles.

☐ If box is checked, it is understood and agreed that item 2.b. above is deleted in its entirety.

## Section II – Sublimits of Insurance

The sublimit amounts stated below are included within, and not in addition to, the applicable limit of insurance shown elsewhere in this policy. Insurer(s) shall not be liable for more than the proportional share of the sublimit amounts in any one occurrence. Each sublimit for a specified interest listed below is the total limit recoverable for that specified interest for all loss, damage or expense from a **covered cause of loss** per occurrence, subject to all other policy provisions. Where the sublimit of insurance listed below is for a **covered cause of loss**, such as Earthquake, Earthquake Sprinkler Leakage & Volcanic Eruption or Flood, any sublimit for loss, damage or expense to a specified interest listed below will apply to all loss, damage or expense to that specified interest caused by such **covered cause of loss**.  If the words NOT COVERED are shown instead of a limit, sublimit or number of days, then no coverage is provided for that coverage or **covered cause of loss**. If the word INCLUDED is shown, then full coverage is provided based on the Statement of Values on file with Insurer(s).

| | | | |
|---|---|---|---|
| A. | Accounts Receivable | $100,000 | See Accounts Receivable Coverage Extension attached to policy. |
| B. | Business Personal Property Temporarily in Portable Storage Units | $25,000 | |
| C. | Contingent Time Element | NOT COVERED | |
| D. | Debris Removal Additional Expense | $100,000 | |
| E. | Earthquake, Earthquake Sprinkler Leakage & Volcanic Eruption | NOT COVERED | Limit is policy term **aggregate**.  See Earthquake, Earthquake Sprinkler Leakage and Volcanic Eruption Coverage Endorsement attached to policy. |
| F. | Electronic Data and Media | $100,000 | |
| G. | Errors and Omissions | AS PER FORM | |
| H. | Expediting Expense | AS PER FORM | |
| I. | Extended Time Element (Extended Period of Indemnity) | NOT COVERED | |
| J. | Fine Arts | $100,000 | $10,000 max per item |
| K. | Fire Department Service Charge | $25,000 | |
| L. | Fire Extinguishing Recharge | $10,000 | |
| M. | Flood | NOT COVERED | Limit is policy term **aggregate**. See Flood Coverage Endorsement attached to policy. |
| N. | Incidental Additions and Renovations | AS PER FORM | |
| O. | Increased Cost of Construction | See CAT3015 | |

Contract No: ████████
Named Insured:     Edgewater Valley Forge Fund III LP

| | | | |
|---|---|---|---|
| P. | Ingress/Egress | NOT COVERED | |
| Q. | Interruption by Civil Authority | NOT COVERED | |
| R. | Fungus | $25,000 | Limit is policy term **aggregate**. |
| S. | Limited Pollution | $100,000 | |
| T. | Lost (Or Theft Of) Key Consequential Loss / Lock Replacement | $10,000 | |
| U. | Newly Acquired or Constructed Property - Building | $500,000 | |
| V. | Newly Acquired or Constructed Property - Business Personal Property | $250,000 | |
| W. | Non-Owned Detached Trailers | $10,000 | |
| X. | Ordinary Payroll | NOT COVERED | |
| Y. | Personal Effects and Property of Others | $100,000 | |
| Z. | Preservation of Property          30 days and | $50,000 | |
| AA. | Property in Transit | $10,000 | |
| BB. | Property Off-Premises | $50,000 | |
| CC. | Reward Reimbursement | NOT COVERED | |
| DD. | Royalties | AS PER FORM | |
| EE. | Sewer Back Up | $50,000 | |
| FF. | Sinkhole | $10,000,000 | See Florida or All Other States Sinkhole Loss Coverage Endorsement attached to policy. |
| GG. | Valuable Papers and Records | $50,000 | See Valuable Papers and Records Coverage Extension attached to policy. |
| HH. | Wind Driven Rain | NOT COVERED | See Wind Driven Rain Endorsement attached to policy. |

Contract No: ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

**Section III – Policy Deductibles**

In each case of loss covered by this policy, the Insurer(s) will be liable only if the Insured sustains a loss in a single occurrence greater than the applicable deductible specified below, and then only for that amount that exceeds the applicable deductible.

Unless otherwise stated below:

A.    A deductible that applies on a per location or per building basis will apply separately to each location or building where the physical loss or damage occurred regardless of the number of locations or buildings involved in the occurrence.

B.    Unless stated otherwise, if two or more peril deductibles apply in an occurrence, the total deducted will not exceed the largest applicable deductible. If two or more peril deductibles apply on a per location or per building basis in an occurrence, the largest peril deductible applying to each location or building will be applied separately to each such location or building.

C.    If a **time element** deductible and another deductible apply to a single occurrence, then the Insurer(s) shall apply both deductibles to the occurrence.

**The applicable deductible applies where indicated:**

**Named Windstorm:**

☐  Deductible applies on a calendar year basis if box is checked (See CAT7072).
☐  Deductible applies on a policy term **aggregate** basis if box is checked (see CAT7118).

5% of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
☒  per building, subject to a minimum of $100,000 per occurrence.
☐  per location, subject to a minimum of N/A per occurrence.
☐  per total insured values, subject to a minimum N/A per occurrence.

The **Named Windstorm** Deductible, as shown above, applies to covered loss or damage to Covered Property and **time element**/rental values by a **named windstorm**, regardless of any other cause or event that contributes concurrently or in any consequence to the damage or loss.

**Hurricane:**

☐  Deductible applies on a calendar year basis if box is checked (See CAT7073).
☐  Deductible applies on a policy term **aggregate** basis if box is checked (see CAT7117).

N/A of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
☐  per building, subject to a minimum of N/A per occurrence.
☐  per location, subject to a minimum of N/A per occurrence.
☐  per total insured values, subject to a minimum N/A per occurrence.

The **Hurricane** Deductible, as shown above, applies to covered loss or damage to Covered Property and **time element**/rental values by a **hurricane**, regardless of any other cause or event that contributes concurrently or in any consequence to the damage or loss.

**All Other Windstorm/Hail:**

N/A per occurrence, or
5% of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
☒  per building, subject to a minimum of $100,000 per occurrence.
☐  per location, subject to a minimum of N/A per occurrence.
☐  per total insured values, subject to a minimum N/A per occurrence.

The All Other Windstorm/Hail Deductible, as shown above, applies to covered loss or damage to Covered Property and **time element**/rental values by non-**named windstorm** or hail, regardless of any other cause or event that contributes concurrently or in any consequence to the damage or loss.

**Wind Driven Rain:**

N/A per occurrence, or
N/A of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
☐  per building, subject to a minimum of N/A per occurrence.
☐  per location, subject to a minimum of N/A per occurrence.

Contract No:  ██████████
Named Insured:     Edgewater Valley Forge Fund III LP

☐     per total insured values, subject to a minimum N/A per occurrence.

**Flood:**

N/A per occurrence, or
N/A of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
  ☐     per building, subject to a minimum of N/A per occurrence.
  ☐     per location, subject to a minimum of N/A per occurrence.
  ☐     per total insured values, subject to a minimum N/A per occurrence.

N/A, except the deductible shall be equivalent to the maximum available National Flood Insurance Program (NFIP) limits for the real or personal property at each building, whether or not such coverage is purchased or maintained, and whether or not the real or personal property at each building is covered per the terms and conditions of the National Flood Insurance Program.

**Earthquake and Earthquake Sprinkler Leakage:**

N/A per occurrence, or
N/A of total insured values as stated on the latest Statement of Values on file with insurer(s) per occurrence
  ☐     per building, subject to a minimum of N/A per occurrence.
  ☐     per location, subject to a minimum of N/A per occurrence.
  ☐     per total insured values, as contained in the Statement of Values on file with the Insurer(s), subject to a minimum
      N/A per occurrence.

**Water Damage:**

N/A per occurrence.

**All Other Perils:**

$25,000 per occurrence.

Deductible Clause:

A deductible amount is calculated and applied based on the amount or percentage as shown above:

A.   If the deductible is on a per building basis, the deductible is applied to the sum of building, business personal property and **time element**/rental values of each individual building. An additional deductible is applied separately to the sum of all other real property values declared in the latest Statement of Values on file with Insurer(s), including items covered under the Scheduled Property Coverage Extension.

B.   If the deductible is on a per location basis, the deductible is applied to all insured buildings, business personal property and **time element**/rental values, including all other property values declared in the latest Statement of Values on file with Insurer(s) and covered under the Scheduled Property Coverage Extension, at the location affected by loss or damage.

C.   If the deductible is on a % TIV basis, the deductible is applied to the total insured values, as contained in the latest Statement of Values on file with the Insurer(s), including items covered under the Scheduled Property Coverage Extension.

D.   If the deductible is on a per unit of insurance basis, each of the following shall be considered a separate unit of insurance and the % is applied to the total insured values for each separate unit of insurance shown below:

    1)   Each separate building;
    2)   The business personal property, including stock/inventory (if covered), of each separate building or structure;
    3)   Business Income coverages **(time element**, rental value, extra expense, etc.) applicable at each covered location;
    4)   The total of all Scheduled Property Coverage Extensions listed on CAT3053.

If the adjusted amount of loss is less than or equal to the deductible, the Insurer(s) will not pay for that loss. If the adjusted amount of loss exceeds the deductible, the Insurer(s) will then subtract the deductible from the adjusted amount of loss, and will pay the resulting amount or the limit of insurance or applicable sublimit of insurance, whichever is less.

Contract No: ████████
Named Insured:    Edgewater Valley Forge Fund III LP

**Section IV – Covered Causes of Loss**

This policy insures against the risks of direct physical loss or damage to Covered Property from the perils described in the Causes Of Loss form attached to this policy, except as otherwise excluded.

Contract No:  █████████

Named Insured:  Edgewater Valley Forge Fund III LP

**Section V – Covered Property**

A.  Coverage

The Insurer(s) will pay for direct physical loss of or damage to Covered Property at the **premises** described on the Declarations Page caused by or resulting from any **covered cause of loss**.

1.  Covered Property

Covered Property, as used in this policy, means the type of property described in this section, A.1., and limited in A.2. Excluded Property, if the Covered Property is listed on the Declarations Page.

a.  Building, meaning the building or structure, including:

1)  Completed additions;

2)  Fixtures, including outdoor fixtures

3)  Permanently installed:

(a)  Machinery; and

(b)  Equipment;

(c)  Fences;

(d)  Pools and Pool Equipment; and

(e)  Signs

Coverage for items a. 2) and 3) is limited to $50,000 per occurrence unless a higher amount is shown on the Scheduled Property Coverage Endorsement (CAT3053).

b.  The Insured's business personal property consists of the following property located in or on the building or structure described on the Statement of Values or in the open (or in a vehicle) within 100 feet of the **premises** described on the Statement of Values:

1)  Furniture and fixtures;

2)  Machinery and equipment;

3)  **Stock;**

4)  All other personal property owned by the Insured and used in the Insured's business;

5)  Labor, materials or services furnished or arranged by the Insured on personal property of others;

6)  The Insured's use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a)  Made a part of the building or structure the Insured occupies but do not own; and

(b)  The Insured has acquired or made at the Insured's expense but cannot legally remove;

7)  Leased personal property for which the Insured has a contractual responsibility to insure, unless otherwise provided for under Coverage Extension, Personal Effects and Property of Others.

Contract No: ███████

Named Insured:    Edgewater Valley Forge Fund III LP

2.    Excluded Property

Covered Property does not include:

a.    Accounts, bills, currency, food stamps or other evidences of debt, **money**, notes or **securities**. Lottery tickets held for sale are not **securities**;

b.    Animals;

c.    Automobiles held for sale;

d.    Bridges, dikes, levees and other surface containment structures;

e.    Roadways, walks, patios or other paved surfaces;

f.    Contraband, or property in the course of illegal transportation or trade;

g.    The cost of excavations, grading, backfilling or filling;

h.    Foundations of buildings, structures, machinery or boilers if their foundations are below:

1)    The lowest basement floor; or

2)    The surface of the ground, if there is no basement;

i.    Land and land values (including land on which the property is located);

j.    Water;

k.    Growing crops or lawns (other than lawns which are part of a vegetated roof);

l.    Personal property while airborne or waterborne;

m.    Bulkheads, pilings, piers, wharves or docks;

n.    Property that is covered under another policy in which it is more specifically described, except for the excess of the amount due (whether the Insured can collect on it or not) from that other insurance;

o.    Retaining walls that are not part of a building;

p.    Irrigations, electrical cabling and wires, conduits, pipes, flues, sewers, tanks, drains and any similar property, and any apparatus in connection beneath the surface of the ground on the **premises** insured;

q.    **Electronic data** and media, except as provided under the Additional Coverage, **Electronic Data** and Media;

r.    The cost to replace or restore the information on **valuable papers and records**, including those which exist as **electronic data**. **Valuable papers and records** include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems.

s.    Vehicles or self-propelled machines (including aircraft or watercraft) that:

1)    Are licensed for use on public roads; or

2)    Are operated principally away from the described **premises**.

This paragraph does not apply to:

(a)    Vehicles or self-propelled machines or autos the Insured manufactures, processes or warehouses;

(b)    Vehicles or self-propelled machines, other than autos, the Insured holds for sale;

(c)    Rowboats or canoes out of water at the described **premises**; or

(d)    Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers;

Contract No: ▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

t.    Grass or lawns, grain, hay, straw or other crops; or

u.    Radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants  which are **stock** or are part of a vegetated roof), all except as provided in the coverage extensions.

3.    Additional Coverages

a.    Debris Removal

1)    Subject to paragraphs 2), 3) and 4), the Insurer(s) will pay the Insured's expense to remove debris of Covered Property and other debris that is on the described **premises**, when such debris is caused by or results from a **covered cause of loss** that occurs during the policy period. The expenses will be paid only if they are reported to the Insurer(s) in writing within 180 days of the date of direct physical loss or damage.

2)    Debris removal does not apply to costs to:

(a)    Remove debris of property of the Insured's that is not insured under this policy, or property in the Insured's possession that is not Covered Property;

(b)    Remove debris of property owned by or leased to the landlord of the building where the Insured's described **premises** are located, unless the Insured has a contractual responsibility to insure such property and it is insured under this policy;

(c)    Remove any property that is Excluded Property, including property addressed under the Outdoor Property Coverage Extension;

(d)    Remove property of others of a type that would not be Covered Property under this policy;

(e)    Remove deposits of mud or earth from the grounds of the described location;

(f)    Extract **pollutants** from land or water; or

(g)    Remove, restore or replace polluted land or water.

3)    Subject to the exceptions in Paragraph 4), the following provisions apply:

(a)    The most the Insurer(s) will pay for the total of direct physical loss or damage including debris removal expense is the limit of insurance applicable to the Covered Property that has sustained loss or damage.

(b)    Subject to (a) above, the amount the Insurer(s) will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that the Insurer(s) pays for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most the Insurer(s) will pay for removal of debris of other property (if such removal is covered under this additional coverage) is $5,000 at each location.

4)    The Insurer(s) will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a)    The total of the actual debris removal expense plus the amount the Insurer(s) pays for direct physical loss or damage exceeds the limit of insurance on the Covered Property that has sustained loss or damage.

(b)    The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that the Insurer(s) pays for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if 4)(a) and/or 4)(b) applies, the Insurer(s)'s total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the limit of insurance on the Covered Property that has sustained loss or damage, plus $25,000, unless a higher amount is shown in **Section II – Sublimits of Insurance**.

b.    Electronic Data and Media

1)    Subject to the provisions of this additional coverage, the Insurer(s) will pay for the cost to replace or restore electronic media which has been destroyed or damaged by a **covered cause of loss**. To the extent that electronic media is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the **electronic data** was stored, with blank media of substantially identical type.

2)    This additional coverage does not apply to the Insured' **stock** of prepackaged software, or to **electronic data** which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

Contract No: ████████
Named Insured:    Edgewater Valley Forge Fund III LP

3)  This policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of **electronic data** from any cause whatsoever (including but not limited to **computer virus**) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting there from, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

4)  The **covered causes of loss** applicable to the Insured's business personal property apply to this Additional Coverage, **Electronic Data** and Media, subject to the following:

(a)  If the Causes Of Loss - Special Form applies, coverage under this additional coverage, **Electronic Data** and Media, is limited to the **specified causes of loss** as defined in that form and collapse as set forth in that form.

(b)  If the Causes Of Loss form is endorsed to add a **covered cause of loss**, the additional **covered cause of loss** does not apply to the coverage provided under this additional coverage, **Electronic Data** and Media.

5)  The most the Insurer(s) will pay under this additional coverage, **Electronic Data** and Media, is $2,500, unless a higher amount is shown in **Section II – Sublimits of Insurance** for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of **premises**, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

c.  Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a **covered cause of loss**, the Insurer(s) will pay up to $1,000 for service at each **premises** described on the Statement of Values, unless a higher amount is shown in **Section II – Sublimits of Insurance**. Such limit is the most the Insurer(s) will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This additional coverage applies to the Insured's liability for fire department service charges:

1)  Assumed by contract or agreement prior to loss; or

2)  Required by local ordinance.

No deductible applies to this additional coverage.

d.  Fire Extinguisher Recharge

1)  The Insurer(s) will pay for the loss and disposal of fire extinguishing materials expended for other than portable fire extinguishers, subject to $5,000 per occurrence unless a higher amount is shown in **Section II – Sublimits of Insurance**.

e.  Fungus

This policy is extended to cover the loss or damage to covered property caused by **fungus** arising directly form a specified cause of loss, including the cost of removal of the **fungus**.  Coverage applies only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

As used in this additional coverage, loss or damage by **fungus** arising directly from a specified cause of loss means:

1)  Direct physical loss or damage to covered property caused by **fungus**, including the cost of the removal of the **fungus**;

2)  The cost to tear out and replace any part of the building or other property as needed to gain access to the **fungus**; and

3)  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed.

The most Insurer(s) will pay for loss or damage under this extension is shown in Section II – Sublimits of Insurance.  Regardless of the number of claims, this limit is the most the Insurer(s) will pay for the total of all loss or damage arising out of all occurrences of specified causes of loss which take place during the policy period.  With respect to a particular occurrence of loss which results in loss or damage by **fungus**, the Insurer(s) will not pay more than the amount shown in Section II – Sublimits of Insurance even if the fungus continues to be present or active, or recurs, in a later policy period.

Contract No:
Named Insured:    Edgewater Valley Forge Fund III LP

f.    Increased Cost of Construction

   1)    In the event of damage by a **covered cause of loss** to a building that is Covered Property, the Insurer(s) will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(2) through e.(8) of this additional coverage.

   2)    The ordinance or law referred to in e.(1) of this additional coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described **premises** and is in force at the time of loss.

   3)    Under this additional coverage, the Insurer(s) will not pay any costs due to an ordinance or law that:

      (a)    The Insured was required to comply with before the loss, even when the building was undamaged; and

      (b)    The Insured failed to comply with.

   4)    Under this additional coverage, the Insurer(s) will not pay for:

      (a)    The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by **pollutants** or due to the presence, growth, proliferation, spread or any activity of **fungus**, or bacteria; or

      (b)    Any costs associated with the enforcement of or compliance with an ordinance or law which requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants, fungus,** or bacteria.

   5)    The most the Insurer(s) will pay under this additional coverage, for each described building insured under this policy, is $10,000 or 5% of the limit of insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket limit of insurance which applies to more than one building or item of property, then the most the Insurer(s) will pay under this additional coverage, for that damaged building, is $10,000, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

   6)    With respect to this additional coverage:

      (a)    The Insurer(s) will not pay for the increased cost of construction:

         (i)    Until the property is actually repaired or replaced at the same or another location; and

         (ii)   Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. The Insurer(s) may extend this period in writing during the two years.

      (b)    If the building is repaired or replaced at the same location, or if the Insured elects to rebuild at another location, the most the Insurer(s) will pay for the increased cost of construction, subject to the provisions of e.(5) of this additional coverage, is the increased cost of construction at the same location.

      (c)    If the ordinance or law requires relocation to another location, the most the Insurer(s) will pay for the increased cost of construction, subject to the provisions of e.(5) of this additional coverage, is the increased cost of construction at the new location.

   7)    This additional coverage is not subject to the terms of the ordinance or law exclusion to the extent that such exclusion would conflict with the provisions of this additional coverage.

   8)    The costs addressed in the loss payment and valuation conditions in this policy, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this additional coverage, as stated in e.(5) of this additional coverage, is not subject to such limitation.

g.    Preservation of Property

   If it is necessary to move Covered Property from the described **premises** to preserve it from loss or damage by a **covered cause of loss**, the Insurer(s) will pay for any direct physical loss or damage to that property:

   1)    While it is being moved or while temporarily stored at another location; and

   2)    Only if the loss or damage occurs within 30 days after the property is first moved.

Contract No: ███████
Named Insured:    Edgewater Valley Forge Fund III LP

   3)   The most the Insurer(s) will pay under this additional coverage is $5,000 per occurrence, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

4.   Coverage Extensions

   Except as otherwise provided, the following extensions apply to property located in or on the building described on the Statement of Values or in the open (or in a vehicle) within 100 feet of the described **premises.**

   a.   Business Personal Property Temporarily In Portable Storage Units

      1)   The insurance that applies to the Insured's business personal property is extended to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described on the Statement of Values or within 100 feet of the **premises** described on the Statement of Values.

      2)   If the applicable Covered Causes Of Loss form or elsewhere in this policy contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

      3)   Coverage under this Extension:

         (a)   Will end 90 days after the business personal property has been placed in the storage unit;

         (b)   Does not apply if the storage unit itself has been in use at the described **premises** for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

      4)   The most the Insurer(s) will pay for the total of all loss or damage to business personal property is $10,000, unless a higher amount is shown in **Section II – Sublimits of Insurance** regardless of the number of storage units. Such limit is part of, not in addition to, the applicable limit of insurance on the Insured's business personal property. Therefore, payment under this extension will not increase the applicable limit of insurance on business personal property.

      5)   This extension does not apply to loss or damage to the storage unit itself.

   b.   Fine Arts

      The insurance that applies to the Insured's business personal property is extended to apply to loss or damage to fine arts.  This extension applies to fine arts while:

      1)   Temporarily on display or exhibit away from the described **premises**; or

      2)   In transit between the described **premises** and a location where the fine arts will be temporarily on display or exhibit.

      However, this extension does not apply to loss or damage to contraband or property in the course of illegal transportation or trade.

      The most the Insurer(s) will pay for loss or damage under this extension is $25,000 per occurrence, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

   c.   Incidental Additions and Renovations

      If not covered by other insurance:

      1)   Additions under construction, alterations and repairs to the building or structure;

      2)   Materials, equipment, supplies and temporary structures, on or within 100 feet of the described **premises**, used for making additions, alterations or repairs to the building or structure.

      The most the Insurer(s) will pay for loss or damage under this extension is $100,000 per occurrence, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

   d.   Limited Pollution

      1)   This policy is extended to cover the necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **pollutants** from land or water at an insured location when such land or water is polluted due to physical damage to Covered Property by a **covered cause of loss** that occurs during the policy period.

Contract No: ▬▬▬
Named Insured:     Edgewater Valley Forge Fund III LP

2) There will be no coverage unless such expenses are reported to the Insurer(s) within 180 days of the date of direct physical loss or damage.

3) This coverage does not apply to test for, monitor or assess the existence, concentration or effects of **pollutants**. However, Insurer(s) will pay for testing which is performed in the course of extracting the **pollutants** from the land or water.

The most the Insurer(s) will pay for loss or damage under this extension is $25,000 for the sum of all covered expenses arising from **covered causes of loss** occurring during the policy period, unless a higher amount is shown in **Section II –Sublimits of Insurance**.

e.    Lost (or Theft of) Keys Consequential Loss / Lock Replacement

The Insurer(s) will pay for the loss or theft or keys to the Insured's **premises**.  The coverage for lost or theft of keys applies only to:

1) The actual cost of the keys;

2) Adjustment of locks to accept new keys;

3) The cost of new locks. Including the cost of their installation; and

4) The necessary expense to repair or replace the exterior or interior door locks of a covered building

(a) If the door keys are stolen in a covered theft loss; or

(b) When the Covered Property is damaged and the door keys are stolen by burglars.

The most the Insurer(s) will pay for loss or damage under this extension is $5,000 per occurrence unless a higher amount is shown in **Section II – Sublimits of Insurance**.

f.    Newly Acquired or Constructed Property

1) Buildings

If this policy covers buildings, this policy is extended to apply to:

(a) New buildings while being built on the described **premises**; and

(b) Buildings the Insured acquire at locations, other than the described **premises**, intended for:

(i) Similar use as the building described on the Declarations Page; or

(ii) Use as a warehouse.

The most the Insurer(s) will pay for loss or damage under this extension is $250,000 at each building, unless a higher amount is shown in **Section II – Sublimits of Insurance**.

2) Business Personal Property

(a) If this policy covers business personal property, this policy is extended to apply to:

(i) Business personal property, including such property that the Insured newly acquires, at any location the insured acquires other than at fairs, trade shows or exhibitions; or

(ii) Business personal property, including such property that the Insured newly acquires, located at the Insured's newly constructed or acquired buildings at the location described on the Declarations Page.

The most the Insurer(s) will pay for loss or damage under this extension is $100,000 at each building, unless a higher amount is shown in **Section II – Sublimits of Insurance**.

(b) This extension does not apply to:

(i) Personal property of others that is temporarily in the Insured's possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in the Insured's possession in the course of the Insured's manufacturing or wholesaling activities.

Contract No: ████████

Named Insured:    Edgewater Valley Forge Fund III LP

    3)   Period of Coverage

With respect to insurance provided under this coverage extension for newly acquired or constructed property, coverage will end when any of the following first occurs:

(a)   This policy expires;

(b)   30 days expire after the Insured acquires the property or begins construction of that part of the building that would qualify as Covered Property; or

(c)   The Insured reports values to the Insurer.

The Insurer(s) will charge the Insured additional premium for values reported from the date the Insured acquires the property or begins construction of that part of the building that would qualify as Covered Property.

g.   Non-owned Detached Trailers

1)   The insurance that applies to the Insured's business personal property is extended to apply to loss or damage to trailers that the Insured does not own, provided that:

(a)   The trailer is used in the Insured's business;

(b)   The trailer is in the Insured's care, custody or control at the **premises** described on the Statement of Values; and

(c)   The Insured has a contractual responsibility to pay for loss or damage to the trailer.

2)   The Insurer(s) will not pay for any loss or damage that occurs:

(a)   While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b)   During hitching or unhitching **operations**, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

3)   The most the Insurer(s) will pay for loss or damage under this extension is $5,000, unless a higher amount is shown in **Section II - Sublimits of Insurance**.

4)   This insurance is excess over the amount due (whether the Insured can collect on it or not) from any other insurance covering such property.

h.   Personal Effects and Property of Others

The insurance that applies to the Insured's business personal property is extended to apply to:

1)   Personal effects owned by the Insured, Insured's officers, Insured's partners or members, Insured's managers or Insured's employees. This extension does not apply to loss or damage by theft.

2)   Personal property of others in Insured's care, custody or control.

3)   The most the Insurer(s) will pay for loss or damage under this extension is $2,500 at each described **premises**, unless a higher amount is shown in **Section II – Sublimits of Insurance**. The Insurer(s)'s payment for loss of or damage to personal property of others will only be for the owner of the property. Tenants' improvements and betterments are not considered to be the personal property of others.

i.   Property In Transit

This extension applies only to the Insured's personal property to which this form applies.

1)   The Insured may extend the Insurance provided by this policy to their personal property (other than property in the care, custody or control of the Insured's salespersons) in transit more than 100 feet from the described **premises.** Property must be in or on a motor vehicle the Insured owns, leases or operates while between points in the coverage territory.

2)   Loss or damage must be caused by or result from one of the following causes of loss:

(a)   Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

Contract No: ▮▮▮▮▮▮

Named Insured:     Edgewater Valley Forge Fund III LP

      (b)    Vehicle collision, upset or overturn. Collision means accidental contact of the Insured's vehicle with another vehicle or object. It does not mean the Insured's vehicle's contact with the roadbed.

      (c)    Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   3)    The most Insurer(s) will pay for loss or damage under this extension is shown in **Section II – Sublimits of Insurance**.

j.    Property Off-Premises

   1)    The insurance provided by this policy is extended to apply to the Insured's Covered Property while it is away from the described **premises**, if it is:

      (a)    Temporarily at a location the Insured does not own, lease or operate;

      (b)    In storage at a location the Insured leases, provided the lease was executed after the beginning of the current policy term; or

      (c)    At any fair, trade show or exhibition.

   2)    This extension does not apply to property:

      (a)    In or on a vehicle; or

      (b)    In the care, custody or control of the Insured's salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

   3)    The most the Insurer(s) will pay for loss or damage under this extension is $10,000, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

k.    Reward Reimbursement

   1)    This policy is extended to cover the monetary rewards for information that leads to a criminal conviction in connection with the loss or damage to Covered Property by a **covered cause of loss**.

   2)    The most the Insurer(s) will pay for reward reimbursement under this extension is shown in **Section II – Sublimits of Insurance**.

l.    Royalties

   1)    The insurance that applies to **time element** is extended to apply to loss sustained by the Insured under a royalty, licensing fee, or commercial agreement between the Insured and another party during the period of interruption directly resulting from physical loss or damage by a **covered cause of loss** to property of such other party.

   2)    The most the Insurer(s) will pay for loss or damage under this extension is $5,000 per occurrence, unless a higher amount is shown in **Section II – Sublimits of Insurance.**

   3)    When determining the amount payable, the Insurer(s) will consider the amount of income derived by the Insured from such agreements before, and the probable amount of income after, the date of loss or damage.

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

**Section VI - Valuation**

The Insurer(s) will determine the value of Covered Property in the event of loss or damage as follows on the basis of replacement cost value, actual cash value, agreed value, as shown on the Declarations Page unless more specifically described below:

1.   Replacement Cost

   a.   Replacement cost, without deduction for depreciation.

   b.   This coverage does not apply to:

      1)   Personal property of a residence;

      2)   Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;  these items will be valued at their **market value** at time of loss or damage; or

      3)   **Stock**, unless the including **stock** including selling price option is listed on the Declarations Page as a coverage.

   c.   The Insured may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event the Insured elects to have loss or damage settled on an actual cash value basis, the Insured may still make a claim for the additional replacement cost coverage provided the Insured notifies the Insurer(s) of the intent to do so within 180 days after the loss or damage.

   d.   The Insurer(s) will not pay on a replacement cost basis for any loss or damage:

      1)   Until the lost or damaged property is actually repaired or replaced; and

      2)   Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

         With respect to tenants' improvements and betterments, the following also apply:

      3)   If the conditions in d.(1) and d.(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of the Insured's original cost, as set forth in the valuation loss condition of this policy; and

      4)   The Insurer(s) will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

   e.   The Insurer(s) will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

      1)   The limit of insurance applicable to the lost or damaged property;

      2)   The cost to replace the lost or damaged property with other property:

         (a)   Of comparable material and quality; and

         (b)   Used for the same purpose; or

      3)   The amount actually spent that is necessary to repair or replace the lost or damaged property.

         If a building is rebuilt at a new location, the cost described in e.2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original location.

   f.   The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

2.   Actual Cash Value

   a.   Actual cash value, replacement cost minus depreciation, shall apply at the time of loss or damage except as provided in b., c., d. and e. below.

   b.   If the limit of insurance for building satisfies the condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, the Insurer(s) will pay the cost of building repairs or replacement.

Contract No:  █████████
Named Insured:    Edgewater Valley Forge Fund III LP

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

1) Awnings or floor coverings;

2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering: or

3) Outdoor equipment or furniture.

c. **Stock** the Insured has sold but not delivered at the selling price less discounts and expenses the Insured otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' improvements and betterments at:

1) Actual cash value of the lost or damaged property if the Insured makes repairs promptly.

2) A proportion of the Insured's original cost if the Insured does not make repairs promptly. The Insurer(s) will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

3) Nothing if others pay for repairs or replacement.

3. Agreed Value

If agreed value is shown on the Declarations Page, this policy provides coverage on an agreed value basis as per the values shown on the latest Statement of Values on file with the Insurer(s).

4. Market Value

Fine Arts which includes works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, and porcelains will be valued at their **market value** at the time of loss or damage. Bric-a-brac will be valued at their **market value** at the time of loss or damage.

5. Electronic Data and Media

Valuation shall be the cost of the blank media plus the costs of copying the **electronic data** from back-up or from originals of a previous generation.  These costs will not include research and engineering nor any costs of recreating, gathering or assembling such **electronic data**.  If the **electronic data** is not repaired, replaced or restored the basis of valuation shall be the cost of any blank media.  However, this policy does not insure any amount pertaining to the value of such **electronic data** to the Insured or any other party, even if such **electronic data and media** cannot be recreated, gathered or assembled.

Contract No: ▮▮▮▮▮▮

Named Insured:    Edgewater Valley Forge Fund III LP

**Section VII – Business Income Coverages**

A.    Coverage is provided as described and limited below for one or more of the following options if listed on the Declarations Page

      1.    Time Element

      2.    Civil Authority

      3.    Contingent Time Element

      4.    Extra Expense

      5.    Ingress/Egress

      6.    Rental Value

1.    Time Element

If limits of insurance are shown under more than one of the above options, the provisions of this policy apply separately to each.

The Insurer(s) will pay for the actual loss of **time element** the Insured sustains due to the necessary **suspension** of the Insured's **operations** during the **period of restoration**. The **suspension** must exceed a 72 hour **waiting period** and be caused by direct physical loss of or damage to property at **premises** which are described on the Statement of Values and for which a **time element** limit of insurance is shown on the Declarations Page. The loss or damage must be caused by or result from a **covered cause of loss**. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described **premises** include the area within 100 feet of such **premises**.

With respect to the requirements set forth in the preceding paragraph, if the Insured occupies only part of a building, the Insured's **premises** means:

      (a)    The portion of the building which the Insured rents, leases or occupies;

      (b)    The area within 100 feet of the **premises** described on the Statement of Values with respect to loss of or damage to personal property in the open or personal property in a vehicle; and

      (c)    Any area within the building or at the described **premises,** if that area services, or is used to gain access to, the portion of the building which the Insured rents, leases or occupies.

a.    Extended Time Element

If the necessary **suspension** of the Insured's **operations** produces an extended **time element** loss payable under this policy, the Insurer(s) will pay for the actual loss of **time element** the Insured incurs during the period that:

      (a)    Begins on the date property (except **finished stock**) is actually repaired, rebuilt or replaced and **operations** are resumed; and

      (b)    Ends on the earlier of:

            (i)    The date the Insured could restore their **operations**, with reasonable speed, to the level which would generate the **time element** amount that would have existed if no direct physical loss or damage had occurred; or

            (ii)    30 consecutive days after the date determined in c.(a) above, unless a higher amount is shown in **Section II – Sublimits of Insurance**.

However, extended **time element** does not apply to loss of **time element** incurred as a result of unfavorable business conditions caused by the impact of the **covered cause of loss** in the area where the described **premises** are located.

Loss of **time element** must be caused by direct physical loss or damage at the described **premises** caused by or resulting from any **covered cause of loss.**

Contract No: ■■■■■■
Named Insured:     Edgewater Valley Forge Fund III LP

2.   Civil Authority

In this coverage, the described **premises** are **premises** to which this policy applies, as shown on the Statement of Values.

When a **covered cause of loss** causes damage to property other than property at the described **premises**, the Insurer(s) will pay for the actual loss of business income the Insured sustains caused by action of civil authority that prohibits access to the described **premises**, provided that both of the following apply:

a.   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described **premises** are within that area but are not more than five(5) statute miles from the damaged property; and

b.   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the **covered cause of loss** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Coverage under this section only applies if the actual loss sustained exceeds a 72 hour **waiting period**.  Coverage is not provided unless an amount of weeks is shown in **Section II – Sublimits of Insurance**.

3.   Contingent Time Element

It is hereby understood and agreed that this policy is extended to include the actual loss sustained and **extra expense** incurred by the Insured during the period of this policy where the loss arises:

a.   Directly resulting from physical loss or damage from a **covered cause of loss**; and only

b.   To property of the type insured by this policy, at any location of direct suppliers or customers located within the territorial scope of this policy who are on file with the Insurer(s) at the time of such loss or damage.

It is further understood and agreed that the term suppliers or customers does not include any company supplying to or receiving from the Insured any electricity, fuel, gas, water, steam, refrigeration, sewage or telecommunications.

It is a requirement of this coverage that a schedule of the suppliers' or customers' locations must be on file with the Insurer(s) at the time of the loss or damage.

Coverage under this section only applies if the actual loss sustained exceeds a 72 hour **waiting period**. The most the Insurer(s) will pay for loss or damage under this coverage is shown in **Section II – Sublimits of Insurance**.

4.   Extra Expense

The Insurer(s) will pay **extra expense** (other than the expense to repair or replace property) to:

A.   Avoid or minimize the **suspension** of business and to continue **operations** at the described **premises** or at replacement **premises** or temporary locations.

B.   Minimize the **suspension** of business if the Insured cannot continue **operations**.

The Insurer(s) will also pay **extra expense** to repair or replace property, and relocation expenses, but only to the extent it reduces the amount of loss that otherwise would have been payable under this policy.

Relocate any items necessary to avoid or minimize the **suspension** of the business and to continue **operations** at a replacement **premises** or temporary locations.

5.   Ingress/Egress

In this coverage, the described **premises** are **premise** to which this policy applies, as shown on the Statement of Values.

The Insurer(s) will pay for the actual loss sustained during the period of time when, as a direct result of physical damage by a **covered cause of loss**, ingress to or egress from the insured **premises** is thereby prevented, whether there is direct damage to the Insured's property or not. The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered location for coverage to apply. Coverage under this section only applies if the actual loss sustained exceeds a 72 hour **waiting period**.  Coverage is not provided unless an amount of weeks is shown in **Section II – Sublimits of Insurance**.

Contract No:    ████████
Named Insured:    Edgewater Valley Forge Fund III LP

6.    Rental Value

    a.    The Insurer(s) will pay for the actual loss sustained by the Insured resulting directly from necessary untenantability, caused by damage to or destruction of the building(s) or structure(s) as furnished or equipped by the Insured, on the described **premises** by a **covered cause of loss** during the term of this policy; but not exceeding the reduction in **rental value** less charges and expenses which do not necessarily continue during the period of untenantability, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Coverage under this section applies if the actual loss sustained exceeds a 72 hour **waiting period.**

With respect to Business Income Coverages 2. And 5., if a **covered cause of loss** results in coverage under both Business Income Coverages, the Insurer(s) will only pay for loss under one of the two Business Income Coverages, whichever the Insured selects.

B.    Additional Coverages

1.    Alterations and New Buildings

The Insurer(s) will pay for the actual loss of **time element** the Insured sustains and necessary **extra expense** the Insured incurs due to direct physical loss or damage at the described **premises** caused by or resulting from any **covered cause of loss** to:

    a.    New buildings or structures, whether complete or under construction;

    b.    Alterations or additions to existing buildings or structures; and

    c.    Machinery, equipment, supplies or building materials located on or within 100 feet of the described **premises** and:

        1)    Used in the construction, alterations or additions; or

        2)    Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of **operations**, the **period of restoration** for **time element** coverage will begin on the date **operations** would have begun if the direct physical loss or damage had not occurred.

Coverage under this section only applies if the actual loss sustained exceeds a 72 hour **waiting period.**

Contract No: ███████

Named Insured:   Edgewater Valley Forge Fund III LP

2. Newly Acquired Locations

a. This policy may extend insurance for the Insured(s) **time element** and **extra expense** coverages to apply to property at any location the Insured acquires other than fairs or exhibitions.

b. Coverage under this section only applies if the actual loss sustained exceeds a 72 hour **waiting period**.

c. The most the Insurer(s) will pay under this extension, for the sum of **time element** loss and **extra expense** incurred, is $100,000 at each location.

d. Insurance under this extension for each newly acquired location will end when any of the following first occurs:

1) This policy expires;

2) 30 days expire after the Insured acquires or begins to construct the property; or

3) The Insured reports values to the Insurer(s).

The Insurer(s) will charge the Insured additional premium for values reported from the date the Insured acquires the property.

C. Special Exclusions

This policy does not cover any Business Income coverages arising from the:

1) Enforcement of any ordinance or law regulating the use, construction, repair or demolition of property; or

2) Interference at the described **premises** by strikers or other persons with rebuilding, repairing or replacing the property or with the reoccupancy of the **premises**; or

3) The suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the untenantability of the **premises**, and then the Insurer(s) shall be liable for only such loss as affects the **rental value** of the **premises** during, and limited to, the period of indemnity covered under this policy.

Loss of **rental value** must be caused by direct physical loss or damage at the **premises** on the Statement of Values caused by or resulting from a **covered cause of loss**.

D. Covered Causes of Loss, Exclusions and Limitations

See applicable Causes Of Loss form as shown under **Section IV – Covered Causes of Loss**.

E. Limits of Insurance

The most the Insurer(s) will pay for loss in any one occurrence is the applicable limit of insurance shown on the Statement of Values. Payments under all of the Business Income Coverages will not increase the applicable limit of insurance:

The amounts of insurance stated in the newly acquired locations coverage extension apply in accordance with the terms of those coverages and are a part of the overall limit(s) of insurance shown on the Declarations Page for all other coverage.

F. Loss Conditions

The following conditions apply to this policy:

1. Loss Determination

a. The amount of **time element** loss will be determined based on:

1) The Net Income of the business before the direct physical loss or damage occurred;

2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the **covered cause of loss** on customers or on other businesses;

3) The operating expenses, including payroll expenses, necessary to resume **operations** with the same quality of service that existed just before the direct physical loss or damage; and

Contract No:   ███████

Named Insured:     Edgewater Valley Forge Fund III LP

    4)    Other relevant sources of information, including:

        (a)    The Insured's financial records and accounting procedures;

        (b)    Bills, invoices and other vouchers; and

        (c)    Deeds, liens or contracts.

b.    The amount of **extra expense** will be determined based on:

    (1)    All expenses that exceed the normal operating expenses that would have been incurred by **operations** during the **period of restoration** if no direct physical loss or damage had occurred.  The Insurer(s) will deduct from the total of such expenses:

        (a)    The salvage value that remains of any property bought for temporary use during the **period of restoration** once **operations** are resumed; and

        (b)    Any **extra expense** that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    (2)    Necessary expenses that reduce the **time element** loss that otherwise would have been incurred.

c.    Resumption of Operations

    The Insurer(s) will reduce the amount of the Insured's:

    1)    **Time element** loss, other than **extra expense**, to the extent the Insured can resume their **operations**, in whole or in part, by using damaged or undamaged property (including merchandise or **stock**) at the described **premises** or elsewhere.

    2)    **Extra expense** loss to the extent the Insured can return **operations** to normal and discontinue such **extra expense**.

    If the Insured does not resume **operations**, or do not resume **operations** as quickly as possible, the Insurer(s) will pay based on the length of time it would have taken to resume **operations** as quickly as possible.

2.    Loss Payment

    The Insurer(s) will pay for covered loss within 30 days after the Insurer(s) receives the sworn proof of loss, if the Insured has complied with all of the terms of this policy, and:

a.    The Insurer(s) has reached agreement with the Insured on the amount of loss; or

b.    An appraisal award has been made.

G.    Time Element Conditions

    If shown as applicable on the Declarations Page, the following conditions apply separately to each item.

1.    Monthly Limit Of Indemnity

a.    The additional condition, coinsurance, does not apply to this policy at the described **premises** to which this optional coverage applies.

b.    The most the Insurer(s) will pay for loss of **rental value** in each period of 30 consecutive days after the beginning of the **period of restoration** is:

    1)    The limit of insurance, multiplied by

    2)    The following fraction for this optional coverage: 1/6th.

2.    Time Element Agreed Value

a.    To activate this optional coverage:

    1)    A **time element** report/work sheet must be submitted to the Insurer(s) and must show financial data for the Insured's **operations**:

        (a)    During the 12 months prior to the date of the work sheet; and

        (b)    Estimated for the 12 months immediately following the inception of this optional coverage.

Contract No:  ▉▉▉▉▉▉
Named Insured:    Edgewater Valley Forge Fund III LP

    2)    The Declarations Page must indicate that the **time element** agreed amount optional coverage applies, and an agreed value must be shown on the Declarations Page. The agreed value should be at least equal to:

    (a)    The coinsurance percentage shown on the Declarations Page; multiplied by

    (b)    The amount of Net Income and operating expenses for the following 12 months the Insured reports on the work sheet.

b.    The additional condition, coinsurance, is suspended until:

    1)    12 months after the effective date of this optional coverage; or

    2)    The expiration date of this policy; whichever occurs first.

c.    The Insurer(s) will reinstate the condition, Coinsurance, automatically if the Insured does not submit a new work sheet and agreed value:

    1)    Within 12 months of the effective date of this optional coverage; or

    2)    When the Insured requests a change in their **time element** limit of insurance.

d.    If the **time element** limit of insurance is less than the agreed amount, the Insurer(s) will not pay more of any loss than the amount of loss multiplied by:

    1)    The **time element** limit of insurance; divided by

    2)    The agreed value.

Contract No:      ██████
Named Insured:   Edgewater Valley Forge Fund III LP

**Section VIII – Optional Coverages**

Coverage for the following optional coverages are only provided if a sublimit of insurance is shown for such optional coverage under **Section II – Sublimits of Insurance.**

A.    Errors and Omissions

It is hereby understood and agreed that any unintentional error or omission made by the Insured shall not void or impair the Insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery.

The most the Insurer(s) will pay for loss or damage under this extension is $5,000, unless a higher amount is shown in **Section II - Sublimits of Insurance.**

B.    Expediting Expense

It is hereby understood and agreed that this policy covers the necessary costs incurred to pay for the temporary repair of insured damage to Covered Property and to expedite the permanent repair or replacement of such damaged property, including overtime and the extra costs of express or other rapid means of transportation.

This optional coverage does not cover the costs recoverable elsewhere in this policy or costs of permanent repair or replacement of damaged property.

The most the Insurer(s) will pay for loss or damage under this extension is $5,000, unless a higher amount is shown in **Section II - Sublimits of Insurance.**

The specified perils insured against by this policy as respects this section are: Special Causes of Loss Excluding  Earthquake and Flood

C.    Ordinary Payroll Extensions (With Exclusions)

It is hereby understood and agreed that the Insurer(s) shall be liable for any **ordinary payroll** expenses as hereinafter defined as payroll expenses which continue after a necessary interruption of business conducted by the Insured resulting from direct physical loss or damage to covered real or personal property, by a **covered cause of loss.** Liability is limited to such **ordinary payroll** expenses which continue during the interruption of business only to the extent necessary until employees can resume their business with the same quality of services which existed immediately preceding the loss.

The most the Insurer(s) will pay for loss or damage under this coverage is shown in **Section II – Sublimits of Insurance.**

D.    Sewer Back Up

1.    It is hereby understood and agreed that this policy covers direct physical loss or damage to Covered Property, caused by or resulting from discharge of waterborne material from a sewer, drain or sump located on the described **premises**, whether the loss or damage originates from on the Insured's **premises** or originates from off the Insured's **premises**, provided such discharge is not induced by **flood.**

For the purpose of this coverage, the term drain includes a roof drain and related fixtures.

2.    There is no coverage if:

The discharge results from an Insured's failure to perform routine maintenance or repair necessary to keep a sewer or drain or a sump, sump pump or related equipment free from obstruction and in proper working condition; or

Sump pump failure is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described **premises.**

3.    To the extent that the Water exclusion might conflict with the coverage provided under this section, the Water exclusion does not apply to such coverage.

Contract No: ████████
Named Insured:    Edgewater Valley Forge Fund III LP

4.    The Insurer(s) will not pay the cost of repairing or replacing a sewer, drain, sump, sump pump or any related parts or equipment.

5.    The most the Insurer(s) will pay for loss or damage under this coverage is shown in **Section II – Sublimits of Insurance**.

Contract No:

Named Insured:   Edgewater Valley Forge Fund III LP

### Section IX - Conditions

A.   Abandonment

There can be no abandonment of any property to the Insurer(s).

B.   Appraisal

If the Insured and Insurer(s) disagree on the values of the Covered Property, the Insured's **time element**, **extra expense** or the amount of any loss or damage, either may make written demand for an appraisal of such values.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of **time element**, **extra expense** and amount of loss or damage.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

1.   Pay its chosen appraiser; and

2.   Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, the Insurer(s) will still retain their right to deny the claim on the basis that it is not covered under the policy. No other disputes between the Insured and Insurer(s) will be subject to this provision.

C.   Cancellation

1.   The Insured may cancel this policy at any time during the policy period by mailing or delivering to the Insurer(s) advance written notice of cancellation.

2.   The Insurer(s) may cancel this policy for any reason by mailing or delivering to the Insured written notice of cancellation at least 45 days, 10 days if their reason for cancellation is the Insured's non-payment of any premium when due, before the effective date of cancellation. The Insurer(s) will mail or deliver their notice to the Insured's last mailing address known to the Insurer(s).

3.   The Insurer(s) will mail or deliver their notice to the first Named Insured's last mailing address known to the Insurer(s).

4.   The cancellation will be effective even if the Insurer(s) has not made or offered a refund.

5.   If notice is mailed, proof of mailing will be sufficient proof of notice.

6.   If this insurance shall be canceled by the Insured the Insurer(s) shall retain the customary short rate proportion of the premium hereon, except that if this insurance is on an adjustable basis the Insurer(s) shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein, whichever is the greater.

7.   If this insurance shall be canceled by or on behalf of the Insurer(s) the Insurer(s) shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis the Insurer(s) shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein, whichever is the greater.

8.   Payment or tender of any unearned premium by the Insurer(s) shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period limitation permitted by such law.

D.   Changes

This policy contains all the agreements between the Insured and Insurer(s) concerning the insurance afforded.  This policy's terms can be amended or waived only by endorsement issued by the Insurer(s) and made a part of this policy.

E.   Coinsurance

If a Coinsurance percentage is shown on the Declarations Page, the following condition applies:

1.   Buildings, Personal Property

The Insurer(s) will not pay the full amount of any loss if the value of Covered Property at the time of loss multiplied by the coinsurance percentage stated on the Declarations Page is greater than the latest values for the Covered Property on the Statement of Values the Insurer(s) has on file. Instead, the Insurer(s) will determine the most they will pay using the following steps:

Contract No: ▮▮▮▮▮▮▮

Named Insured:   Edgewater Valley Forge Fund III LP

    a.   Multiply the value of Covered Property at the time of loss by the coinsurance percentage;

    b.   Divide the value on the Statement of Values of the Covered Property by the amount determined in step a;

    c.   Multiply the total amount of loss for the Covered Property, before the application of any deductible, by the amount determined in step b; and

    d.   Subtract the deductible from the amount determined in step c.

The Insurer(s) will pay the amount determined in step d, or the limit of insurance, whichever is less. For the remainder, the Insured will either have to rely on other insurance or self-insure the loss.

If one limit of insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

2.   Time Element

    a.   The Insurer(s) will not pay the full amount of any loss if the value on the Statement of Values for Covered Property for **time element** is less than the coinsurance percentage shown for **time element** on the Declarations Page; multiplied by the sum of:

        (1)   The net income (net profit or loss before income taxes), and

        (2)   All operating expenses, including payroll expenses

        All of which would have been earned or incurred (had there been no occurrence) by the Insured's **operations** at the described **premises** for the 12 months immediately prior to the occurrence.

    b.   Instead, the Insurer(s) will determine the most they will pay using the following steps:

        (1)   Multiply the net income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the coinsurance percentage;

        (2)   Divide the **time element** value on the Statement of Values for the described **premises** by the amount determined in step (1); and

        (3)   Multiply the total amount of loss by the amount determined in step (2).

        The Insurer(s) will pay the amount determined in step (3), or the limit of insurance, whichever is less. For the remainder, the Insured will either have to rely on other insurance or self-insure the loss.

        In determining operating expenses for the purpose of applying the coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

        (1)   Prepaid freight – outgoing;

        (2)   Returns and allowances;

        (3)   Discounts;

        (4)   Bad debts;

        (5)   Collection expenses;

        (6)   Cost of raw **stock** and factory supplies consumed (including transportation charges);

        (7)   Cost of merchandise sold (including transportation charges);

        (8)   Cost of other supplies consumed (including transportation charges);

        (9)   Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

        (10)   Power, heat and refrigeration expenses that do not continue under contract (if Form CP 15 11 is attached);

        (11)   All payroll expenses or the amount of payroll expense excluded (if an amount appears under **Section II – Sublimits of Insurance**); and

Contract No: ▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

(12)  Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

This condition does not apply to **extra expense** coverage.

F.  Concealment, Misrepresentation or Fraud

This policy is void in any case of fraud by the Insured at any time including fraud in any claim presented hereunder.  It is also void if the Insured or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.  This Policy;

2.  The Covered Property or any Covered Property;

3.  The Insured's interest in the Covered Property; or

4.  A claim under this policy.

G.  Control of Property

Any act or neglect of any person other than the Insured beyond the Insured's direction or control will not affect this insurance.

The breach of any condition of this policy at any one or more locations will not affect coverage at any location where, at the time of loss, the breach of condition does not exist.

H.  Duties of the Named Insured In the Event of Loss or Damage

The Insured must see that the following are done in the event of loss or damage to Covered Property:

1.  Notify the police if a law may have been broken.

2.  Give the Insurer(s) prompt notice of the loss or damage, including a description of the Covered Property involved.

3.  As soon as possible, give the Insurer(s) a description of how, when and where the loss or damage occurred.

4.  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of the Insured's expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the limit of insurance. However, the Insurer will not pay for any subsequent loss or damage resulting from a cause of loss that is not a **covered cause of loss.**

5.  If feasible, set the damaged property aside and in the best possible order for examination.  Also keep a record of the Insured's expenses for emergency and temporary repairs, for consideration in the settlement of the claim.  This will not increase the limit of insurance.

6.  At the Insurer(s)'s request, give the Insurer(s) complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

7.  Permit the Insurer(s) to inspect the property and records proving the loss or damage.  Also permit the Insurer(s) to take samples of damaged and undamaged property for inspection, testing and analysis, and permit the Insurer(s) to make copies from the Insured's books and records.

8.  If requested, permit the Insurer(s) to question the Insured under oath at such times as may be reasonably required about any matter relating to this insurance or the Insured's claim, including their books and records.  In such event, the Insured's answers must be signed.

9.  Send the Insurer(s) a signed, sworn statement in proof of loss containing the information the Insurer(s) requests to investigate the claim.  The Insured must do this within 60 days after the Insurer(s)'s request.  The Insurer(s) will supply the Insured with the necessary forms.

10.  Cooperate with the Insurer(s) in the investigation or settlement of the claim.

11.  Resume all or part of the Insured's **operations** as quickly as possible.

I.  Examination of the Insured's Books and Records

The Insurer(s) may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three years afterward.

Contract No: ▓▓▓▓▓▓▓
Named Insured:    Edgewater Valley Forge Fund III LP

J.    Inspections and Surveys

The Insurer(s) has the right but are not obligated to:

1.    Make inspections and surveys at any time;

2.    Give the Insured reports on the conditions the Insurer(s) finds; and

3.    Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  The Insurer(s) does not make safety inspections.  The Insurer(s) does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and the Insurer(s) does not warrant that conditions are safe or healthful; or comply with laws, regulations, codes or standards.

K.    Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, the Insurer(s) will not pay more than the actual amount of the loss or damage. The Insurer(s) may allocate such loss or damage to any of such coverages at the Insurer(s)'s option and in their sole discretion.

L.    Knowledge or Control

The Insurer(s) will not pay for loss or damage while the chance of loss or damage is increased by any means within the Insured's knowledge or control.

M.    Legal Action Against The Insurer(s)

No one may bring a legal action against the Insurer(s) under this policy unless:

1.    There has been full compliance with all of the terms of this policy; and

2.    The action is brought within two (2) years after the occurrence that is the subject of a claim.

N.    Liberalization

If the Insurer(s) adopts any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

O.    Loss Payment

1.    In the event of loss or damage covered by this policy, at the Insurer(s)'s option, the Insurer(s) will either:

a)    Pay the value of lost or damaged property;

b)    Pay the cost of repairing or replacing the lost or damaged property, subject to 2. below;

c)    Take all or any part of the property at an agreed or appraised value; or

d)    Repair, rebuild or replace the property with other property of like kind and quality, subject to 2. below.

The Insurer(s) will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the valuation condition in this policy or any applicable provision which amends or supersedes the valuation condition.

2.    The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

3.    The Insurer(s) will give notice of their intentions within 30 days after the Insurer(s) receives the sworn proof of loss.

4.    The Insurer(s) will not pay the Insured more than the Insured's financial interest in the Covered Property.

5.    The Insurer(s) may adjust losses with the owners of lost or damaged property if other than the Insured. If the Insurer(s) pays the owners, such payments will satisfy the Insured's claims against the Insurer(s) for the owners' property. The Insurer(s) will not pay the owners more than their financial interest in the Covered Property.

Contract No:  █████████

Named Insured:   Edgewater Valley Forge Fund III LP

6. The Insurer(s) may elect to defend the Insured against suits arising from claims of owners of property. The Insurer(s) will do this at their expense.

7. The Insurer(s) will pay for covered loss or damage to Covered Property within 30 days after they receive the sworn proof of loss, if the Insured has complied with all of the terms of this policy, and:

   a) The Insurer(s) has reached agreement with the Insured on the amount of loss; or

   b) An appraisal award has been made.

8. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, the Insurer(s) will pay a proportion of the loss to the party wall based on the Insured's interest in the wall in proportion to the interest of the owner of the adjoining building. However, if the Insured elects to repair or replace their building and the owner of the adjoining building elects not to repair or replace that building, the Insurer(s) will pay the Insured the full value of the loss to the party wall, subject to all applicable policy provisions including limits of insurance, the valuation and coinsurance conditions and all other provisions of this loss payment condition. The Insurer(s)'s payment under the provisions of this paragraph does not alter any right of subrogation they may have against any entity, including the owner or insurer(s) of the adjoining building.

P. Loss to a Pair, Set or Panels

In case of loss to a pair, set or panels, the Insurer(s) may elect to:

1. Repair or replace any part to restore the pair, set or panels to its value before the loss;

2. Pay the difference between actual cash value of the property before and after the loss;

3. Pay in any loss involving part of a series of pieces or panels:

   a) The reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or

   b) The reasonable cost of providing an acceptable decorative effect or utilization as circumstances may warrant.

However, the Insurer(s) does not guarantee the availability of replacements, and the Insurer(s) will not be liable, in the event of damage to or loss of a part, for the value, repair or replacement of the entire series of pieces or panels.

Q. Minimum Earned Premium

In the event this policy is cancelled, the following minimum earned premium condition applies:

   80% minimum earned premium.

R. Mortgage Holders

1. The term mortgage holder includes trustee.

2. The Insurer will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the declarations in their order of precedence, as interests may appear.

3. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

4. If the Insurer denies the Insured's claim because of their acts or because the Insured has failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   a) Pays any premium due under this policy at the Insurer's request if the Insured has failed to do so;

   b) Submits a signed, sworn proof of loss within 60 days after receiving notice from the Insurer of the Insured's failure to do so; and

   c) Has notified the Insurer of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this policy will then apply directly to the mortgage holder.

Contract No: ██████████

Named Insured:     Edgewater Valley Forge Fund III LP

5.   If the Insurer pays the mortgage holder for any loss or damage and deny payment to the Insured because of the Insured's acts or because the Insured has failed to comply with the terms of this policy:

    a)   The mortgage holder's rights under the mortgage will be transferred to the Insurer to the extent of the amount the Insurer pays; and

    b)   The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

       At the Insurer's option, the Insurer may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, the Insured's mortgage and note will be transferred to the Insurer and the Insured will pay the Insured's remaining mortgage debt to the Insurer.

6.   If the Insurer cancels this policy, the Insurer will give written notice to the mortgage holder at least:

    a)   10 days before the effective date of cancellation if the Insurer cancels for the Insured's nonpayment of premium; or

    b)   30 days before the effective date of cancellation if the Insurer cancels for any other reason.

7.   If the Insurer elects not to renew this policy, the Insurer will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

S.   No Benefit To Bailee

No person or organization, other than the Insured, having custody of Covered Property will benefit from this insurance.

T.   Other Insurance

The Insured may have other insurance subject to substantially the same plan, terms, conditions and provisions as the insurance under this policy. If the Insured does, the Insurer(s) will only pay their share of the covered loss or damage. The Insurer(s)'s share is the proportion that the applicable limit of insurance under this policy bears to the limits of insurance of all policies covering the loss on the same basis.

If there is other insurance covering the same loss or damage, other than that described above, the Insurer(s) will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, irrespective of whether the Insured can collect on it, but the Insurer(s) will not pay more than their applicable limit of insurance.

When the Insured is a condominium association, this insurance is primary and does not contribute to other insurance when a unit-owner has other insurance covering the same property.

U.   Permission for Excess

1.   Excess Insurance:  Permission is hereby granted to purchase insurance in excess of the amount (limit of insurance) stated in this policy. Such excess insurance shall not be considered Other Insurance for the purposes of the Other Insurance clause.

2.   Any reference to pro rata liability, pro rata distribution or any other apportionment clause is hereby deleted.

3.   When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be recalculated on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined and the appropriate amount repaid from the Insured to the Insurer(s) as soon as possible.

V.   Policy Period

The Insurer(s) covers loss or damage commencing during the policy period shown on the Declarations Page within the coverage territory.

W.   Premiums

The first Named Insured shown on the Declarations Page:

1.   Is responsible for the payment of all premiums; and

2.   Will be the payee for any return premiums the Insurer(s) pays;

Contract No:
Named Insured:       Edgewater Valley Forge Fund III LP

X.   Recovered Property

If either the Insured or Insurer(s) recover any property after loss settlement, that party must give the other prompt notice.  At the Insured's option, the property will be returned to the Insured.  The Insured must then return to the Insurer(s) the amount the Insurer(s) paid to the Insured for the property.  The Insurer(s) will pay recovery expenses and the expenses to repair the recovered property, subject to the limit of insurance.

Y.   Statement of Values

The first Named Insured is responsible for providing to the Insurer(s) a revised Statement of Values for all Covered Property if the Insured wishes to add any additional Covered Property, and otherwise in the event that the value of Covered Property changes during the policy period.

The Insurer(s) shall review all revised Statement of Values, and it is within their sole discretion whether to approve any additions to the list of Covered Property, or any increase in the value of any Covered Property.  No changes in coverage shall be effective unless and until the Insurer(s) has issued an endorsement reflecting approved changes to the Statement of Values.  In the event the Insurer(s) agrees to changes in the Statement of Values, the Insurer(s) shall recalculate the Insured's premium and adjust it pro rata for the remainder of the policy period. In the event of a loss, the Insurer(s)'s liability will be calculated based upon the most recent Statement of Values approved by the Insurer(s) prior to the date of loss. Additionally, the Insurer(s) shall have the right at any time to perform their own appraisal of the value of Covered Property, and to adjust the Insured's premium and amend the Statement of Values if an amendment is warranted.

Z.   Transfer of Rights of Recovery Against Others To the Insurer

If any person or organization to or for whom the Insurer(s) makes payment under this policy has rights to recover damages from another, those rights are transferred to the Insurer(s) to the extent of their payment. That person or organization must do everything necessary to secure the Insurer(s)'s rights and must do nothing after loss to impair them. Notwithstanding the foregoing, the Insured may waive their rights against another party in writing:

1.   Prior to a loss to the Insured's Covered Property.

2.   After a loss to the Insured's Covered Property only if, at time of loss, that party is one of the following:

   a)   Someone insured by this policy;

   b)   A business organization owned or controlled by the Insured;

   c)   That owns or controls the Insured; or

   d)   The Insured's tenant.

AA.  Transfer of The Insured's Rights and Duties Under This Policy

The Insured's rights and duties under this policy may not be transferred without the Insurer(s)'s written consent except in the case of death of an individual Named Insured.

If the Insured dies, their rights and duties will be transferred to the Insured's legal representative but only while acting within the scope of duties as the Insured's legal representative.  Until the Insured's legal representative is appointed, anyone having proper temporary custody of the Insured's property will have the Insured's rights and duties but only with respect to that property.

BB.  Vacancy

1.   Description Of Terms

   a.   As used in this vacancy condition, the term building and the term vacant have the meanings set forth in 1) and 2) below:

      1)   When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary **operations**.

      2)   When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

         a)   Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary **operations**; and/or

         b)   Used by the building owner to conduct customary **operations**.

Contract No:  ███████████
Named Insured:    Edgewater Valley Forge Fund III LP

    b.    Buildings under construction or renovation are not considered vacant.

2.    Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    a.    The Insurer(s) will not pay for any loss or damage caused by any of the following, even if they are **covered causes of loss:**

        1)    Vandalism;

        2)    Sprinkler leakage, unless the Insured has protected the system against freezing;

        3)    Building glass breakage;

        4)    **Water damage;**

        5)    Theft; or

        6)    Attempted theft.

    b.    With respect to **covered causes of loss** other than those listed in a.1) through a.6) above, the Insurer(s) will reduce the amount the Insurer(s) would otherwise pay for the loss or damage by 15%.

Contract No: ▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

### Section X – Policy Definitions

**Aggregate** means the limit or sublimit that is the most the Insurer(s) will pay in any one policy term (as shown on the Declarations Page) for the coverage, peril or location to which such aggregate limit or sublimit applies.

**Computer virus** means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of any nature.  Computer virus includes, but is not limited to, Trojan horses, worms and time or logic bombs.

**Covered cause(s) of loss** means risks of direct physical loss or damage to Covered Property from the covered perils described in the Causes Of Loss form attached to this policy.

**Earthquake** means natural faulting of land masses, excluding landslide, subsidence, rock slide, mud flow, earth sinking, earth rising, shifting or settling unless arising as a direct result of such **earthquake**.

**Electronic data** means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

**Extra expense** means necessary expenses the Insured incurs during the **period of restoration** that the Insured would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a **covered cause of loss**. Insurer(s) will pay **extra expense** (other than the expense to repair or replace property) which are incurred to:

1.   Avoid or minimize the **suspension** of business and to continue **operations** at the described **premises** or at replacement **premises** or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

2.   Minimize the **suspension** of business if the Insured cannot continue **operations**.

**Finished stock** means **stock** manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

**Flood** means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

1.   The overflow of a body of water, inland or tidal waters, or the spray from any of these, all whether driven by wind or not;

2.   The unusual or rapid accumulation or runoff of surface waters from any source, including the spray from surface water, whether driven by wind or not; or

3.   Mudslides or mudflows which are caused by the overflow of a body of water, inland or tidal waters or the unusual or rapid accumulation or runoff of surface waters, including the spray from any of these, all whether driven by wind or not. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

4.   **Flood** includes direct physical loss or damage caused by water, or other waterborne materials that back up or overflow through a sewer drain, sump, sump pump, or related equipment when caused by or resulting directly from flood as defined in paragraphs 1., 2. and 3. of the definition above.

**Fungus** means any type or form of fungus, including mold or mildew, wet rot or dry rot, scents or by-products produced or released by fungi, of any type, nature, or description including but not limited to any substance whose presence poses an actual or potential threat to human health.

**Hurricane** means a storm system that has been declared to be a **hurricane** by the National Hurricane Center of the National Weather Service.

**Market value** means the price which the property might be expected to realize if offered for sale in a fair market.

**Money** means

1.   Currency, coins and bank notes whether or not in current use; and

2.   Travelers checks, register checks and **money** orders held for sale to the public.

Contract No: ▓▓▓▓▓
Named Insured:    Edgewater Valley Forge Fund III LP

**Named windstorm** means

1. A storm that is identified and named as a **hurricane**, tropical depression, cyclone or tropical storm by the National Hurricane Center of the U.S. National Weather Service; and

2. That is identified as a **hurricane**, tropical depression, cyclone or tropical storm at the time of landfall in the state in which the Insured's covered and damaged property is located.

**Operations** means the Insured's business activities occurring at the described **premises** and the tenantability of the described **premises**, if coverage for **time element** including **rental value** or **rental value** applies.

**Ordinary payroll** means the entire payroll expense for all employees of the insured, except officers, executives, department managers, employees under contract and other important employees.  **Ordinary payroll** expenses include:

1. Payroll;

2. Employee benefits, if directly related to payroll;

3. FICA payments the Insured pays;

4. Union dues the Insured pays; and

5. Workers compensation premiums.

**Period of restoration** means the period of time that:

1. Begins with the date of direct physical loss or damage caused by or resulting from any **covered cause of loss** at the described **premises**; and

2. Ends on the earlier of:

   a. The date when the property at the described **premises** should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   b. The date when business is resumed at a new permanent location.

   **Period of restoration** does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

   a. Regulates the construction, use or repair, or requires the tearing down of, any property; or

   b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

   The expiration date of this policy will not cut short the period of restoration.

**Perishable stock** means personal property:

1. Maintained under controlled conditions for its preservation; and

2. Susceptible to loss or damage if the controlled conditions change.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Premises** means that portion of the building at the address shown on the Statement of Values that the Insured occupies for their business.

**Rental value** means **time element** that consists of:

1. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

2. The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

3. The fair **rental value** of any portion of said property, which is occupied by the Insured.

Contract No: ████████

Named Insured:      Edgewater Valley Forge Fund III LP

**Securities** means negotiable and non-negotiable instruments or contracts guaranteeing the payment of **money** and includes:

1.  Tokens, tickets, revenue and other stamps whether or not in current use; and

2.  Evidences of debt issued in connection with credit or charge cards, which cards are not of the Insured's own issue;

    But does not include **money**.

**Sinkhole collapse** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone, dolomite, or similar rock formations. This cause of loss does not include:

1.  The cost of filling sinkholes; or

2.  Sinking or collapse of land into man-made underground cavities.

**Specified causes of loss** means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; volcanic action; falling objects; weight of snow, ice or sleet; and **water damage**.

Falling objects does not include loss or damage to:

1.  Personal property in the open; or

2.  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**Stock** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**Suspension** means:

1.  The slowdown or cessation of the Insured's business activities; or

2.  That a part or all of the described **premises** is rendered untenantable, if coverage for **time element** including **rental value** or **rental value** applies.

**Time element** means the:

1.  Net income (net profit or loss before income taxes) that would have been earned or incurred; and

2.  Continuing normal operating expenses incurred, including payroll.

**Valuable Papers and Records** means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

**Waiting Period** means the period of time that begins from the date of loss or damage covered by this policy, during which the Insured sustains actual loss of Business Income.

**Water Damage** means accidental discharge or leakage of water or steam as the direct result of the breaking apart of water tanks, breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than accidental discharge or leakage of water or steam due to materials that back up or overflow through a sewer, drain, sump, sump pump or related equipment), that is located on the described **premises** and contains water or steam.

**Wind Driven Rain** means rain, snow, sand or dust pressing on or flowing or seeping through the roofs, doors, windows, or other openings of the building or structure.

Contract No:        ▆▆▆▆▆▆▆
Named Insured:      Edgewater Valley Forge Fund III LP

---

# CAUSES OF LOSS – SPECIAL FORM

---

A.   Covered Causes of Loss

When Special Causes of Loss is shown on the Declarations Page, **covered causes of loss** means risks of direct physical loss or damage to Covered Property from the perils described in this form, attached to this policy, unless the loss is:

1.   Excluded in section B., exclusions; or

2.   Limited in section C., limitations;

that follow.

B.   Exclusions

1.   The Insurer(s) will not pay for loss or damage which would not have occurred in the absence of one or more of the following excluded events. The Insurer(s) does not insure for such loss regardless of:  (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, is caused by an act of nature or is otherwise caused by external forces, or occurs as a result of any combination of these.

a.   Ordinance Or Law

The enforcement of any ordinance or law:

1)   Regulating the construction, use or repair of any property; or

2)   Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

1)   An ordinance or law that is enforced even if the property has not been damaged; or

2)   The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

b.   Earthquake

1)   **Earthquake**, meaning the natural faulting of land masses, excluding subsidence, rock slide, mud flow, earth sinking, shifting or settling, unless as a direct result of such earthquake.

But if **earthquake** results in fire or explosion, the Insurer(s) will pay for the loss or damage caused by that fire or explosion.

c.   Earth Movement

1)   Landslide, including any earth sinking, rising or shifting related to such event;

2)   Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

Contract No: ████████
Named Insured:     Edgewater Valley Forge Fund III LP

3) Earth sinking, rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

4) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, the Insurer(s) will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 72 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the Covered Property.

d. Exterior Insulation and Finish System (EIFS) Exclusion:

Weather-related damage to Covered Property, which is directly or indirectly caused from the failure of any External Insulation and Finish System (EIFS) or synthetic stucco, however caused, to keep out water or moisture from the interior of any building or structure. EIFS or synthetic stucco includes, but is not limited to Dryvit, Synergy, BASF, StoCorp, Parex and all commercial equivalents.

e. **Sinkhole Collapse.**

f. Governmental Action

Seizure or destruction of property by order of governmental authority.

But the Insurer(s) will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

g. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, the Insurer(s) will pay for the loss or damage caused by that fire.

h. Utility Services

The failure of power or other utility service, including power surge, supplied to the **premises** described on the Declarations Page, however caused, if the failure occurs away from the **premises** described on the Declarations Page. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a **covered cause of loss**, the Insurer(s) will pay for the loss or damage caused by that **covered cause of loss**.

This exclusion does not apply to the Time Element Coverage or to Extra Expense coverage. Instead, the special exclusion in paragraph B.4.a.(1) applies to these coverages.

i. War And Military Action

1) War, including undeclared war or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Contract No:   ██████████

Named Insured:   Edgewater Valley Forge Fund III LP

    j.   **Flood**, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

        1)   The overflow of a body of water, inland or tidal waters, or the spray from any of these, all whether driven by wind or not;

        2)   The unusual or rapid accumulation or runoff of surface waters from any source; including the spray from surface water, whether driven by wind or not; or

        3)   Mudslides or mudflows which are caused by the overflow of a body of water, inland or tidal waters or rapid accumulation or runoff of surface waters, including the spray from any of these, all whether driven by wind or not. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

        4)   **Flood** includes direct physical loss or damage caused by water, or other waterborne materials that back up or overflow through a sewer, drain, sump, sump pump, or related equipment when caused by or resulting directly from flood as defined in paragraph 1), 2) and 3) of the definition above.

    k.   Tsunami

    l.   Water

        1)   Mudslide or mudflow;

        2)   Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

        3)   Water under the ground surface pressing on, or flowing or seeping through:

            (a)   Foundations, walls, floors or paved surfaces;

            (b)   Basements, whether paved or not; or

            (c)   Doors, windows or other openings;

        4)   Water or any other substance on the surface of the ground regardless of its source; or

        5)   Waterborne material carried or otherwise moved by any of the water related causes referred to in paragraph 1), 2), 3), or 4) above.

    This exclusion applies whether the loss or damage originates from on the Insured's **premises** or originates from off the Insured's **premises**.

    If water, as described in l.1) through l.5) above, results in fire or explosion, the Insurer(s) will pay for the loss or damage caused by that fire or explosion.

    m.   Wind Driven Rain

        1)   The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

            (a)   The building or structure first sustains damage by a **covered cause of loss** to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

            (b)   The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    n.   Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But the Insurer(s) will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    o.   Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    p.   Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

    However, this exclusion does not apply to:

        1)   Building materials and supplies held for sale by the Insured, unless they are insured under the Builders Risk Coverage Form; or

Contract No:  ▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

    2)   **Business income** or **extra expense** coverage.

q.    Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

r.    Property that has been transferred to a person or to a place outside the described **premises** on the basis of unauthorized instructions.

Exclusions B.1.a. through B.1.r. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.    The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following:

    a.    Artificially generated electrical current, including electric arcing, that damages, disturbs, or disrupts electrical devices, appliances or wires.

        But if artificially generated electrical current results in fire, the Insurer(s) will pay for the loss or damage caused by that fire.

    b.    Delay, loss of use or loss of market.

    c.    Smoke, vapor or gas from agricultural smudging or industrial operations.

    d.    1)    Wear and tear;

        2)    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

        3)    Smog;

        4)    Settling, cracking, shrinking or expansion;

        5)    Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

        6)    Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, the Insurer(s) will pay for the loss or damage caused by that elevator collision.

        7)    The following causes of loss to personal property:

            (a)    Dampness or dryness of atmosphere;

            (b)    Changes in or extremes of temperature; or

            (c)    Marring or scratching.

    But if an excluded cause of loss that is listed in 2.d.1) through 7) results in a **specified cause of loss** or building glass breakage, the Insurer(s) will pay for the loss or damage caused by that **specified cause of loss** or building glass breakage.

    e.    Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the Insured's control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, the Insurer(s) will pay for the loss or damage caused by that fire or combustion explosion. The insurer(s) will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    f.    Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

    g.    Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

        1)    The Insured does their best to maintain heat in the building or structure; or

        2)    The Insured drains the equipment and shut off the supply if the heat is not maintained.

    h.    Dishonest or criminal act by the Insured, any of the Insured's partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom the Insured entrusts the property for any purpose:

        1)    Acting alone or in collusion with others; or

Contract No: ███████
Named Insured:     Edgewater Valley Forge Fund III LP

    2)     Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by the Insured's employees (including temporary employees and leased employees); but theft by employees (including temporary employees and leased employees) is not covered.

i.      Voluntary parting with any property by the Insured or anyone else to whom the Insured has entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j.      Rain, snow, ice or sleet to personal property in the open.

k.      Collapse, except as provided for in the additional coverage for Collapse. But if collapse results in a **covered cause of loss** at the described **premises**, the Insurer(s) will pay for the loss or damage caused by that **covered cause of loss**.

l.      Discharge, dispersal, seepage, migration, release or escape of **pollutants** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the **specified causes of loss**. But if the discharge, dispersal, seepage, migration, release or escape of **pollutants** results in a **specified cause of loss**, the Insurer(s) will pay for the loss or damage caused by that **specified cause of loss**.

    This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m.      Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.    The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a **covered cause of loss**, the Insurer(s) will pay for the loss or damage caused by that **covered cause of loss**.

a.      Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b.      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c.      Faulty, inadequate or defective:

    1)     Planning, zoning, development, surveying, siting;

    2)     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    3)     Materials used in repair, construction, renovation or remodeling; or

    4)     Maintenance;

    of part or all of any property on or off the described **premises**.

4.    Special Exclusions

The following provisions apply only to the specified coverage sections of this policy.

a.    **Business Income Coverages**

The Insurer(s) will not pay for:

    1)     Any loss caused directly or indirectly by the failure of power or other utility service, including power surge, supplied to the described **premises**, however caused, if the failure occurs outside of a **covered building**. Failure includes lack of sufficient capacity and reduction in supply.

    But if the failure of power or other utility service results in a **covered cause of loss**, the Insurer(s) will pay for the loss resulting from that **covered cause of loss**.

    2)     Any loss caused by or resulting from:

        (a)    Damage or destruction of **finished stock**; or

        (b)    The time required to reproduce **finished stock**.

    This exclusion does not apply to **extra expense**.

Contract No: ▇▇▇▇▇▇
Named Insured:     Edgewater Valley Forge Fund III LP

    3)    Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

    4)    Any increase of loss caused by or resulting from:

        (a)    Delay in rebuilding, repairing or replacing the property or resuming **operations**, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

        (b)    Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of **operations**, the Insurer(s) will cover such loss that affects the Insured's time element during the **period of restoration** and any extension of the **period of restoration** in accordance with the terms of the Extended Time Element additional coverage and the extended period of indemnity optional coverage or any variation of these.

    5)    Any **extra expense** caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the **period of restoration**.

    6)    Any other consequential loss.

b.    Leasehold Interest Coverage

    1)    Paragraph B.1.a. Ordinance Or Law, does not apply to insurance under this coverage.

    2)    The Insurer(s) will not pay for any loss caused by:

        a)    The Insured cancelling the lease;

        b)    The suspension, lapse or cancellation of any license; or

        c)    Any other consequential loss.

c.    Legal Liability Coverage

    1)    The following exclusions do not apply to insurance under this coverage:

        (a)    Paragraph B.1.a., Ordinance Or Law;

        (b)    Paragraph B.1.e., Governmental Action;

        (c)    Paragraph B.1.f., Nuclear Hazard;

        (d)    Paragraph B.1.g., Utility Services; and

        (e)    Paragraph B.1.h., War And Military Action.

    2)    The following additional exclusions apply to insurance under this coverage:

        (a)    Contractual Liability

        The Insurer(s) will not defend any claim or suit, or pay damages that the Insured is legally liable to pay, solely by reason of the Insured's assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which the Insured has assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

        (i)    The Insured's assumption of liability was executed prior to the accident; and

        (ii)    The building is Covered Property under this policy

        (b)    Nuclear Hazard

        The Insurer(s) will not defend any claim or suit, or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

Contract No: ▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

C.    Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1.    The Insurer(s) will not pay for loss of or damage to the following types of property unless caused by the **specified causes of loss** or building glass breakage:

   a.    Animals, and then only if they are killed or their destruction is made necessary.

   b.    Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      1)    Glass; or

      2)    Containers of property held for sale.

   c.    Builders' machinery, tools and equipment owned by the Insured or entrusted to the Insured, provided such property is Covered Property.

      However, this limitation does not apply:

      1)    If the property is located on or within 100 feet of the described **premises**, unless the **premises** is insured under the Builders Risk Coverage Form; or

      2)    To **business income** coverage or to **extra expense** coverage.

2.    The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a.    $2,500 for furs, fur garments and garments trimmed with fur.

   b.    $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c.    $2,500 for patterns, dies, molds and forms.

   d.    $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the limit of insurance applicable to the Covered Property.

   This limitation  does not apply to **business income** or **extra expense** coverage.

3.    The Insurer(s) will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But the Insurer(s) will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a.    Results in discharge of any substance from an automatic fire protection system; or

   b.    Is directly caused by freezing.

   However, this limitation does not apply to **business income** or **extra expense** coverage.

D.    Additional Coverage – Collapse

The term **covered cause of loss** includes the additional coverage – Collapse as described and limited in D.1. through D.5. below.

1.    With respect to buildings:

   a.    Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b.    A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c.    A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d.    A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Contract No: ████████
Named Insured:     Edgewater Valley Forge Fund III LP

2.    The Insurer(s) will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this coverage form or that contains Covered Property insured under this coverage form, if the collapse is caused by one or more of the following:

    a.    The **specified causes of loss** or breakage of building glass, all only as insured against in this policy;

    b.    Decay that is hidden from view, unless the presence of such decay is known to an Insured prior to collapse;

    c.    Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an Insured prior to collapse;

    d.    Weight of people or personal property;

    e.    Weight of rain that collects on a roof;

    f.    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., the Insurer(s) will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this causes of loss form for the causes of loss listed in 2.a., 2.d. and 2.e.

3.    With respect to the following property:

    a.    Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

    b.    Awnings, gutters and downspouts;

    c.    Yard fixtures;

    d.    Outdoor swimming pools;

    e.    Fences;

    f.    Piers, wharves and docks;

    g.    Beach or diving platforms or appurtenances;

    h.    Retaining walls; and

    i.    Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in 2.a. through 2.f., the Insurer(s) will pay for loss or damage to that property only if:

    a.    Such loss or damage is a direct result of the collapse of a building insured under this policy; and

    b.    The property is Covered Property under this policy.

4.    If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, the Insurer(s) will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    a.    The collapse was caused by a cause of loss listed in 2.a. through 2.f. above;

    b.    The personal property which collapses is inside a building; and

    c.    The property which collapses is not of a kind listed in 3. above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph 4. does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5.    This additional coverage, collapse, will not increase the limits of insurance provided in this policy.

Contract No: ▆▆▆▆▆▆▆
Named Insured:    Edgewater Valley Forge Fund III LP

E.    Additional Coverage Extensions

1.    **Water Damage**, Other Liquids, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, the Insurer(s) will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This coverage extension does not apply to the repair of underground pipes. This coverage extension does not increase the limit of insurance.

2.    Glass

a.    The Insurer(s) will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b.    The Insurer(s) will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This coverage extension, E.2., does not increase the limit of insurance.

Contract No:   ▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

# ACCOUNTS RECEIVABLE COVERAGE EXTENSION

It is hereby understood and agreed that the following coverage extension for **accounts receivable** applies to this policy.

A.   Coverage

    1.   The Insurer(s) will pay for **accounts receivable**, which means the following:

        a.   All sums due to the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of physical loss or damage to records of **accounts receivable** by **covered causes of loss** insured against under this policy during the period of this policy;

        b.   Interest charges on any loan required to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

        c.   Collection expenses in excess of normal collection cost and made necessary because of such loss or damage; and

        d.   Other expenses when reasonably incurred by the Insured in re-establishing records of **accounts receivable** following such loss or damage.

    2.   Excluded Property

    Coverage does not apply to:

        a.   Records of **accounts receivable** in storage away from the **premises** shown on the Declarations Page; or

        b.   Contraband, or property in the course of illegal transportation or trade.

    3.   Covered Causes Of Loss

    **Covered causes of loss** means risks of direct physical loss or damage to the Insured's records of **accounts receivable** from the perils described in the Causes Of Loss form unless the loss is listed in the exclusions.

    4.   Additional Coverage – Collapse

        1.   The term **covered cause of loss** includes the Additional Coverage – Collapse with respect to collapse of a building or part of a building. With respect to buildings:

            a.   Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

            b.   A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

            c.   A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

            d.   A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

        2.   The Insurer(s) will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this coverage form or that contains Covered Property insured under this coverage extension, if the collapse is caused by one or more of the following:

Contract No: ████████

Named Insured:      Edgewater Valley Forge Fund III LP

      a.   A **specified causes of loss** or breakage of building glass, all only as insured against in this policy;

      b.   Decay that is hidden from view, unless the presence of such decay is known to an Insured prior to collapse;

      c.   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an Insured prior to collapse;

      d.   Weight of people or personal property;

      e.   Weight of rain that collects on a roof;

      f.   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., the Insurer(s) will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this coverage extension for the causes of loss listed in 2.a., 2.d. and 2.e.

This Additional Coverage – Collapse does not increase the Sublimit of Insurance provided in this coverage extension.

5.    Coverage Extension

Removal

If the Insured gives the Insurer(s) written notice within 10 days of removal of their records of **accounts receivable** because of imminent danger of loss or damage, the Insurer(s) will pay for loss or damage while the **accounts receivable** are:

      a.   At a safe place away from the Insured's **premises;** or

      b.   Being taken to and returned from that place.

This coverage extension is included within the Sublimit of Insurance applicable to the **premises** from which the records of **accounts receivable** are removed.

B.   Exclusions

1.    The Insurer(s) will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

      a.   Governmental Action

          Seizure or destruction of property by order of governmental authority.

          But the Insurer(s) will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under the **causes of loss** applicable to this coverage extension.

      b.   Nuclear Hazard

         1)   Any weapon employing atomic fission or fusion; or

         2)   Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, the Insurer(s) will pay for the direct loss or damage caused by that fire if the fire would be covered under the **causes of loss** applicable to this coverage extension.

      c.   War And Military Action

         1)   War, including undeclared or civil war;

         2)   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

         3)   Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

          Exclusions B.1.a. through B.1.c. apply whether or not the loss event results in widespread damage or affects a substantial area.

Contract No:   ▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

2.  The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following:

    a.  Delay, loss of use, loss of market or any other consequential loss.

    b.  Dishonest or criminal act committed by:

        1)  The Insured, any of their partners, employees (including temporary employees and leased workers), directors, trustees, or authorized representatives;

        2)  A manager or a member if the Insured is a limited liability company;

        3)  Anyone else with an interest in the property, or their employees (including temporary employees and leased workers)  or authorized representatives; or

        4)  Anyone else to whom the property is entrusted for any purpose.

    This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

    This exclusion does not apply to **accounts receivable** that are entrusted to others who are carriers for hire.

    This exclusion does not apply to acts of destruction by the Insured's employees (including temporary employees and leased workers) or authorized representatives; but theft by the Insured's employees (including temporary employees or leased workers) or authorized representatives is not covered.

    c.  Loss due to alteration, falsification, manipulation, concealment, destruction or disposal of records of **accounts receivable** committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

    d.  Loss due to bookkeeping, accounting or billing errors or omissions.

    e.  Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

        1)  Programming errors or faulty machine instructions;

        2)  Faulty installation or maintenance of data processing equipment or component parts;

        3)  An occurrence that took place more than 100 feet from the Insured's **premises**; or

        4)  Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from the Insured's **premises**.

      However the Insurer(s) will pay for direct loss or damage caused by lightning.

    f.  Voluntary parting with any property by the Insured or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

    g.  Unauthorized instructions to transfer property to any person or to any place.

    h.  Neglect of an Insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.  The Insurer(s) will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

4.  The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a **covered cause of loss** results, will pay for the loss or damage caused by that **covered cause of loss**.

    a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

    b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c.  Faulty, inadequate or defective:

        1)  Planning, zoning, development, surveying, siting;

Contract No:   ▓▓▓▓▓▓▓▓
Named Insured:      Edgewater Valley Forge Fund III LP

      2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      3)    Materials used in repair, construction, renovation or remodeling; or

      4)    Maintenance;

      of part or all of any property wherever located.

    d.    Collapse except as provided in the Additional Coverage – Collapse Section of this coverage extension.

C.    Limits Of Insurance

The most the Insurer(s) will pay for loss or damage in any one occurrence is the applicable Sublimit of Insurance shown in Section II - Sublimits of Insurance of this policy, which shall be part of and not in addition to the limit of insurance shown elsewhere in the policy.

D.    Deductible

The Insurer(s) will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Sublimits of Insurance exceeds the applicable Deductible shown on Section III – Policy Deductibles. The Insurer(s) will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Sublimit of Insurance.

E.    Additional Conditions

The following conditions apply in addition to the Policy Conditions:

1.    Determination Of Receivables; Deductions

    a.    When there is proof that a loss covered by this extension has occurred but the Insured cannot accurately establish the total amount of **accounts receivable** outstanding as of the date of such loss or damage, such amount shall be based on the Insured's monthly statements and shall be computed as follows:

      1)    Determine the total amount of all outstanding **accounts receivable** at the end of the same fiscal month in the year immediately preceding the year in which the loss or damage occurs; and

      2)    Calculate the percentage increase or decrease in the average monthly total of **accounts receivable** for the twelve (12) months immediately preceding the month in which the loss or damage occurs, as compared with such average for the same months on the preceding year;

      3)    The amount determined under 1) above adjusted by the percentage calculated under 2) above shall be the agreed total **accounts receivable** as of the last day of the fiscal month in which the said loss occurs;

      4)    The amount determined under 3) above shall be increased or decreased in conformity with the normal fluctuations in the amount of **accounts receivable** during the fiscal month involved, due consideration being given to the experience of the business since the last day of the last fiscal month.

    b.    The following shall be deducted from the total amount of **accounts receivable**, however established:

      1)    The amount of such accounts evidenced by records not lost or damaged;

      2)    The amount of the accounts that the Insured is able to re-establish or collect;

      3)    An amount to allow for probable bad debts which would normally have been uncollectible by the Insured; and

      4)    All unearned interest and service charges.

2.    Recoveries

The Insured will pay the Insurer(s) the amount of all recoveries they receive for loss or damage paid by the Insurer(s). But any recoveries in excess of the amount the Insurer(s) has paid belong to the Insured.

3.    Coinsurance

If a coinsurance percentage is shown in the Declarations Page, the following condition applies.

Contract No: ███████████
Named Insured:    Edgewater Valley Forge Fund III LP

The Insurer(s) will not pay the full amount of any loss if the value of all **accounts receivable**, except those in transit, at the time of loss times the coinsurance percentage shown for it in the Declarations Page is greater than the Sublimit of Insurance for this coverage extension.

Instead, the Insurer(s) will determine the most they will pay using the following steps:

a.    Multiply the value of all **accounts receivable**, except those in transit, at the time of loss by the Coinsurance percentage;

b.    Divide the Sublimit of Insurance for this coverage extension by the figure determined in Step a.; and

c.    Multiply the total amount of loss by the figure determined in Step b.

The Insurer(s) will pay the amount determined in Step c. or the Sublimit of Insurance, whichever is less. For the remainder, the Insured will either have to rely on other insurance or self-insure.

This condition will not apply to records of **accounts receivable** in transit, interest charges, excess collection expenses or expenses to re-establish the Insured's records of **accounts receivable**.

4.    Protection Of Records

Whenever the Insured is not open for business, and except while they are actually using the records, the Insured must keep all records of **accounts receivable** in secure receptacles.

Contract No: ▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

---

# ADDITIONAL CONDITIONS ENDORSEMENT

---

It is hereby understood and agreed that the following additional conditions apply to this policy:

Sinkhole coverage only applies to the following location:

101 E Retta Esplanade

Punta Gorda, FL 33950

Any Water Damage caused by or resulting from a rooftop or elevated pool is subject to a $100,000 per occurrence deductible.

All Risk coverage is excluded for locations in public protection classes 8, 9, 10.

Coverage is subject to no more than 10% HUD/subsidized/Section 8 tenants.

Exterior Insulation and Finishing System (EIFS) Exclusion is removed.

Insured warrants no outstanding claims litigation nor outstanding public adjuster open claims.

Insurer(s) shall not be liable for more than the proportional share of the sublimit amounts offered by this policy in any one occurrence.

Loss due to damage from barbeque grills, hibachi grills or other similar open flame cooking devices is excluded. It is further warranted that there are no barbeque grills, hibachi grills or other similar open flame cooking devices within 10 feet of a covered property.

Newly Acquired Location(s) must be submitted for prior approval.

No clean room exposures.

Spray polyurethane foam roofs are excluded from coverage as is any resulting loss or damage directly caused by the presence or failure of any spray polyurethane foam roof.

This policy excludes any loss or damage directly or indirectly caused by the use of Federal Pacific Stab-Lok electrical panels or aluminum wiring in any and all secondary switches such as electrical outlets or ceiling fans.

Vehicles and resulting business income loss are excluded

Contract No:   ▆▆▆▆▆▆
Named Insured:   Edgewater Valley Forge Fund III LP

# FLORIDA – SINKHOLE LOSS COVERAGE ENDORSEMENT

## SCHEDULE

| Premises Number | Building Number |
|:---:|:---:|
| ALL | ALL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page. ||

It is hereby understood and agreed that with respect to the locations indicated in the Schedule above, this policy is extended to cover **sinkhole loss** subject to the following conditions and provisions.

With respect to the location(s) indicated in the Schedule, the following provisions apply:

A.   The following is added to this policy as a **covered cause of loss.** In the forms which address **specified causes of loss**, the following is also added as a **specified cause of loss.** However, as a **specified cause of loss**, the following does not apply to the Additional Coverage – Collapse.

**Sinkhole loss**, meaning loss or damage to covered property when **structural damage** to the **covered building**, including the foundation, is caused by settlement or systematic weakening of the earth supporting the **covered building**, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone, dolomite, or similar rock formation.

Coverage for **sinkhole loss** includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to the Insured. The professional engineer must be selected or approved by the Insurer(s). However, until the Insured enters into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from the Insurer(s):

1.   The Insurer(s) will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2.   The Insurer's payment for **sinkhole loss** to Covered Property may be limited to the actual cash value of the loss to such property.

The Insured must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after the Insurer(s) notifies the Insured that there is coverage for their **sinkhole loss.** After the Insured has entered into such contract, the Insurer(s) will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

Contract No: ████████
Named Insured:     Edgewater Valley Forge Fund III LP

However, if the professional engineer determines, prior to the Insured entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable sublimit of insurance, the Insurer(s) must either complete the recommended repairs or pay that sublimit of insurance upon such determination. If the aforementioned determination is made during the course of repair work and the Insurer(s) has begun making payments for the work performed, the Insurer(s) must either complete the recommended repairs or pay only the remaining portion of the applicable sublimit of insurance upon such determination. The most the Insurer(s) will pay for the total of all **sinkhole loss**, including building and land stabilization and foundation repair, is the applicable limit of insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1.  There is a mutual agreement between the Insured and Insurer(s);

2.  The claim is involved with the neutral evaluation process;

3.  The claim is in litigation; or

4.  The claim is under appraisal or mediation.

B.  Excluded Property

Covered Property does not include:

1.  Any structures that are attached to the **covered building**, including but not limited to:

    a.  Driveways, sidewalks, pavers, curbing, edging;

    b.  Patios, porches and decks;

    c.  Swimming pools and their decking;

    d.  Screened enclosures of any type of construction;

    e.  Greenhouses;

    f.  Barns;

    g.  Irrigation systems above or below the ground;

    h.  Fences;

    i.  Flagpoles;

    j.  Satellite receivers or antennas.

2.  Water wells, water storage tanks, pumping equipment, plumbing from water well to the covered building, water conditioning and/or filtration systems; any other type of well or water storage tank is not covered unless the systems are required for legal habitation of the **covered building** and there is **structural damage** to the **covered building**.

C.  **Sinkhole loss** does not include:

1.  Sinking or collapse of land into man-made underground cavities; or

2.  **Earthquake.**

D.  With respect to coverage provided by this endorsement, the Earth Movement Exclusion and the Collapse Exclusion do not apply.

E.  With respect to a claim for alleged **sinkhole loss**, the following provision is added:

Following receipt by the Insurer(s) of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if the Insurer(s) denies the Insured's claim, the Insurer(s) will notify the Insured of their right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged **sinkhole loss** to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

Contract No: ▬▬▬▬▬▬
Named Insured:     Edgewater Valley Forge Fund III LP

The Insured or Insurer(s) may file a request with the Department for neutral evaluation; the other party must comply with such request. The Insurer(s) will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on the Insured or Insurer(s).

Participation in the neutral evaluation program does not change the Insured's right to file suit against the Insurer(s) in accordance with the Legal Action Against The Insurer(s) Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

F.    Limit of Insurance

The total of Insurer(s)'s liability for all loss, damage or expense for all coverage provided by this extension from a **sinkhole loss**, after the application of any other sublimit of insurance for a specified interest listed within Section II – Sublimits of Insurance of the policy, will be the sublimit of insurance stated below per occurrence. The sublimit amount stated below is included within, and not in addition to, the applicable limit of insurance shown in the Declarations Page.

Sublimit of Insurance: Premise ALL, $10,000,000 per occurrence

G.    Deductible

In the case of loss covered by this endorsement the Insurer(s) will only be liable if the Insured sustains a loss in a single occurrence greater than the deductible specified below, and then only for that amount that exceeds the deductible per occurrence, up to the sublimit of insurance for the coverage provided by this extension.

Deductible: Premise ALL, $25,000  per occurrence

H.    Coverage for **sinkhole loss** under this endorsement does not increase the applicable limit of insurance shown on the Declarations Page. Even if loss or damage qualifies under, or includes, both **catastrophic ground cover collapse** (addressed elsewhere in policy) and **sinkhole loss**, only one limit of insurance will apply to such loss or damage.

I.    The following provision is added to the Duties In The Event Of Loss Or Damage Loss Condition:

A claim for **sinkhole loss**, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to the Insurer(s) in accordance with the terms of this policy within two years after the Insured knew or reasonably should have known about the **sinkhole loss.**

J.    If the Insurer(s) denies the Insured's claim for **sinkhole loss** without performing testing under section 627.7072, Florida Statutes, the Insured may demand testing by communicating such demand to the Insurer(s) in writing within 60 days after the Insured receives the Insured's denial of the claim. The Insured is responsible for 50% of the testing costs, or $2,500, whichever is less. If the Insurer's professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is **sinkhole**, the Insurer(s) will reimburse the Insured for the testing costs.

K.    The Insured may not accept a **rebate** from any person performing repairs for **sinkhole loss** covered under this endorsement. If the Insured receive a **rebate**, coverage under this endorsement is void and the Insured must refund the amount of the **rebate** to the Insurer(s).

Contract No: ▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

L.    If the Insurer(s) denies the Insured's claim for **sinkhole loss** upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no **sinkhole** loss or that the cause of the damage was not **sinkhole activity**, and if the **sinkhole loss** claim was submitted without good faith grounds for submitting such claim, the Insured shall reimburse the Insurer(s) for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. The Insured is not required to pay such reimbursement unless the Insured requested the analysis and services and the Insurer(s), before ordering the analysis, informed the Insured in writing of the potential for reimbursement and gave the Insured the opportunity to withdraw the claim.

M.    As a precondition to accepting payment for **sinkhole loss,** the Insured must file with the county clerk of court, a copy of any **sinkhole** loss report regarding the insured's property which was prepared on behalf or at the Insured's request. The Insured will bear the cost of filing and recording the **sinkhole** loss report.

N.    The following definitions are added with respect to the coverage provided under this endorsement:

1.    **Structural damage** means a **covered building** or structure, regardless of the date of its construction, has experienced the following:

   a.    Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   b.    Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the **primary structural members** or **primary structural systems** and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **primary structural members** or **primary structural systems** exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   c.    Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical **primary structural members** to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   d.    Damage that results in the building, or any portion of the building containing **primary structural members** or **primary structural systems**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

   e.    Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

2.    **Primary structural member** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3.    **Primary structural system** means an assemblage of **primary structural members**.

4.    **Covered building** or the coverage provided by this endorsement means the building property at the insured location that is listed in the Schedule.  This definition does not extend to any structures that are attached to the livable square footage of this stand-alone structure, unless the structure is under the same roofline or foundation line and depth as the **covered building**.

5.    **Rebate** means a remuneration, payment, gift, discount or transfer of any item of value to the Insured by or on behalf of a person performing the **sinkhole loss** repairs as an incentive or inducement to obtain **sinkhole loss** repairs performed by that person.

6.    **Sinkhole activity** means settlement or systematic weakening of the earth supporting the **covered building** only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock material into subterranean voids created by the effect of water on limestone, dolomite, or similar rock formation.

7.    **Sinkhole loss** means loss or damage to Covered Property when **structural damage** to the **covered building** or structure, including the foundation, is caused by settlement or systematic weakening of the earth supporting the **covered building**, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments or rock materials into subterranean voids created by the effect of water on limestone, dolomite, or similar rock formations

Contract No: ████████

Named Insured:     Edgewater Valley Forge Fund III LP

---

# JOINT OR DISPUTED LOSS AGREEMENT

---

It is hereby understood and agreed that the following applies to this policy:

A.   This endorsement is intended to facilitate payment of insurance proceeds when:

1.   Both a boiler and machinery or equipment breakdown policy and this commercial property policy are in effect;

2.   Damage occurs to Covered Property that is insured by the boiler and machinery or equipment breakdown policy and this commercial property policy; and

3.   There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B.   This endorsement does not apply if:

1.   Both the boiler and machinery or equipment breakdown insurer(s) and this insurer do not admit to any liability; and

2.   Neither the boiler and machinery or equipment breakdown insurer(s) nor this insurer contend that coverage applies under the other insurer's policy.

C.   The provisions of this endorsement apply only if all of the following requirements are met:

1.   The boiler and machinery or equipment breakdown policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

2.   The damage to the Covered Property was caused by a loss for which:

   a.   Both the boiler and machinery or equipment breakdown insurer(s) and this insurer admit to some liability for payment under the respective policies; or

   b.   Either:

      1)   The boiler and machinery or equipment breakdown insurer(s) does not admit to any liability for payment, while this insurer contends that:

         (a)   All liability exists under the boiler and machinery or equipment breakdown policy; or

         (b)   Some liability exists under both the boiler and machinery or equipment breakdown policy and this commercial property policy;

      2)   This insurer does not admit to any liability for payment, while the boiler and machinery or equipment breakdown insurer(s) contends that:

         (a)   All liability exists under this commercial property policy; or

         (b)   Some liability exists under both the boiler and machinery or equipment breakdown policy and this commercial property policy; or

      3)   Both the boiler and machinery or equipment breakdown insurer(s) and this insurer:

Contract No: ███████

Named Insured:     Edgewater Valley Forge Fund III LP

      (a)    Do not admit to any liability for payment; and

      (b)    Contend that some or all liability exists under the other insurer's policy; and

3.    The total amount of the loss is agreed to by the Insured, the boiler and machinery or equipment breakdown insurer(s) and this insurer.

D.    If the requirements listed in Paragraph C. above are satisfied, this insurer and the boiler and machinery or equipment breakdown insurer(s) will make payments to the extent, and in the manner, described as follows:

1.    This insurer will pay, after the Insured's written request, the entire amount of loss that this insurer has agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

2.    The boiler and machinery or equipment breakdown insurer(s) will pay, after the Insured's written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery or equipment breakdown policy and one-half (1/2) the amount of loss that is in disagreement.

3.    Payments by the Insurer(s) of the amounts that are in disagreement, as described in Paragraphs 1. and 2., do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

4.    The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent loss agreement(s) of the boiler and machinery or equipment breakdown policy.

5.    The amount to be paid under this endorsement shall not exceed the amount this insurer would have paid had no boiler and machinery or equipment breakdown policy been in effect at the time of loss. In no event will this insurer pay more than the applicable limit of insurance shown on the Declarations Page.

6.    Acceptance by the Insured of sums paid under this endorsement does not alter, waive or surrender any other rights against this insurer.

E.    Arbitration

1.    If the circumstances described in Paragraph C.2.a. exist and the boiler and machinery or equipment breakdown insurer(s) and this insurer agree to submit the differences to arbitration, the boiler and machinery or equipment breakdown insurer(s) and this insurer will determine the amount each will pay and will pay the Insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

2.    If any of the circumstances described in Paragraph C.2.b. exist, then the boiler and machinery or equipment breakdown insurer(s) and this insurer agree to submit the differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

3.    The Insured agrees to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by this insurer, and another will be appointed by the boiler and machinery or equipment breakdown insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

F.    Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay **liquidated damages** to the other insurer(s) on the amount of the excess contribution of the other insurer(s). **Liquidated damages** are defined as interest from the date the insured invokes this agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the money rates column of the Wall Street Journal during the period of the **liquidated damages**. Arbitration expenses are not a part of the excess contribution for which **liquidated damages** are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

Contract No:  ▮▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

# ORDINANCE OR LAW COVERAGE AND SUBLIMITS

**SCHEDULE***

| Building No./ Premises No. | Coverage A | Coverage B Limit Of Insurance | Coverage C Limit Of Insurance | Coverage B And C Combined Limit Of Insurance |
|---|---|---|---|---|
| ALL    /    ALL | X | $1,000,000 | $1,000,000 | $0** |

*Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations Page.

**Do not enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages B and C, or if one of these Coverages is not applicable.

It is hereby understood and agreed that the following coverage is provided by this policy:

A.    Each Coverage – Coverage A, Coverage B and Coverage C – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

B.    Application Of Coverage(s)

The Coverage(s) provided by this endorsement apply only if both B.1. and B.2. are satisfied and are then subject to the qualifications set forth in B.3.

1.    The ordinance or law:

a.    Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described **premises**; and

b.    Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

2.    a.    The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

b.    The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

c.    However if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

Contract No: ████████

Named Insured:    Edgewater Valley Forge Fund III LP

3.    In the situation described in B.2.b. above, the Insurer(s) will not pay the full amount of loss otherwise payable under the terms of Coverages A, B, and/or C of this endorsement. Instead, the Insurer(s) will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then the Insurer(s) will pay the full amount of loss otherwise payable under the terms of Coverages A, B and/or C of this endorsement.

C.    The Insurer(s) will not pay under Coverage A, B or C of this endorsement for:

1.    Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by **pollutants** or due to the presence, growth, proliferation, spread or any activity of **fungus**, wet or dry rot or bacteria; or

2.    The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**, **fungus**, wet or dry rot or bacteria.

3.    Any loss in value or any cost incurred due to an ordinance or law the Insured was required to comply with before the time of the current loss, even in the absence of building damage, and the Insured has failed to comply.

D.    Coverage

1.    Coverage A – Coverage For Loss To The Undamaged Portion Of The Building

With respect to the building that has sustained covered direct physical damage, the Insurer(s) will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage A is included within the limit of insurance shown on the Declarations Page as applicable to the **covered building**. Coverage A does not increase the limit of insurance.

2.    Coverage B – Demolition Cost Coverage

With respect to the building that has sustained covered direct physical damage, the Insurer(s) will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

Coverage B is included within the limit of insurance per occurrence for the policy shown on the Declarations Page. Coverage B does not increase the limit of insurance.

The additional condition Coinsurance does not apply to Demolition Cost of Coverage.

3.    Coverage C – Increased Cost Of Construction Coverage

a.    With respect to the building that has sustained covered direct physical damage, the Insurer(s) will pay the increased cost to:

1)    Repair or reconstruct damaged portions of that building; and/or

2)    Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

1)    This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

2)    The Insurer(s) will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Coverage C is included within the limit of insurance per occurrence for the policy shown on the Declarations Page. Coverage C does not increase the limit of insurance.

The additional condition Coinsurance does not apply to Increased Cost Of Construction Coverage.

Contract No:  ■■■■■■■■

Named Insured:      Edgewater Valley Forge Fund III LP

    b.    When a building is damaged or destroyed and Coverage C applies to that building in accordance with 3.a. above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in 3.a.:

        1)    The cost of excavations, grading, backfilling and filling;

        2)    Foundation of the building;

        3)    Pilings; and

        4)    Underground pipes, flues and drains.

        The items listed in b.(1) through b.(4) above are deleted from Excluded Property, but only with respect to the coverage described in this Provision, 3.b.

## E.   Loss Payment

    1.    All following loss payment Provisions, E.2. through E.5., are subject to the apportionment procedures set forth in Section B.3. of this endorsement.

    2.    When there is a loss in value of an undamaged portion of a building to which Coverage A applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

        a.    If the Replacement Cost valuation applies and the property is being repaired or replaced, on the same or another location, the Insurer(s) will not pay more than the lesser of:

            1)    The amount the Insured would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same location and to the same height, floor area, style and comparable quality of the original property insured; or

            2)    The limit of insurance shown on the Declarations Page as applicable to the **covered building**. However Coverage A is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

        b.    If the Replacement Cost valuation applies and the property is not repaired or replaced, or if the Replacement Cost valuation does not apply, the Insurer(s) will not pay more than the lesser of:

            1)    The actual cash value of the building at the time of loss; or

            2)    The limit of insurance shown on the Declarations Page as applicable to the **covered building**. However Coverage A is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

    3.    Unless Paragraph E.5. applies, loss payment under Coverage B – Demolition Cost Coverage will be determined as follows:

        The Insurer(s) will not pay more than the lesser of the following:

        a.    The amount the Insured actually spends to demolish and clear the site of the described **premises**; or

        b.    The applicable limit of insurance shown for Coverage B in the Schedule above. However Coverage B is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

    4.    Unless Paragraph E.5. applies, loss payment under Coverage C – Increased Cost Of Construction Coverage will be determined as follows:

        a.    The Insurer(s) will not pay under Coverage C:

            1)    Until the property is actually repaired or replaced, at the same or another **premises**; and

            2)    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. The Insurer(s) may extend this period in writing during the two years.

        b.    If the building is repaired or replaced at the same location, or if the Insured elects to rebuild at another location, the most the Insurer(s) will pay under Coverage C is the lesser of:

            1)    The increased cost of construction at the same **premises**; or

Contract No: ████████
Named Insured:    Edgewater Valley Forge Fund III LP

    2)   The applicable limit of insurance shown for Coverage C in the Schedule above. However Coverage C is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

  c.   If the ordinance or law requires relocation to another **premises**, the most the Insurer(s) will pay under Coverage C is the lesser of:

    1)   The increased cost of construction at the new location; or

    2)   The applicable limit of insurance shown for Coverage C in the Schedule above. However Coverage C is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

5.   If a combined limit of insurance is shown for Coverages B and C in the Schedule above, Paragraphs E.3. and E.4. of this endorsement do not apply with respect to the building that is subject to the combined limit, and the following loss payment provisions apply instead:

    The most the Insurer(s) will pay, for the total of all covered losses for Demolition Cost and Increased Cost Of Construction, is the combined limit of insurance shown for Coverages B and C in the Schedule above. However the combined limit of insurance for Coverage B and C is not additional insurance and the amount payable may be lower than the limit of insurance for a **covered building** after the application of any applicable sublimit of insurance for a **covered cause of loss** and the limit of insurance for the policy shown on the Declarations Page.

    Subject to this combined limit of insurance or applicable sublimit of insurance for a **covered cause of loss**, the following loss payment provisions apply:

  a.   For Demolition Cost, the Insurer(s) will not pay more than the amount the Insured actually spends to demolish and clear the site of the described **premises**.

  b.   With respect to the Increased Cost of Construction:

    1)   The Insurer(s) will not pay for the increased cost of construction:

      (a)   Until the property is actually repaired or replaced, at the same or another **premises**; and

      (b)   Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. The Insurer(s) may extend this period in writing during the two years.

    2)   If the building is repaired or replaced at the same **premises** or if the Insured elects to rebuild at another **premises**, the most the Insurer(s) will pay for the increased cost of construction is the increased cost of construction at the same **premises**.

    3)   If the ordinance or law requires relocation to another **premises**, the most the Insurer(s) will pay for the increased cost of construction is the increased cost of construction at the new **premises**.

Contract No:
Named Insured:      Edgewater Valley Forge Fund III LP

---

# PROTECTIVE SAFEGUARDS ENDORSEMENT

---

**SCHEDULE\***

| | Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|---|
| | ALL | ALL | P-1; P-2; P-9 |

| | | | |
|---|---|---|---|
| **Describe any "P-9":** | | | |
| Battery or hard wire smoke detectors provided in each unit. | | | |
| * Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations Page. | | | |

**A.**     The following is added to the Conditions section of this policy:

Protective Safeguards

1.     As a condition of this insurance, the Insured is required to maintain the protective devices or services listed in the Schedule above.

2.     The protective safeguards to which this endorsement applies are identified by the following symbols:

"P-1"  **Automatic Sprinkler System**, including related supervisory services.

   **Automatic Sprinkler System** means:

   a.     Any automatic fire protective or extinguishing system, including connected:

       1)     Sprinklers and discharge nozzles;

       2)     Ducts, pipes, valves and fittings;

       3)     Tanks, their component parts and supports; and

       4)     Pumps and private fire protection mains.

   b.     When supplied from an automatic fire protective system:

       1)     Non-automatic fire protective systems; and

       2)     Hydrants, standpipes and outlets.

"P-2"  Automatic Fire Alarm, protecting the entire building, that is:

   a.     Connected to a central station; or

   b.     Reporting to a public or private fire alarm station.

Contract No:   ████████
Named Insured:   Edgewater Valley Forge Fund III LP

"P-3"  Security Service, with a recording system or watch clock, making hourly rounds covering the entire building, when the **premises** are not in actual operation.

"P-4"  Service Contract with a privately owned fire department providing fire protection service to the described **premises**.

"P-5"  Automatic Commercial Cooking Exhaust and Extinguishing System installed on cooking appliances and having the following components:

a.   Hood;
b.   Grease removal device;
c.   Duct System; and
d.   Wet or dry chemical fire extinguishing system.
A maintenance contract in accordance with local regulations is also required for this system(s).

"P-6"  Automatic burglar alarm connected to a central station in specified building(s).

"P-9"  The protective system described in the Schedule.

B.   The following is added to the exclusions section of this policy:

The Insurer(s) will not pay for loss or damage caused by or resulting from fire if, prior to the fire, the Insured:

1.   Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify the Insurer(s) of that fact; or

2.   Failed to maintain any protective safeguard listed in the Schedule above, and over which the insured had control, in complete working order.

If part of an **automatic sprinkler system** or Automatic Commercial Cooking And Exhaust Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to the Insurer will not be necessary if the Insured can restore full protection within 48 hours.

Contract No: ████████
Named Insured:   Edgewater Valley Forge Fund III LP

---

# ROOF SURFACING COVERAGE LIMITATION ENDORSEMENT

---

**SCHEDULE**

| Premises Number | Building Number | Indicate Applicability |
|---|---|---|
| ALL | ALL | 15 years old or older |
| | | |
| | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page. | | |

It is hereby understood and agreed that the following applies with respect to loss or damage from a **covered cause of loss** to a building or structure identified in the Schedule:

Replacement Cost valuation coverage (if otherwise applicable to such property) does not apply to **roof surfacing**.  Instead, we will determine the value of **roof surfacing** at actual cash value as of the time of loss or damage.

For the purpose of this endorsement, **roof surfacing** means the shingles, tiles (including clay, concrete or any other type), cladding, metal or synthetic sheeting or similar materials covering the roof, and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

Contract No:   ████████
Named Insured:      Edgewater Valley Forge Fund III LP

---

# SCHEDULED PROPERTY COVERAGE EXTENSION

---

It is hereby understood and agreed that **Covered Property** is extended to include the property described below if an "X" is marked below in the space labeled Coverage Extended

| Coverage Extended | Scheduled Item | Limit of Insurance |
|---|---|---|
| X | Signs | $25,000 |

1. Limit of Insurance
   The most the Insurer(s) will pay for all loss, damage or expense for any coverage provided by this extension, after the application of any deductibles, will be the Limit of Insurance stated above per occurrence. The limit amount stated above is included within, and not in addition to, the limit of insurance shown on the Participation Page.
   In no event shall the liability of the Insurer(s) exceed this limit of insurance in any one loss, disaster, casualty, or series of loss, disasters, or casualties, arising out of one event, irrespective of the number of items or locations involved.

2. Combined Single Limit
   Scheduled Property Coverage is subject to the individual Limits of Insurance above. If, however, there are no individual limits, then the above Scheduled Items with Coverage Extended are subject to the combined sublimit below. The limit amount stated is included within, and not in addition to, the limit of insurance shown on the Participation Page.

   Combined Single Limit: $0

3. Deductible
   The deductible applicable to coverage provided by this extension is the same as described in Section III – Policy Deductibles for the applicable peril and applies on a per location basis.

**Definitions:**

**Artificial Turf** means a surface of synthetic fibers made to look like natural grass. It is most often used in arenas for sports that were originally or are normally played on grass.

**Bridges, roadways, walks, patios or other paved surfaces** means a paved outdoor area adjoining a house or courtyard; a road or path covered with a firm surface suitable for travel, as with paving stones or concrete, such as a paved courtyard, covered with a hard layer of material, or a passage or path for walking, especially a raised passageway connecting different sections of a building or a wide path in a park or garden. Common materials may include cement, pavers, tiles, flagstone or wood.

**Fencing** mean a barrier, railing, or other upright structure, typically of wood or wire, enclosing an area of ground to mark a boundary or control access.

**Gates** mean a hinged barrier used to close an opening in a wall, fence, or hedge.

**Lights** mean landscape lighting or garden lighting refers to the use of outdoor illumination of private gardens and public landscapes, for the enhancement and purposes of safety, nighttime aesthetics, accessibility, security, recreation and sports, and social and event uses.

**Mailboxes and Mail Kiosks** mean a box into which mail is delivered, especially one mounted on a post at the entrance to a **covered property**.

Contract No: ██████████
Named Insured:    Edgewater Valley Forge Fund III LP

**Playground Equipment** means an area used for outdoor play or recreation, especially by children, and often containing recreational equipment such as slides or swings.

**Signs** mean signs not attached to a building, as those would be covered as part of the structure. Including notices on public display that provide information or instructions in a written or symbolic form.

**Sports Court** means  any hardscape area, including handball courts and racquetball courts but excluding pools and driveways used exclusively for access to a garage.  This can include bocce ball or pickle ball courts as well.

**Swimming Pool(s) / Spa(s)** mean an artificial area of water for swimming including mechanicals, the patio or deck around the pool people sit on and walk on to enjoy the pool, and the fence that is required by law to be around the swimming pool, including picket pool fencing.

**Tennis Court** means any hardscape area, including tennis courts, tennis court lighting, tennis court fencing, but excluding pools and driveways used exclusively for access to a garage.

**Underground Cabling, Pipes, Sewers and Drains** mean irrigations, electrical cabling and wires, conduits, pipes, flues, sewers, tanks, drains, any similar property, and any apparatus in connection beneath the surface of the ground on the premises insured.

Contract No:   ▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

---

# VALUABLE PAPERS AND RECORDS
# COVERAGE EXTENSION

---

It is hereby understood and agreed that the following coverage extension for **valuable papers and records** applies to this policy:

A.   Coverage

The Insurer(s) will pay for direct physical loss of or damage to Covered Property from any of the **covered causes of loss.**

1.   Covered Property, as used in this coverage extension, means **valuable papers and records** that are the insured's property or property of others in the Insured's care, custody or control.

2.   Excluded Property

Covered Property does not include:

a.   Property not specifically declared and described on the Declarations Page if such property cannot be replaced with other property of like kind and quality;

b.   Property held as samples or for delivery after sale;

c.   Property in storage away from the **premises** shown on the Declarations Page; or

d.   Contraband, or property in the course of illegal transportation or trade.

3.   Covered Causes Of Loss

**Covered causes of loss** means risks of direct physical loss or damage to Covered Property from the covered perils described in the Causes Of Loss form attached to this policy unless the loss is listed in the Exclusions.

4.   Additional Coverage – Collapse

1.   The term covered cause of loss includes the Additional Coverage – Collapse with respect to collapse of a building or part of a building. With respect to buildings:

a.   Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

b.   A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

c.   A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

d.   A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2.   The Insurer(s) will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this coverage form or that contains Covered Property insured under this coverage extension, if the collapse is caused by one or more of the following:

a.   A **specified causes of loss** or breakage of building glass, all only as insured against in this policy;

Contract No:    ████████
Named Insured:    Edgewater Valley Forge Fund III LP

    b.   Decay that is hidden from view, unless the presence of such decay is known to an Insured prior to collapse;

    c.   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an Insured prior to collapse;

    d.   Weight of people or personal property;

    e.   Weight of rain that collects on a roof;

    f.   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., the Insurer(s) will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this coverage extension for the causes of loss listed in 2.a., 2.d. and 2.e.

This Additional Coverage – Collapse does not increase the Sublimit of Insurance provided in this coverage extension.

5.   Coverage Extensions

    a.   Removal

If the Insured gives the Insurer(s) written notice within 10 days of removal of their **valuable papers and records** because of imminent danger of loss or damage, the Insurer(s) will pay for loss or damage while it is:

    1)   At a safe place away from the Insured's **premises**; or

    2)   Being taken to and returned from that place.

This coverage extension is included within the Sublimit of Insurance applicable to the **premises** from which the Covered Property is removed.

    b.   Away From the Insured's **Premises**

The Insurer(s) will pay up to $5,000 for loss or damage to Covered Property while it is away from the Insured's **premises**.

But if a higher limit of insurance is specified in the Declarations Page, the higher limit will apply.

The limit for this coverage extension is additional insurance.

B.   Exclusions

1.   The Insurer(s) will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a.   Governmental Action

Seizure or destruction of property by order of governmental authority.

But the Insurer(s) will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this coverage extension.

    b.   Nuclear Hazard

    1)   Any weapon employing atomic fission or fusion; or

    2)   Nuclear reaction or radiation, or radioactive contamination from any other cause. But if nuclear reaction or radiation, or radioactive contamination results in fire, the Insurer(s) will pay for the direct loss or damage caused by that fire if the fire would be covered under this coverage extension.

    c.   War And Military Action

    1)   War, including undeclared or civil war;

    2)   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

Contract No: ▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

     3)    Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

Exclusions B.1.a. through B.1.c. apply whether or not the loss event results in widespread damage or affects a substantial area.

2.    The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following:

    a.    Delay, loss of use, loss of market or any other consequential loss.

    b.    Dishonest or criminal act committed by:

     1)    The Insured or any of the Insured's partners, employees, directors, trustees, or authorized representatives;

     2)    A manager or a member if the Insured is a limited liability company;

     3)    Anyone else with an interest in the property, or their employees or authorized representatives; or

     4)    Anyone else to whom the property is entrusted for any purpose.

    This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

    This exclusion does not apply to **valuable papers and records** that are entrusted to others who are carriers for hire.

    This exclusion does not apply to acts of destruction by the Insured's employees (including temporary employees and leased workers) or authorized representatives; but theft by the Insured's employees (including temporary employees or leased workers) or authorized representatives is not covered.

    c.    Errors or omissions in processing or copying.

    However if errors or omissions in processing or copying result in fire or explosion, the Insurer(s) will pay for the direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this coverage form.

    d.    Electrical or magnetic injury, disturbance or erasure of electronic recordings.

    However the Insurer(s) will pay for direct loss or damage caused by lightning.

    e.    Voluntary parting with any property by the Insured or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

    f.    Unauthorized instructions to transfer property to any person or to any place.

    g.    Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3.    The Insurer(s) will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a **covered cause of loss** results, the Insurer(s) will pay for the loss or damage caused by that **covered cause of loss.**

    a.    Weather Conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

    b.    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c.    Faulty, inadequate or defective:

     1)    Planning, zoning, development, surveying, siting;

     2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

     3)    Materials used in repair, construction, renovation or remodeling; or

     4)    Maintenance;

    of part or all of any property wherever located.

    d.    Collapse except as provided in the Additional Coverage – Collapse section of this coverage extension form.

Contract No: ███████████

Named Insured:     Edgewater Valley Forge Fund III LP

     e.    Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration, insects, vermin or rodents.

C.    Limits Of Insurance

The most the Insurer(s) will pay for loss or damage in any one occurrence is the applicable Sublimit of Insurance shown in Section II – Sublimits of Insurance of this policy, which shall be part of and not in addition to the limit of insurance shown elsewhere in the policy.

D.    Deductible

The Insurer(s) will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Sublimit of Insurance exceeds the applicable Deductible shown in Section III – Policy Deductibles. The Insurer(s) will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Sublimit of Insurance.

E.    Additional Conditions

The following apply in addition to the Policy Conditions:

1.    Valuation – Specifically Declared Items

The value of each item of property that is specifically declared and described in the Declarations Page is the applicable limit of insurance shown in the declarations for that item.

2.    Recoveries

If either the Insured or Insurer(s) recover any property after loss settlement, that party must give the other prompt notice. At the Insured's option, the property will be returned to the Insured. If so, the Insured's loss or damage will be readjusted based on the amount the Insured received for the property recovered, with allowance for recovery expenses incurred.

3.    Protection Of Records

Whenever the Insured is not open for business, and except while the Insured is actually using the property, the Insured must keep all **valuable papers and records** in secure receptacles.

Contract No:   ▮▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

# EQUIPMENT BREAKDOWN COVERAGE FORM DECLARATIONS

| Named Insured: | Edgewater Valley Forge Fund III LP |
|---|---|
| Policy Number: | 550007295 |
| Effective Date: | 11/19/2022 |

Equipment Breakdown is subject to the Limits of Insurance shown in the Declarations except as specifically shown below.  These coverages apply to any location on file with the company

| Equipment Breakdown | Limits/Sublimits |
|---|---|
| Total Limit per Breakdown | $29,390,000 |
| Property Damage | $29,390,000 |
| Business Income/Extra Expense | Follows Property |
| Data Restoration | $25,000 |
| Expediting Expenses | $25,000 |
| Hazardous Substances | $25,000 |
| Perishable Goods | $25,000 |
| Demolition and Increased Cost of Construction | $25,000 |
| Service Interruption | Included in BI/EE |

**Deductibles:**

Combined, All Coverages .................................................................. $25,000 per Occurrence

**Other Conditions:**

Newly Acquired Locations: N/A Days
Extended Period of Restoration: N/A Days
Interruption of Service Waiting Period: N/A Hours

CAT7085  (12/18)
Catalytic Risk Managers & Insurance Agency, LLC.

Contract No: ████████

Named Insured:    Edgewater Valley Forge Fund III LP

---

# PARTICIPATION PAGE

---

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s), do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the policy.

Provided that:

1. The collective liability of the Insurer(s) shall not exceed the limit of liability or any appropriate sublimit of liability or any annual aggregate limit.

2. The liability of each of the Insurer(s) shall not exceed the Participation Limit set against its name with the exception of loss adjustment expense which cost shall be 100% assumed by the Insurer(s) on each applicable layer of insurance.

**Several Liability Notice**

The subscribing Insurer(s) obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing Insurer(s) are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

**Application of Underlying Insurance Sublimits**

1. Unless specifically shown on or endorsed to this policy, coverage is excluded by this policy for any perils, coverages, or locations for which the Underlying Insurance policy(ies) imposes a sublimit less than the total limit over which this policy is excess.

2. For the purpose of attachment of coverage, sublimited perils, coverages, or locations excluded by this policy but covered by the Underlying Insurance policy(ies), shall be recognized by this policy as eroding or exhausting the limit of liability of the Underlying Insurance policy(ies). Nothing herein, however, shall be deemed to extend coverage in this policy to include loss, damage, or expense from such sublimited perils, coverages, or locations.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy except as herein above set forth.

**Equipment Breakdown Participation**

| Insurer | Policy #<br>Agreement # | Participation<br>(excess of deductibles per primary layer) | | | Premium | TRIA Coverage |
|---|---|---|---|---|---|---|
| | | Limit | Part Of | Excess of | | |
| GuideOne National Insurance Company (A- IX) | 550007295 | $29,390,000 | $29,390,000 | $0 | $809.00 | N/A |

Contract No: ███████
Named Insured:      Edgewater Valley Forge Fund III LP

---

# EQUIPMENT BREAKDOWN COVERAGE FORM

---

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G - DEFINITIONS. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

**A.    COVERAGE**

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

**1.    Covered Cause of Loss – "Accident"**

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

**a.    "Accident"** means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

**1)**    Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**2)**    Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

**3)**    Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

**4)**    An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

**5)**    An event inside hot water boilers or other water heating equipment that damages such equipment; or

**6)**    Bursting, cracking or splitting.

"Accident" does not include any condition or event listed in Definition G.1.b.

**b.    "Covered Equipment"** means the following:

**1)**    Unless specified otherwise in the Declarations:

**(a)**    Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

**(b)**    Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

**2)**    Except as specifically provided for under Off Premises Property Damage, Service Interruption, Contingent Business Income, paragraph (2) of Perishable Goods and Civil Authority, such equipment must be at a location described in the Declarations and must be owned or leased by you or operated under your control.

"Covered equipment" does not include any property listed in Definition G.9.b.

Contract No: ███████
Named Insured:    Edgewater Valley Forge Fund III LP

**2.    Coverages Provided**

This section lists the coverages that may apply in the event of an "accident." Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

These coverages apply only to the direct result of an "accident." For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the "accident."

**a.    Property Damage**

We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the "accident."

**b.    Off Premises Property Damage**

If you have transportable "covered equipment" that, at the time of the "accident," is within the Coverage Territory, but is not:

1)    At a location indicated in the Declarations; or

2)    At any other location owned or leased by you,

we will pay for physical damage to such "covered equipment."

**c.    Business Income**

1)    We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

2)    We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

3)    We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

**d.    Extra Expense**

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

**e.    Service Interruption**

We will pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of an "interruption of service."

**f.    Contingent Business Income**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that:

1)    Results from an "interruption of supply"; or

2)    Results from an "accident" at an "anchor location."

**g.    Perishable Goods**

1)    We will pay for physical damage to "perishable goods" due to "spoilage."

2)    We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

3)    We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

4)    We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**h.    Data Restoration**

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

2) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Data Restoration limit.

**i.    Demolition**

1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) Requires the demolition of a building that is otherwise reparable;

(b) Is in force at the time of the "accident"; and

(c) Is not addressed under Hazardous Substances coverage.

2) We will pay for the following additional costs to comply with such ordinance or law:

(a) Your actual and necessary cost to demolish and clear the site of the undamaged parts of the building; and

(b) Your actual and necessary cost to reconstruct the undamaged parts of the building.

3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of i.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Demolition limit.

**j.    Ordinance or Law**

1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) Regulates the construction or repair of buildings, including "building utilities";

(b) Is in force at the time of the "accident"; and

(c) Is not addressed under Demolition coverage or Hazardous Substances coverage.

2) We will pay for the following additional costs to comply with such ordinance or law:

(a) Your actual and necessary cost to repair the damaged portions of the building;

(b) Your actual and necessary cost to reconstruct the damaged portions of the building; and

(c) Your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.

3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of j.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Ordinance or Law limit.

**k.    Expediting Expenses**

With respect to your damaged "covered property," we will pay the reasonable extra cost to:

1) Make temporary repairs; and

2) Expedite permanent repairs or permanent replacement.

**l.    Hazardous Substances**

Contract No: ████████

Named Insured:    Edgewater Valley Forge Fund III LP

**1)**    We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.g.(3).

**2)**    As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

**3)**    We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of I.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Hazardous Substances limit.

**m.    Newly Acquired Locations**

**1)**    You will notify us promptly of any newly acquired location that you have purchased or leased during the Policy Period.

**2)**    All coverages applicable to any scheduled location under this Equipment Breakdown Coverage are extended to a newly acquired location that you have purchased or leased during the Policy Period.

**3)**    This coverage begins at the time you acquire the property. As respects newly constructed properties, we will only consider them to be acquired by you when you have fully accepted the completed project.

**4)**    This coverage ends when any of the following first occurs:

   **(a)**    This Policy expires;

   **(b)**    The number of days specified in the Declarations for this coverage expires after you acquire the location;

   **(c)**    The location is incorporated into the regular coverage of this policy; or

   **(d)**    The location is incorporated into the regular coverage of another Equipment Breakdown policy you have.

**5)**    If limits or deductibles vary by location, the highest limits and deductibles will apply to newly acquired locations. However, the most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Newly Acquired Locations limit in the Declarations.

**6)**    We will charge you additional premium for newly acquired locations from the date you acquire the property.

**n.    Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

**1)**    You will notify us promptly of any expansion or rehabilitation of any location described in the Declarations.

**2)**    All coverages applicable to any location described in the Declarations are extended to an expansion or rehabilitation of that location.

**3)**    This coverage begins at the time you begin the expansion or rehabilitation project.

**4)**    We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

**o.    Civil Authority**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from a civil authority prohibiting access to a location described in the Declarations due solely to an "accident" that causes damage to property within one mile of such location, provided that such action is taken in response to dangerous physical conditions resulting from the "accident," or to enable a civil authority to have unimpeded access to the damaged property.

**B.    EXCLUSIONS**

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

**1.**    We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident."

   **a.    Fire and Explosion**

Contract No: ████████████

Named Insured:     Edgewater Valley Forge Fund III LP

      **1)**   Fire, including smoke from a fire.

      **2)**   Combustion explosion. This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel.

      **3)**   Any other explosion, except as specifically provided in A.1.a.(3).

**b.**   **Ordinance or Law**

   The enforcement of, or change in, any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.i., j. and l. (Demolition, Ordinance or Law and Hazardous Substances coverages).

**c.**   **Earth Movement**

   Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

**d.**   **Nuclear Hazard**

   Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

**e.**   **War and Military Action**

      **1)**   War, including undeclared or civil war;

      **2)**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      **3)**   Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

**f.**   **Water**

      **1)**   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

      **2)**   Mudslide or mudflow; or

      **3)**   Water that backs up or overflows from a sewer, drain or sump.

**g.**   **Failure to Protect Property**

   Your failure to use all reasonable means to protect "covered property" from damage following an "accident."

**h.**   **Fines**

   Fine, penalty or punitive damage.

**i.**   **Mold**

   Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

**j.**   **Vandalism**

   Vandalism, meaning a willful and malicious act that causes damage or destruction.

**2.**   We will not pay for an "accident" caused by or resulting from any of the following causes of loss:

**a.**   Lightning.

**b.**   Windstorm or Hail. However, this exclusion does not apply when:

      **1)**   "Covered equipment" located within a building or structure suffers an "accident" that results from wind-blown rain, snow, sand or dust; and

Contract No: ███████

Named Insured:     Edgewater Valley Forge Fund III LP

    **2)**   The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

  **c.**   Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

  **d.**   Riot or Civil Commotion.

  **e.**   Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

  **f.**   Volcanic Action.

  **g.**   An electrical insulation breakdown test.

  **h.**   A hydrostatic, pneumatic or gas pressure test.

  **i.**   Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

  **j.**   Elevator collision.

**3.**   We will not pay for an "accident" caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

  **a.**   Falling Objects.

  **b.**   Weight of Snow, Ice or Sleet.

  **c.**   Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

  **d.**   Collapse.

  **e.**   Breakage of Glass.

  **f.**   Freezing caused by cold weather.

  **g.**   Discharge of molten material from equipment, including the heat from such discharged material.

**4.**   Exclusions 2. and 3. do not apply if all of the following are true:

  **a.**   The excluded peril occurs away from any location described in the Declarations and causes an electrical surge or other electrical disturbance;

  **b.**   Such surge or disturbance is transmitted through utility service transmission lines to a described location;

  **c.**   At the described location, the surge or disturbance results in an "accident" to "covered equipment" that is owned or operated under the control of you or your landlord; and

  **d.**   The loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

**5.**   With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

  **a.**   Loss associated with business that would not or could not have been carried on if the "accident" had not occurred;

  **b.**   Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

  **c.**   That part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

    **1)**   "Business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

    **2)**   "Extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

Contract No: ▮▮▮▮▮▮▮▮
Named Insured:   Edgewater Valley Forge Fund III LP

d.   Any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6.   With respect to Off Premises Property Damage coverage, Service Interruption coverage, Contingent Business Income coverage,  paragraph (2) of Perishable Goods coverage and Civil Authority coverage, we will also not pay for an "accident" caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7.   With respect to Data Restoration coverage, we will also not pay to reproduce:

a.   Software programs or operating systems that are not commercially available; or

b.   "Data" that is obsolete, unnecessary or useless to you.

8.   With respect to Demolition and Ordinance or Law coverages, we will also not pay for:

a.   Increased demolition or reconstruction costs until they are actually incurred; or

b.   Loss due to any ordinance or law that:

1)   You were required to comply with before the loss, even if the building was undamaged; and

2)   You failed to comply with;

whether or not you were aware of such non-compliance.

**C.   LIMITS OF INSURANCE**

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

**1.   Equipment Breakdown Limit**

The most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Equipment Breakdown Limit in the Declarations.

**2.   Coverage Limits**

a.   The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one accident" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the "accident." If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

b.   If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

1)   You have a loss under one of the coverages listed in A.2.; and

2)   All or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

we will not pay the remaining amount of such loss under any other coverage.

**EXAMPLE 1**

Property Damage Limit:  $7,000,000

Business Income Limit:  $1,000,000

Newly Acquired Locations Limit:  $500,000

There is an "accident" at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

Contract No: ▮▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

**EXAMPLE 2**

Property Damage Limit: $7,000,000

Business Income Limit: $500,000

Hazardous Substances Limit: $25,000

There is an "accident" that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

**D.    DEDUCTIBLES**

**1.    Deductibles for Each Coverage**

a.    Unless the Declarations indicate that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

b.    We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

c.    If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

d.    The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

**2.    Direct and Indirect Coverages**

a.    Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

b.    Unless more specifically indicated in the Declarations:

1)    Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this Equipment Breakdown Coverage; and

2)    Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

**EXAMPLE**

An "accident" results in covered losses as follows:

$100,000 Total Loss (all applicable coverages)

$35,000 Business Income Loss (including $2,000 of business income loss payable under Data Restoration coverage)

$5,000 Extra Expense Loss

In this case, the Indirect coverages loss totals $40,000 before application of the Indirect Coverage Deductible. The Direct coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

**3.    Application of Deductibles**

**a.    Dollar Deductibles**

We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

Contract No:     ▮▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

   **b.**    **Time Deductibles**

If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

   **c.**    **Multiple of Average Daily Value (ADV) Deductibles**

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no "accident" occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**EXAMPLE**

Business is interrupted, partially or completely, for 10 working days. If there had been no "accident," the total "business income" at the affected location for those 10 working days would have been $5,000. The Indirect Coverages Deductible is 3 Times ADV.

$5,000 / 10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

   **d.**    **Percentage of Loss Deductibles**

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

**E.**    **LOSS CONDITIONS**

The following conditions apply:

**1.**    **Abandonment**

There can be no abandonment of any property to us.

**2.**    **Brands and Labels**

   **a.**    If branded or labeled merchandise that is "covered property" is damaged by an "accident," but retains a salvage value, you may:

      **1)**    Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

      **2)**    Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

   **b.**    We will pay for any reduction in value of the salvage merchandise resulting from either of the two actions listed in 2.a. above, subject to all applicable limits.

   **c.**    We will also pay the reasonable and necessary expenses you incur to perform either of the two actions described in 2.a. above.  We will pay for such expenses to the extent that they do not exceed the amount recoverable from salvage.

   **d.**    If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**3.**    **Coinsurance - Business Income Coverage**

   **a.**    Unless otherwise shown in the Declarations, Business Income coverage is subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the "accident." Instead, we will determine the most we will pay using the following steps:

Contract No: ████████████

Named Insured:   Edgewater Valley Forge Fund III LP

     1)   Divide the "business income estimated annual value" by the "business income actual annual value" at the time of the "accident";

     2)   Multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

     3)   Subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**b.**   Coinsurance applies separately to each insured location.

**c.**   If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**EXAMPLE 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000 / $200,000 = .5

Step 2: $40,000 x .5 = $20,000

Step 3: $20,000 - $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the "business income actual annual value."

**EXAMPLE 2 (Adequate insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000 / $200,000 = 1

Step 2: $40,000 x 1 = $40,000

Step 3: $40,000 - $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

**4.**   **Coinsurance – Coverages other than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

Contract No:
Named Insured:     Edgewater Valley Forge Fund III LP

**a.** We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the "accident" times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

**1)** Multiply the value of the property subject to the coverage at the time of the "accident" by the Coinsurance percentage;

**2)** Divide the applicable limit by the amount determined in step (1);

**3)** Multiply the total amount of loss, before the application of any deductible, by the amount determined in step (2); and

**4)** Subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**b.** Coinsurance applies separately to each insured location.

**EXAMPLE 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $200,000 x 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 x .625 = $37,500

Step 4: $37,500 - $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE 2 (Adequate insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $100,000 x 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 - $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

Contract No: ▇▇▇▇▇▇▇▇▇
Named Insured:    Edgewater Valley Forge Fund III LP

**5.    Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

**6.    Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

**a.**    Give us a prompt notice of the loss or damage, including a description of the property involved.

**b.**    You must reduce your loss, damage or expense, if possible, by:

   **1)**    Protecting property from further damage. We will not pay for your failure to protect property, as stated in Exclusion B.1.g.;

   **2)**    Resuming business, partially or completely at the location of loss or at another location;

   **3)**    Making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

   **4)**    Using merchandise or other property available to you;

   **5)**    Using the property or services of others; and

   **6)**    Salvaging the damaged property.

**c.**    Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the "accident" is removed. But you must take whatever measures are necessary for protection from further damage.

**d.**    Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

**e.**    Promptly send us any legal papers or notices received concerning the loss, damage or expense.

**f.**    As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**g.**    If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such examination:

   **1)**    May be at any time reasonably required;

   **2)**    May be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

   **3)**    May be recorded by us by any methods we choose.

**h.**    Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

**i.**    Cooperate with us in the investigation and settlement of the claim.

**7.    Errors and Omissions**

**a.**    We will pay your loss covered by this Equipment Breakdown coverage if such loss is otherwise not payable solely because of any of the following:

   **1)**    Any error or unintentional omission in the description or location of property as insured under this policy;

   **2)**    Any failure through error to include any premises owned or occupied by you at the inception of this policy; or

   **3)**    Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

**b.**    No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

Contract No: ▮▮▮▮▮▮▮
Named Insured:     Edgewater Valley Forge Fund III LP

   c.   It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered.  The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

   d.   If an Errors and Omissions Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**8.   Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

   a.   Demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown Coverage; and

   b.   Calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

**9.   Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

**10.   Valuation**

We will determine the value of "covered property" as follows:

   a.   Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

      1)   The cost to repair the damaged property;

      2)   The cost to replace the damaged property on the same site; or

      3)   The amount you actually spend that is necessary to repair or replace the damaged property.

   b.   The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

   c.   Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

   d.   Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced, subject to the following conditions:

      1)   We will not pay more than 150% of what the cost would have been to replace with like kind and quality;

      2)   We will not pay to increase the size or capacity of the equipment;

      3)   This provision only applies to Property Damage coverage;

      4)   This provision does not increase any of the applicable limits;

      5)   provision does not apply to any property valued on an Actual Cash Value basis; and

      6)   This provision does not apply to the replacement of component parts.

   e.   The following property will be valued on an Actual Cash Value basis:

      1)   Any property that does not currently serve a useful or necessary function for you;

      2)   Any "covered property" that you do not repair or replace within 24 months after the date of the "accident"; and

      3)   Any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Contract No:
Named Insured:     Edgewater Valley Forge Fund III LP

Actual Cash Value includes deductions for depreciation.

f.   If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

   1)   The property was manufactured by you;

   2)   The sales price of the property is less than the replacement cost of the property; or

   3)   You are unable to replace the property before its anticipated sale.

g.   Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

   1)   For mass-produced and commercially available software, at the replacement cost.

   2)   For all other "data" and "media", at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

h.   Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

   1)   Repair or replace the damaged property and replace any lost CFC refrigerant;

   2)   Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

   3)   Replace the system with one using a non-CFC refrigerant.

   In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., Environmental, Safety and Efficiency Improvements. In such case, E.10.d.(1) is amended to read: "We will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality."

## F.   ADDITIONAL CONDITIONS

The following conditions apply in addition to the Loss Conditions:

**1.   Additional Insured**

   If a person or organization is designated in this Equipment Breakdown Coverage as an additional insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

**2.   Bankruptcy**

   The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

**3.   Cancellation**

   a.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      1)   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      2)   30 days before the effective date of cancellation if we cancel for any other reason.

   c.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

   e.   If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Contract No:  ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

     **f.**    If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.  Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**5.  Concealment, Misrepresentation or Fraud**

We will not pay for any loss and coverage will be void if you or any additional insured at any time:

**a.**    Intentionally cause or allow loss, damage or expense in order to collect on insurance; or

**b.**    Intentionally conceal or misrepresent a material fact concerning:

    **1)**    This Equipment Breakdown Coverage;

    **2)**    The "covered property";

    **3)**    Your interest in the "covered property"; or

    **4)**    A claim under this Equipment Breakdown Coverage.

**6.  Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**7.  Inspections and Surveys**

**a.**    We have the right to:

    **1)**    Make inspections and surveys at any time;

    **2)**    Give you reports on the conditions we find; and

    **3)**    Recommend changes.

**b.**    We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **1)**    Are safe or healthful; or

    **2)**    Comply with laws, regulations, codes or standards.

**c.**    Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**8.  Jurisdictional Inspections**

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

**9.  Legal Action Against Us**

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

**a.**    There has been full compliance with all the terms of this Equipment Breakdown Coverage; and

**b.**    The action is brought within two years after the date of the "accident" or

**c.**    We agree in writing that you have an obligation to pay for damage to "covered property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

Contract No: ██████
Named Insured:      Edgewater Valley Forge Fund III LP

**10. Liberalization**

If we adopt any standard form revision for general use that would broaden the coverage under this Equipment Breakdown Coverage without additional premium, the broadened coverage will apply to this Equipment Breakdown Coverage commencing on the date that such revision becomes effective in the jurisdiction where the "accident" occurs.

**11. Loss Payable**

a.  We will pay you and the loss payee shown in the Declarations for loss covered by this Equipment Breakdown Coverage, as interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part or on the part of the loss payee.

b.  We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

c.  If we make any payment to the loss payee, we will obtain their rights against any other party.

**12. Maintaining Your Property and Equipment**

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

**13. Mortgage Holders**

a.  The term mortgage holder includes trustee.

b.  We will pay for direct damage to "covered property" due to an "accident" to "covered equipment" to you and each mortgage holder shown in the Declarations in their order of precedence, as interests in the "covered property" may appear.

c.  The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the "covered property."

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage, the mortgage holder will still have the right to receive loss payment, provided the mortgage holder does all of the following:

   1)  Pays any premium due under this Equipment Breakdown Coverage at our request if you have failed to do so;

   2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;

   3)  Has notified us of any change in ownership or material change in risk known to the mortgage holder; and

   4)  Has complied with all other terms and conditions of this Policy.

   All of the terms of this Equipment Breakdown Coverage will then apply directly to the mortgage holder.

e.  If we pay the mortgage holder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage:

   1)  The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

   2)  The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgage holder at least:

   1)  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   2)  30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

Contract No: ▬▬▬▬
Named Insured:    Edgewater Valley Forge Fund III LP

    h.    If we suspend coverage, it will also be suspended as respects the mortgage holder. We will give written notice of the suspension to the mortgage holder.

**14.   Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**15.   Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

    a.    The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability.

    b.    "accident" must occur within the following Coverage Territory:

        1)    The United States of America (including its territories and possessions);

        2)    Puerto Rico; and

        3)    Canada.

    c.    With respect to Off Premises Property Damage coverage only, the "accident" may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.

**16.   Premiums**

The first Named Insured shown in the Declarations:

    a.    Is responsible for the payment of all premiums; and

    b.    Will be the payee for any return premiums we pay.

**17.   Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

**18.   Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

    a.    Your last known address; or

    b.    The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**19.   Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**20.   Transfer of Rights of Recovery Against Others to Us**

Contract No: ▮▮▮▮▮▮
Named Insured:    Edgewater Valley Forge Fund III LP

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.**   Prior to an "accident."

**b.**   After an "accident" only if, at time of the "accident," that party is one of the following:

    **1)**   Someone insured by this Policy; or

    **2)**   A business firm:

        **(a)**   Owned or controlled by you; or

        **(b)**   That owns or controls you.

**G.   DEFINITIONS**

**1.**   **"Accident"**

    **a.**   "Accident" is defined in A.1.a.

    **b.**   None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected:

        **1)**   Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

        **2)**   Any gradually developing condition;

        **3)**   Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

        **4)**   Contamination by a "hazardous substance"; or

        **5)**   Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

**2.**   **"Anchor Location"** means a location, operated by others, upon which you depend to attract customers to your location.  An "anchor location" must have been open for business for at least six months prior to the "accident," and must be located within one mile of your location.

**3.**   **"Boilers and Vessels"** means:

    **a.**   Boilers;

    **b.**   Steam piping;

    **c.**   Piping that is part of a closed loop used to conduct heat from a boiler;

    **d.**   Condensate tanks; and

    **e.**   Unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

**4.**   **"Building Utilities"** means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or escalator services, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

**5.**   **"Buried Vessels or Piping"** means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

**6.**   **"Business Income"** means the sum of:

    **a.**   The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

    **b.**   Continuing normal and necessary operating expenses incurred, including employee payroll.

Contract No:    ▮▮▮▮▮▮▮▮
Named Insured:      Edgewater Valley Forge Fund III LP

7.  **"Business Income Actual Annual Value"** means the "business income" for the current fiscal year that would have been earned had no "accident" occurred.

In calculating the "business income actual annual value," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident."

8.   **"Business Income Estimated Annual Value"** means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

9.  **"Covered Equipment"**

    a.  "Covered Equipment" is defined in A.1.b.

    b.  None of the following is "covered equipment":

        1)  Structure, including but not limited to the structural portions of buildings and towers, and scaffolding;

        2)  Foundation;

        3)  Cabinet, compartment, conduit or ductwork;

        4)  Insulating or refractory material;

        5)  "Buried vessels or piping";

        6)  Waste, drainage or sewer piping;

        7)  Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

        8)  Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

        9)  "Vehicle" or any equipment mounted on a "vehicle";

        10)  Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

        11)  Dragline, excavation or construction equipment;

        12)  Equipment manufactured by you for sale; or

        13)  "Data."

10.  **"Covered Property"**

    a.  "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations except as provided under Off Premises Property Damage coverage.

    b.  None of the following is "covered property":

        1)  Accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;

        2)  Fine arts, jewelry, furs or precious stones;

        3)  Precious metal, unless forming a part of "covered equipment";

        4)  Animals;

        5)  Contraband, or property in the course of illegal transportation or trade;

        6)  Land (including land on which the property is located), water, trees, growing crops or lawns; or

        7)  Shrubs or plants, unless held indoors for retail sale.

11.  **"Data"** means information or instructions stored in digital code capable of being processed by machinery.

Contract No: ▉▉▉▉▉
Named Insured:     Edgewater Valley Forge Fund III LP

12. **"Electrical Generating Equipment"**

    **a.**  "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:

        **1)**  Boilers used primarily to provide steam for one or more turbine-generator units;

        **2)**  Turbine-generators (including steam, gas, water or wind turbines);

        **3)**  Engine-generators;

        **4)**  Fuel cells or other alternative electrical generating equipment;

        **5)**  Electrical transformers, switchgear and power lines used to convey the generated electricity; and

        **6)**  Associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.

    **b.**  "Electrical Generating Equipment" does not mean:

        **1)**  Elevator or hoist motors that generate electricity when releasing cable; or

        **2)**  Equipment intended to generate electricity solely on an emergency, back-up basis.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

13. **"Extra Expense"** means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

14. **"Hazardous Substance"** means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

15. **"Interruption of Service"**

    **a.**  "Interruption of Service" means a failure or disruption of the normal supply of any of the Covered Services listed in b. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in c. through f. below.

    **b.**  Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks and data transmission.

    **c.**  The "covered equipment" must either be:

        **1)**  Owned by a company with whom you have a contract to supply you with one of the Covered Services; or

        **2)**  Used to supply you with one of the Covered Services and located within one mile of a location described in the Declarations.

    **d.**  If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the "accident" must be located within the indicated distance of any location described in the Declarations.

    **e.**  Unless otherwise shown in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds 24 hours immediately following the "accident."

    **f.**  "Interruption of service" does not include any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

16. **"Interruption of Supply"**

    **a.**  "Interruption of Supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

    **b.**  Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

Contract No: ███████

Named Insured:    Edgewater Valley Forge Fund III LP

17. **"Media"** means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

18. **"One Accident"** means all "accidents" occurring at the same time from the same event. If an "accident" causes other "accidents," all will be considered "one accident."

19. **"Ordinary Payroll"** means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

    As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums.

    "Ordinary payroll" does not include pensions or directors fees.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

20. **"Period of Restoration"** means the period of time that begins at the time of the "accident" and continues until the earlier of:

    a.    The date the physical damage to "covered equipment" is repaired or replaced; or

    b.    The date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch,

    plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

    With respect to Civil Authority coverage only, "period of restoration" means the period of time that begins as of the time access is prohibited by action of the civil authority and continues until the earlier of:

    a.    21 days thereafter; or

    b.    The date access is restored.

21. **"Perishable Goods"** means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

22. **"Production Machinery"** means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

23. **"Spoilage"** means any detrimental change in state. This includes but is not limited to thawing of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

24. **"Vehicle"** means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

    However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

**All other terms and conditions of this policy remain unchanged.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

      Plaintiff,

v.                                                                          Case No.: _2024 CA 001165_

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

      Defendants.

_____/

## DESIGNATION OF E-MAIL ADDRESSES PURSUANT TO RULE 2.516

David J. Weiss, as attorney for Plaintiffs, hereby designate, pursuant to Rule 2.516, the

following e-mail addresses for the purpose of service of all documents required to be served

pursuant to Rule 2.516 in this proceeding:

Primary E-mail Addresses:        dweiss@ausley.com
Secondary E-Mail Addresses:    sshaffer@ausley.com

    DATED THIS 18th day of July, 2024.

                    /s/ David J. Weiss
                    DAVID J. WEISS
                    Fla. Bar No. 0073963
                    dweiss@ausley.com
                    sshaffer@ausley.com
                    Ausley  McMullen
                    Post Office Box 391
                    Tallahassee, Florida 32302
                    Telephone:  (850) 224-9115
                    Facsimile    (850) 222-7560
                    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished by service of process with the Summons and Complaint.

/s/ David J. Weiss
ATTORNEY

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

       Plaintiff,

v.                                                                          Case No.:   2024 CA 001165

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

       Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on Defendant, **Certain Underwriters at Lloyd's, London by serving the
Chief Financial Officer for the State of Florida as its Registered Agent, Office of the
General Counsel, 200 East Gaines Street, Tallahassee, Fl 32399-4201.**

     The above-named defendant is required to serve written defenses to the complaint or
petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South
Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within
20 days after service of this summons on that defendant, exclusive of the day of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's
attorney or immediately thereafter.  If the defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.

                                      GWEN MARSHALL
                                      CLERK OF THE CIRCUIT COURT

SEAL



                                      By: _____  07/22/2024
                                           Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

      Plaintiff,

v.

Case No.: 2024 CA 001165

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on Defendant, **HDI Global Specialty SE by serving the Chief Financial
Officer for the State of Florida as its Registered Agent, Office of the General Counsel, 200
East Gaines Street, Tallahassee, Fl 32399-4201.**

      The above-named defendant is required to serve written defenses to the complaint or
petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South
Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within
20 days after service of this summons on that defendant, exclusive of the day of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's
attorney or immediately thereafter. If the defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.

SEAL



GWEN MARSHALL
CLERK OF THE CIRCUIT COURT

By: _____ 07/22/2024

             Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

       Plaintiff,

v.

Case No.: 2024 CA 001165

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

       Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant, **Summit Specialty Insurance Company by serving the Chief Financial Officer for the State of Florida as its Registered Agent, Office of the General Counsel, 200 East Gaines Street, Tallahassee, Fl 32399-4201.**

      The above-named defendant is required to serve written defenses to the complaint or petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter.  If the defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.



SEAL

GWEN MARSHALL
CLERK OF THE CIRCUIT COURT

By:_____   07/22/2024

          Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

      Plaintiff,

v.                                                                                          Case No.: <u>2024 CA 001165</u>

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on Defendant, **Guideone National Insurance Company by serving the
Chief Financial Officer for the State of Florida as its Registered Agent, Office of the
General Counsel, 200 East Gaines Street, Tallahassee, Fl 32399-4201.**

      The above-named defendant is required to serve written defenses to the complaint or
petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South
Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within
20 days after service of this summons on that defendant, exclusive of the day of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's
attorney or immediately thereafter. If the defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.



SEAL

GWEN MARSHALL
CLERK OF THE CIRCUIT COURT

By: _____ 07/22/2024
                  Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

        Plaintiff,

v.                                Case No.: <u>2024 CA 001165</u>

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

        Defendants.

_____/

## **SUMMONS**

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant, **Catalytic Risk Managers & Insurance Agency by serving Corporation Service Company as its Registered Agent, 2710 Gateway Oaks Drive, Sacramento, CA.**

      The above-named defendant is required to serve written defenses to the complaint or petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If the defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.

SEAL



GWEN MARSHALL
CLERK OF THE CIRCUIT COURT

By: _____    07/22/2024
          Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

      Plaintiff,

v.

Case No.: 2024 CA 001165

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on Defendant, **Catalytic Claims Services by serving Edward Batcheller
as its Registered Agent, 350 10th Avenue, Suite 1450, San Diego, CA  92101.**

      The above-named defendant is required to serve written defenses to the complaint or
petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South
Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within
20 days after service of this summons on that defendant, exclusive of the day of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's
attorney or immediately thereafter.  If the defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.

                           GWEN MARSHALL
                           CLERK OF THE CIRCUIT COURT

SEAL



By: _____  07/22/2024
                           Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

WYVERN HOSPITALITY LLC, a Florida limited
liability company,

      Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
a foreign entity; HDI GLOBAL SPECIALTY SE, a
foreign entity; SUMMIT SPECIALTY INSURANCE
COMPANY, a foreign entity; GUIDEONE NATIONAL
INSURANCE COMPANY, a foreign entity; CATALYTIC
RISK MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS SERVICES, INC.,
a foreign entity; and YA ENGINEERING SERVICES,
LLC, a foreign entity,

      Defendants.

_____/

Case No.: <u>2024 CA 001165</u>

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the complaint or
petition in this action on Defendant, **YA Engineering Services, LLC, by serving CT
Corporation System as its Registered Agent, 1200 South Pine Island Road, Plantation, FL
33324.**

    The above-named defendant is required to serve written defenses to the complaint or
petition on David J. Weiss, FBN 0073963, Plaintiff's attorney, whose address is 123 South
Calhoun Street (32301), P.O. Box 391, Tallahassee, Florida 32302, dweiss@ausley.com, within
20 days after service of this summons on that defendant, exclusive of the day of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's
attorney or immediately thereafter. If the defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.

WITNESS MY HAND AND SEAL OF SAID COURT on _____.

SEAL



GWEN MARSHALL
CLERK OF THE CIRCUIT COURT

By:_____ 07/22/2024

         Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 225, 301 South Monroe Street, Tallahassee, FL 32301 (Telephone No. (850) 606-4400) at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**



# LEON COUNTY Receipt of Transaction
## Receipt #   1793656

GWEN MARSHALL
Clerk of Court and Comptroller
LEON COUNTY, FLORIDA

**Received From:**
Ausley McMullen

,

**On Behalf Of:**

On: 7/22/2024  8:39:26AM
Transaction # 101086897
Cashiered by: L WILLIAMS

,

| Non-Case Fees | | | | | | |
|---|---|---|---|---|---|---|
| **Fee Description** | **Fee** | **Prior Paid** | **Waived** | **Due** | **Paid** | **Balance** |
| (CFO) CLERK FEES | 2.50 | 0.00 | 0.00 | 2.50 | 2.50 | 0.00 |
| **Total:** | **2.50** | **0.00** | **0.00** | **2.50** | **2.50** | **0.00** |

| CaseNumber  2024 CA 001165 |
|---|

**Judge  ANGELA C DEMPSEY**

**EDGEWATER VALLEY FORGE FUND III LP  *VS*  CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**

Comments:

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (ED_CA) EXTRA DEFENDANT | 5.00 | 0.00 | 0.00 | 5.00 | 2.50 | 2.50 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (COMP_CA) COMPLAINT | 400.00 | 0.00 | 0.00 | 400.00 | 400.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| (CASUIS) CIRCUIT CIVIL SUMMONS ISSUED | 10.00 | 0.00 | 0.00 | 10.00 | 10.00 | 0.00 |
| **Total:** | **475.00** | **0.00** | **0.00** | **475.00** | **472.50** | **2.50** |

|  | **Grand Total:** | 477.50 | 0.00 | 0.00 | 477.50 | 475.00 | 2.50 |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CREDIT CARD EFILE | 202836025 | OK | 475.00 | 0.00 | 2.50 | 0.00 | 472.50 |
| | | **Payments Total:** | **475.00** | **0.00** | **2.50** | **0.00** | **472.50** |

IN THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

**EDGEWATER VALLEY FORGE FUND III LP**

      Plaintiff

vs                                      CASE NO.: 2024 CA 001165

**CERTAIN UNDERWRITERS AT LLOYDS LONDON**

      Defendant

_____/

## <u>UNIFORM ORDER FOR ACTIVE, DIFFERENTIAL CIVIL CASE MANAGEMENT</u>

In compliance with Florida Supreme Court directives on active, differential civil case management established in Supreme Court Administrative Order AOSC20-23, Amendment 12, and Second Judicial Circuit Administrative Order 21 - 04, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

## I. PROJECTED TRIAL DATE

All COUNTY COURT Civil cases are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint does not demand trial by jury are designated STREAMLINED CASES with a projected trial date of 360 days from the date of filing of the complaint.

All CIRCUIT COURT Civil cases for which the complaint demands trial by jury are GENERAL CASES with a projected trial date of 540 days from the date of filing of the complaint.

A change in the above designations may be made by the presiding judge on the judge's own initiative or upon motion of any party. Should any party assert that a civil case should be treated other than designated above, such party shall file a written motion requesting such change and the motion shall be expeditiously resolved by the

presiding Judge.

## II. Notice that Cause is at Issue and Firm Trial Date

The parties must file a Joint Notice that the Cause is at Issue no later than 15 days after the pleadings are closed. In the event of a dispute, either party may file a motion and request a hearing to determine if the cause is at issue.

Upon joint notice or judicial determination that the cause is at issue, the Court will schedule a Firm Trial Date consistent with the Projected Trial Date above unless either party requests a different date in their Notice that the Cause is at Issue. Should either party request a Firm Trial Date different than the Projected Trial Date, the Plaintiff shall expeditiously set a case management conference to determine the Firm Trial Date.

## III. Mandatory Deadlines for Streamlined Cases

If this case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

> 120 days after filing: Service of Complaints
> 150 days after filing: Service under any Extension of Time
> 180 days after filing: Adding New Parties
> 210 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
> 270 days after filing: Completion of Fact and Expert Discovery
> 270 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV. Mandatory Deadlines for General Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

> 120 days after filing: Service of Complaints
> 180 days after filing: Service under any Extension of Time
> 210 days after filing: Adding New Parties
> 270 days after filing: Resolution of Objections to Pleadings and Motions to Dismiss
> 400 days after filing: Completion of Fact and Expert Discovery
> 450 days after filing: Resolution of Pretrial Motions, including Motions for Summary Judgment

## V. Mediation

All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Rules of Civil Procedure 1.700 - 1.730.

## VI. Noncompliance

**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law. These procedures and time standards do not supplant any existing rule, statute, or law.**

**Failure to appear at the pretrial conference or failure to comply with the terms of this order may result in such sanctions as are just and lawful including: an  immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs.**

## VII. Hearings by Audio-Video Technology

During the COVID-19 Public Health Emergency, all hearings other than jury selection and trial shall be conducted consistent with Florida Supreme Court andSecond Circuit Administrative Order by audio-video technology. Each judge isresponsible to establish the process for such audio-video technology hearings bynotice of hearing including technology access.After the conclusion of the COVID-19 Public Health Emergency all hearings otherthan jury selection and trial may be conducted by audio-video technology. Eachjudge is responsible to establish the process for such audio-video technologyhearings by notice of hearing including technology access.

Monday, July 22, 2024
ANGELA C DEMPSEY CIRCUIT JUDGE

ANGELA C DEMPSEY
Circuit Judge

## SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER

If, at the time the Uniform Order For Active Differential Civil Case Management ("Order") is filed, service on the Defendant(s) has already been made or process provided to a process server, the Plaintiff may comply with the second (in bold) paragraph of the Order by promptly providing a copy of the Order to the Defendant(s) by U.S. Mail or by Electronic Mail. The Plaintiff shall then file a certificate of service documenting that this Order has been provided to the Defendant(s) in this manner.

## VERIFIED RETURN OF SERVICE

| State of Florida | County of Leon | Circuit Court |
|---|---|---|

Case Number: 2024 CA 001165

Plaintiff:
**Wyvern Hospitality LLC, a Florida limited liabilty company**
vs.
Defendant:
**Certain Underwriters at Lloyd's London, a foreign entity , et. al.**

For: David J. Weiss
Ausley & McMullen

Received by Vause's Process Service on the 24th day of July, 2024 at 9:23 am to be served on **Catalytic Risk Managers & Insurance Agency c/o Corporation Service Company, 2710 Gateway Oaks Drive, Sacramento, CA 95833**l.
_____Matthew Leonardo___, do hereby affirm that on the _24th_ day of _July_____ , 20 _24_at _1_ : _25p_.m., executed service by delivering a true copy of the **Summons, Compliant , Exhibits, Designation of Email Addresses Pursuant to  Rule 2.516, Uniform Order for Active , Differential Civil Case Management**in accordance with state statutes in the manner marked below:

( ) INDIVIDUAL SERVICE: Served the within-named person.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____.

(✓) CORPORATE SERVICE: By serving __Koy Saechao_____ as
Cusomer Service Associate at CSC Lawyers Incorporating Service, Registered Agent

( ) NON SERVICE: For the reason detailed in the Comments below:

**COMMENTS:**_____
_____
_____
_____

I am over the age of 18 and not a party to this action. Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit.

PROCESS SERVER # _2009-18_____
Appointed in accordance with State Statutes

**Vause's Process Service**
**P.O. Box 1777**
**Tallahassee, FL 32302-1777**
**(850) 656-2605**

Our Job Serial Number: 2024006015

## VERIFIED RETURN OF SERVICE

**State of Florida**                                **County of Leon**                                **Circuit Court**

Case Number: 2024 CA 001165

Plaintiff:
**Wyvern Hospitality LLC, a Florida limited liabilty company**

vs.

Defendant:
**Certain Underwriters at Lloyd's London, a foreign entity , et. al.**

For:
David J. Weiss
Ausley & McMullen
123 S. Calhoun St.
P.O. Box 391
Tallahassee, FL 32301

Received by Vause's Process Service on the 24th day of July, 2024 at 9:23 am to be served on **Certain Underwriters at Lloyd's London c/o Chief Financial Officer, DFS#24-000240913, Tallahassee, FL 32399**

I, Robyn Buda, do hereby affirm that on the **25th day of July, 2024** at **12:05 pm, I:**

Served **Certain Underwriters at Lloyd's London c/o Chief Financial Officer** by delivering a digital copy of the **Summons, Compliant , Exhibits, Designation of Email Addresses Pursuant to  Rule 2.516, Uniform Order for Active , Differential Civil Case Management** to the **Chief Financial Officer** as **Registered Agent** of the named insurance company via the online portal created by the **Department of Financial Services** in compliance with Florida Statutes § 48.151(3).

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not required pursuant to F.S. 92.525

_____
**Robyn Buda**
ID#247 2nd Circuit
_7/25/2024_
**Date**

**Vause's Process Service**
**P.O. Box 1777**
**Tallahassee, FL 32302-1777**
**(850) 656-2605**

Our Job Serial Number: VPS-2024006016

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

## VERIFIED RETURN OF SERVICE

State of Florida                    County of Leon                    Circuit Court

Case Number: 2024 CA 001165

Plaintiff:
**Wyvern Hospitality LLC, a Florida limited liabilty company**

vs.

Defendant:
**Certain Underwriters at Lloyd's London, a foreign entity , et. al.**

For:
David J. Weiss
Ausley & McMullen
123 S. Calhoun St.
P.O. Box 391
Tallahassee, FL 32301

Received by Vause's Process Service on the 24th day of July, 2024 at 9:23 am to be served on **Guideone National Insurance Company c/o Chief Financial Officer, DFS#24-000240918, Tallahassee, FL 32399**

I, Robyn Buda, do hereby affirm that on the **25th day of July, 2024** at **12:05 pm, I:**

Served **Guideone National Insurance Company c/o Chief Financial Officer** by delivering a digital copy of the **Summons, Compliant , Exhibits, Designation of Email Addresses Pursuant to  Rule 2.516, Uniform Order for Active , Differential Civil Case Management** to the **Chief Financial Officer** as **Registered Agent** of the named insurance company via the online portal created by the **Department of Financial Services** in compliance with Florida Statutes § 48.151(3).

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not required pursuant to F.S. 92.525

**Robyn Buda**
ID#247 2nd Circuit

7/25/2024
**Date**

**Vause's Process Service**
**P.O. Box 1777**
**Tallahassee, FL 32302-1777**
**(850) 656-2605**

Our Job Serial Number: VPS-2024006017

## VERIFIED RETURN OF SERVICE

**State of Florida**                    **County of Leon**                                        **Circuit Court**

Case Number: 2024 CA 001165

Plaintiff:
**Wyvern Hospitality LLC, a Florida limited liabilty company**

vs.

Defendant:
**Certain Underwriters at Lloyd's London, a foreign entity , et. al.**

For:
David J. Weiss
Ausley & McMullen
123 S. Calhoun St.
P.O. Box 391
Tallahassee, FL 32301

Received by Vause's Process Service on the 24th day of July, 2024 at 9:23 am to be served on **HDI Global Specialty SE c/o Chief Financial Officer, DFS#24-000240923, Tallahassee, FL 32399**

I, Robyn Buda, do hereby affirm that on the **25th day of July, 2024** at **12:05 pm, I:**

Served **HDI Global Specialty SE c/o Chief Financial Officer** by delivering a digital copy of the **Summons, Compliant , Exhibits, Designation of Email Addresses Pursuant to  Rule 2.516, Uniform Order for Active , Differential Civil Case Management** to the **Chief Financial Officer** as **Registered Agent** of the named insurance company via the online portal created by the **Department of Financial Services** in compliance with Florida Statutes § 48.151(3).

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not required pursuant to F.S. 92.525

_____

**Robyn Buda**
ID#247 2nd Circuit
7/25/2024
_____
**Date**

**Vause's Process Service**
**P.O. Box 1777**
**Tallahassee, FL 32302-1777**
**(850) 656-2605**

Our Job Serial Number: VPS-2024006018

## VERIFIED RETURN OF SERVICE

| | | |
|---|---|---|
| **State of Florida** | **County of Leon** | **Circuit Court** |

Case Number: 2024 CA 001165

Plaintiff:
**Wyvern Hospitality LLC, a Florida limited liabilty company**

vs.

Defendant:
**Certain Underwriters at Lloyd's London, a foreign entity , et. al.**

For:
David J. Weiss
Ausley & McMullen
123 S. Calhoun St.
P.O. Box 391
Tallahassee, FL 32301

Received by Vause's Process Service on the 24th day of July, 2024 at 9:23 am to be served on **Summit Specialty Insurance Company c/o Chief Financial Officer, DFS#24-000240925, Tallahassee, FL 32399**

I, Robyn Buda, do hereby affirm that on the **25th day of July, 2024** at **12:05 pm, I:**

Served **Summit Specialty Insurance Company c/o Chief Financial Officer** by delivering a digital copy of the **Summons, Compliant , Exhibits, Designation of Email Addresses Pursuant to  Rule 2.516, Uniform Order for Active , Differential Civil Case Management** to the **Chief Financial Officer** as **Registered Agent** of the named insurance company via the online portal created by the **Department of Financial Services** in compliance with Florida Statutes § 48.151(3).

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not required pursuant to F.S. 92.525

_____
**Robyn Buda**
ID#247 2nd Circuit
7/25/2024
**Date**

**Vause's Process Service**
**P.O. Box 1777**
**Tallahassee, FL 32302-1777**
**(850) 656-2605**

Our Job Serial Number: VPS-2024006019

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

CASE NO. 2024-CA-001165

EDGEWATER VALLEY FORGE FUND III LP, a
Delaware limited partnership; and WYVERN
HOSPITALITY LLC, a Florida limited liability
company,

Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, a foreign entity; HDI GLOBAL
SPECIALTY SE, a foreign entity; SUMMIT
SPECIALTY INSURANCE COMPANY, a foreign
entity; GUIDEONE NATIONAL INSURANCE
COMPANY, a foreign entity; CATALYTIC RISK
MANAGERS & INSURANCE AGENCY, LLC, a
foreign entity; CATALYTIC CLAIMS
SERVICES, INC., a foreign entity; and YA
ENGINEERING SERVICES, LLC, a foreign entity

Defendants.

## DEFENDANTS' MOTION FOR EXTENSION OF TIME
## TO RESPOND TO PLAINTIFFS' COMPLAINT

COME NOW, Defendants, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, HDI

GLOBAL SPECIALTY SE, SUMMIT SPECIALTY INSURANCE COMPANY, GUIDEONE

NATIONAL INSURANCE COMPANY, CATALYTIC RISK MANAGERS & INSURANCE

AGENCY, LLC, and CATALYTIC CLAIMS SERVICES, INC., (hereinafter referred to as

"Defendants"), by and through the undersigned counsel, and hereby files this Motion for Extension

of Time to respond to Plaintiffs' Complaint, and in support would state as follows:

1.      On or about July 25, 2024, Plaintiffs served the Summons and Complaint upon Defendants.

2.      Accordingly, Defendants response to Plaintiffs' Complaint is due on or before August 14, 2024.

3.      The undersigned counsel needs additional time to review the Complaint and file materials prior to serving Defendants' Response to Plaintiff's Complaint.

4.      There will be no prejudice to any party by the granting of an enlargement of time within which to respond to the aforementioned Complaint.

5.      This is the Defendants' first Motion for Extension of Time to Respond to Plaintiff's Complaint and is made in good faith, in an abundance of caution, and is not intended to delay action in this matter.

6.      As such, Defendants request additional time to respond to the Complaint.

WHEREFORE, Defendants, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, HDI GLOBAL SPECIALTY SE, SUMMIT SPECIALTY INSURANCE COMPANY, GUIDEONE NATIONAL INSURANCE COMPANY, CATALYTIC RISK MANAGERS & INSURANCE AGENCY, LLC, and CATALYTIC CLAIMS SERVICES, INC., respectfully requests that this Court enter an Order granting an extension of time in which to serve its response to Plaintiffs' Complaint and for any further relief this Court deems just and proper.

Dated: August 14, 2024

Respectfully submitted,

*/s/ Drew M. Newman*
**VINCENT P. BEILMAN, III, ESQ.**
Florida Bar No: 23966
**KIMBERLY M. JONES, III, ESQ.**
Florida Bar No: 29069

**DREW MARIS NEWMAN, ESQ.**
Florida Bar No: 1031438
**WOOD, SMITH, HENNING & BERMAN, LLP**
7835 NW Beacon Square Boulevard
Second Floor
Boca Raton, Florida 33487
Telephone : (954) 932-3498
dnewman@wshblaw.com
kjones@wshblaw.com
breid@wshblaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 14, 2024, a copy of the foregoing was served via

the Florida e-Portal filing system which will send notice to all counsel of record.

*/s/ Drew Newman*
Drew M. Newman